**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

GREGORY BOYD, JONATHAN LASSERS,

Plaintiffs,

v.

BANCO POPULAR DE PUERTO RICO,

Defendant.

Civil Action No.:  3:24-cv-01569-PAD

Hon. Pedro A. Delgado-Hernandez

<u>**DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**</u>

**TABLE OF CONTENTS**

*Page*

INTRODUCTION ..........................................................................................................................1

BACKGROUND ..........................................................................................................................3

      A.     The Parties ...............................................................................................................3

      B.     The Credit Agreement..............................................................................................4

      C.     Plaintiffs' RICO Action ..........................................................................................6

      D.     The RLNG Supply Agreement .................................................................................7

      E.     The Collections Action and Counterclaim................................................................9

      F.     This Action............................................................................................................10

ARGUMENT...............................................................................................................................11

I.     Plaintiffs Do Not Have Standing To Assert a BHCA Claim Against Banco
      Popular. ...................................................................................................................11

      A.     Plaintiffs Do Not Allege That They Suffered a Direct Injury. ..............................11

      B.     Plaintiffs Do Not Plead Standing To Sue Derivatively on Biomass's
            Behalf....................................................................................................................13

II.    The Amended Complaint Fails to State a Tying Claim Under the BHCA........................14

CONCLUSION............................................................................................................................19

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)...................................................................................................10

*Bishay* v. *Am. Isuzu Motors, Inc.*,
404 F.3d 491 (1st Cir. 2005)......................................................................................11

*Exec. Leasing Corp.* v. *Banco Popular De Puerto Rico*,
1994 WL 448985 (D.P.R. June 20, 1994)..................................................................15

*Exec. Leasing Corp.* v. *Banco Popular de Puerto Rico*,
48 F.3d 66 (1st Cir. 1995)...............................................................................3, 16, 19

*Gonzalez Turul* v. *Rogatol Distrib., Inc.*,
951 F.2d 1 (1st Cir. 1991)....................................................................................13, 14

*Hochendoner* v. *Genzyme Corp.*,
823 F.3d 724 (1st Cir. 2016).....................................................................................11

*Ishimaru* v. *Fung*,
2005 WL 2899680 (Del. Ch. Oct. 26, 2005) ............................................................13

*Méndez Internet Mgmt. Servs., Inc.* v. *Banco Santander de Puerto Rico*,
2009 WL 1392189 (D.P.R. May 15, 2009).................................................................14

*Méndez Internet Mgmt. Servs., Inc.* v. *Banco Santander de Puerto Rico*,
621 F.3d 10 (1st Cir. 2010).......................................................................................19

*Mid-State Fertilizer Co.* v. *Exch. Nat'l Bank of Chicago*,
877 F.2d 1333 (7th Cir. 1989) ...................................................................................12

*Pagan* v. *Calderon*,
448 F.3d 16 (1st Cir. 2006)..................................................................................11, 12

*Rodi* v. *S. New England Sch. of Law*,
389 F.3d 5 (1st Cir. 2004)............................................................................................3

*TC Invs., Corp.* v. *Becker*,
733 F. Supp. 2d 266 (D.P.R. 2010)............................................................................14

*Union de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan* v. *UBS Fin.
Servs. Inc. of Puerto Rico*,
2013 WL 12237669 (D.P.R. July 9, 2013) .................................................................11

*Union de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan* v. *UBS Fin.*
   *Servs. Inc. of Puerto Rico*,
   704 F.3d 155 (1st Cir. 2013)................................................................................13

*United States* v. *AVX Corp.*,
   962 F.2d 108 (1st Cir. 1992)...............................................................................11

*Vulcan Tools of Puerto Rico* v. *Makita USA, Inc.*,
   23 F.3d 564 (1st Cir.1994).................................................................................16

*Yacubian* v. *United States*,
   750 F.3d 100 (1st Cir. 2014).................................................................................4

**Statutes and Rules**

6 Del C. § 18-1001.................................................................................................13

12 U.S.C. § 1972(1)(C)..................................................................................2, 10, 14

12 U.S.C. § 1975.....................................................................................................10

14 P.R. Laws Ann. § 4003......................................................................................14

14 P.R. Laws Ann. § 4004......................................................................................14

31 P.R. Laws Ann. § 9221......................................................................................17

31 P.R. Laws Ann. § 9222......................................................................................17

Fed. R. Civ. P. 12(b)(1)............................................................................................1

Fed. R. Civ. P. 12(b)(6)............................................................................................1

Fed. R. Civ. P. 12(b)(7)........................................................................................1, 14

Fed. R. Civ. P. 23.1................................................................................................13

Local Rule 5(c) ........................................................................................................9

**COMES NOW,** Defendant Banco Popular de Puerto Rico ("Banco Popular") and respectfully moves the Court to dismiss the Amended Complaint ("AC" or "Amended Complaint") pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure.

### INTRODUCTION

This action is the latest of several lawsuits arising out of Banco Popular's efforts to collect over $12 million on a loan that the bank extended to Biomass Green Fuels, LLC ("Biomass"). Plaintiffs Gregory Boyd and Jonathan Lassers are members of GFC Holdings LLC ("GFC"), which is the sole owner of Biomass.

The relationship between Biomass and Banco Popular began much like the relationships Banco Popular has with other corporate borrowers. Biomass planned to build a biorefinery that would convert landfill gas into renewable liquified natural gas ("RLNG"), a relatively cheap and environmentally friendly energy that would net Biomass and its customers significant tax credits. In 2020, Banco Popular agreed to extend Biomass millions of dollars in credit to partially fund construction of the facility needed to produce the RLNG.

Beginning work on its facility in the early months of the pandemic, Biomass experienced difficulties from almost the outset of the project, leading it to seek multiple extensions on its debt payments and additional credit from Banco Popular. In total, Banco Popular agreed to amend its credit agreement with Biomass seven times over three years. But despite these amendments, Biomass is now in default, and Banco Popular was forced to file a collections action in Puerto Rico state court. Meanwhile, infighting among the LLC members of Biomass's parent company, GFC, led Plaintiffs to file a separate lawsuit, also in this District, alleging that GFC's other members had mismanaged the biorefinery project and engaged in self-dealing. Plaintiffs also named Banco Popular as a defendant in that lawsuit.

Plaintiffs have now filed this separate action asserting a claim against Banco Popular under the anti-tying provisions of the Bank Holding Company Act ("BHCA"). Plaintiffs purport to base that claim on Banco Popular's separate relationship with Biomass as a customer. In 2022, well after Banco Popular had entered into its credit agreement with Biomass and while the biorefinery project was ongoing, the bank signed a ten-year agreement to purchase RLNG from Biomass for a set price. Recognizing the potential of RLNG, Banco Popular planned to convert its facilities so that it could use the more environmentally friendly and tax-efficient energy source. Biomass, however, was ultimately unable to supply the promised RLNG.

Plaintiffs base their BHCA claim on the allegation that Banco Popular conditioned its agreement to extend credit to Biomass on Biomass's agreement to sell Banco Popular RLNG, which Plaintiffs assert amounted to unlawful tying of unrelated products or services under the BHCA. This claim should be dismissed with prejudice for two independent reasons.

*First*, as a threshold matter, Plaintiffs do not have standing to assert a BHCA claim against Banco Popular. Biomass, not Plaintiffs individually, purportedly suffered the injuries alleged in the Amended Complaint, and any damages Plaintiffs can try to claim for themselves are entirely derivative of their status as members of Biomass's parent company. Indeed, the Amended Complaint's purported damages calculation is based on Plaintiffs' alleged share of the amount by which Biomass supposedly has been injured, determined using Plaintiffs' respective ownership interests in GFC. Thus, any BHCA claim is Biomass's to assert, not Plaintiffs', and the Amended Complaint does not and cannot plead facts that would enable Plaintiffs to pursue the claim derivatively on Biomass's behalf.

*Second*, the Amended Complaint falls well short of pleading a viable BHCA claim. Under 12 U.S.C. § 1972(1)(C), it is unlawful for a bank to condition an extension of credit on a

requirement "that the customer provide some additional credit, property, or service" to the bank (with an exception for conditions that are usual in the banking industry). But there was no such conditionality in either the credit agreement or the entirely separate RLNG agreement, both of which contain unambiguous integration clauses stating that they constitute the entire agreements among the parties. Under the First Circuit's decision in *Executive Leasing Corp.* v. *Banco Popular de Puerto Rico*, 48 F.3d 66, 69 (1st Cir. 1995), where no conditionality "appears in the agreement itself, and the loan agreement, by its clear language, 'constitutes the entire agreement among the parties,'" any BHCA tying claim fails as a matter of law. Plaintiffs' allegations of conditionality not only find no support in the terms of the parties' agreements, but also are conclusory, implausible, and belied by the documents they cite.

## BACKGROUND[1]

### A.    The Parties

Banco Popular is a bank organized in Puerto Rico with its principal place of business also in Puerto Rico. (AC ¶ 5.) Plaintiff Gregory Boyd is a resident of Humacao, Puerto Rico, and a member of GFC, the parent company of Biomass, which is in the natural gas business and headquartered in Puerto Rico.[2] (*Id.* ¶ 3.) Plaintiff Jonathan Lassers is a resident of Uruguay and also a member of GFC. (*Id.* ¶ 4.)

---

[1] In ruling on a motion to dismiss, the Court may consider "the complaint, documents annexed to it, and other materials fairly incorporated within it," including "documents referred to in the complaint" and "matters that are susceptible to judicial notice." *Rodi* v. *S. New England Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004). Accordingly, in ruling on this motion, the Court may consider the full contents of the exhibits to the Amended Complaint, as well as the additional documents referenced in the Amended Complaint that are attached as exhibits to this motion and referred to herein as "Ex. __."

[2] The Amended Complaint alleges that Boyd and Lassers are "members and owners" of both Biomass and GFC. (AC ¶¶ 3-4.) Those allegations, however, are contradicted by the documents attached to the Amended Complaint, which show that Boyd and Lassers both have ownership

B.      **The Credit Agreement**

In 2018, Biomass executed an agreement with a Puerto Rican landfill for the rights to purchase liquid natural gas. (*Id.* ¶ 7.) Biomass planned to build a biorefinery plant that would convert the gas produced at the landfill into RLNG suitable for commercial and industrial use. (*Id.* ¶ 138.) Biomass's production facility also would capture tons of $CO_2$ and generate carbon and environmental tax credits potentially worth tens of millions of dollars. (*Id.* ¶ 19.)

Banco Popular agreed to give Biomass a loan for the construction of the biorefinery. Specifically, on September 15, 2020, Banco Popular and Biomass executed a credit agreement (the "Credit Agreement") that provided Biomass with access to an $11,869,250.00 credit facility. (ECF No. 7-3.) The Credit Agreement makes no reference to any agreement or requirement for Biomass to sell Banco Popular RLNG, and Section 10.15 of the Credit Agreement provides that the agreement and its accompanying loan documents "constitute the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral and written, relating to the subject matter hereto." (*Id.*)

Boyd served as one of several guarantors for Biomass's loan. (Ex. 1.) Two other GFC members, Olmar López Vidal and Olmar López Gómez, also were guarantors. (Exs. 2, 3.) And GFC itself was a fourth guarantor. (Ex. 4.) The guarantors all agreed to be jointly and severally liable for Biomass's debt to Banco Popular. (AC at 3 n.1; Ex. 4 § 2.)

---

stakes in GFC, not Biomass, because GFC is the 100% owner of Biomass. (Ex. 9 at 26 (schedule to the Sixth Amendment to the Credit Agreement stating that GFC is 100% owner of Biomass, Boyd owns 17.7% of the Class A Common Units of GFC, and Lassers owns 2.8% of the Class A common units of GFC); ECF No. 7-3 at 158 (GFC is 100% owner of Biomass); *see also* ECF No. 7-2 ¶¶ 27, 29.) "[I]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Yacubian* v. *United States*, 750 F.3d 100, 108 (1st Cir. 2014) (internal quotation marks omitted).

As construction moved forward, and with deadlines approaching, Biomass sought and received multiple extensions from Banco Popular.  In total, Banco Popular agreed to amend the Credit Agreement seven times over three years to give Biomass additional time to complete the biorefinery project, begin production, and pay back its loan.  (*See* Exs. 5-10; ECF No. 7-4.)

The first amendment came eight months after the parties signed the initial Credit Agreement.  On May 6, 2021, Banco Popular agreed to extend Biomass a "new revolving loan facility . . . in the amount of $812,500."  (Ex. 5 § 2.)  Biomass and all guarantors of the Credit Agreement—including Boyd and GFC—executed this amendment.  (*Id.*)

On March 2, 2022, Banco Popular agreed to amend the Credit Agreement for a second time, extending the termination date of the outstanding loan by seven months.  (Ex. 6.)  On July 26, 2022, Biomass and Banco Popular agreed to a third amendment to the Credit Agreement, which extended the loan's termination date by six months, increased the interest rate, required an additional equity contribution of $1.5 million, provided for a tranche of tax credits to be deposited in a restricted tax credits account, and modified the biorefinery budget to account for its increased cost.  (ECF No. 7-4 at § 2.)  Biomass nonetheless continued to "miss loan payments" and "construction deadline[s]," and it eventually defaulted on its gas purchase agreement with the landfill.  (AC ¶¶ 89, 97.)

On November 8, 2022, Banco Popular agreed to amend the Credit Agreement for a fourth time, extending the loan termination date by another two months and modifying the schedule for the biorefinery project.  (Ex. 7 § 2.)  The bank also agreed to extend an additional $1 million loan to Biomass.  (*Id.*)[3]

---

[3] The Amended Complaint incorrectly alleges that the additional $1 million loan was agreed to as part of the July 26, 2022 amendment.  (AC ¶ 97.)

On January 5 and April 27, 2023, the parties amended the Credit Agreement for a fifth and sixth time.  (Exs. 8, 9.)  These amendments, like the others, provided debt relief for Biomass by extending the termination date of the loan and modifying the biorefinery project schedule.  Under the sixth amendment, Biomass agreed to reallocate earmarked funds to make payments on the original loan, and GFC agreed to implement changes to its equity capital structure to raise additional funds.  (Ex. 9 §§ 2, 2(g).)

On September 27, 2023, Banco Popular agreed to amend the Credit Agreement for a seventh and final time.  (Ex. 10 at 1.)  This final amendment further extended the termination date of the loan and the project termination date, and it updated the project budget and schedule.  (*Id.* § 3.)  It also "grant[ed] a forbearance to [Biomass] with respect to certain defaults" on Biomass's debt payments.  (*Id.* at 1.)

## C.    Plaintiffs' RICO Action

Boyd and Lassers blamed fellow GFC members Olmar López Vidal and Olmar López Gómez (whom they refer to as "the Lópezes") for the biorefinery project's difficulties, and on April 25, 2022, Plaintiffs filed a lawsuit in this District against various members of GFC, third parties involved in the construction of the biorefinery project, Banco Popular, and others, alleging violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO") based on the allegation that the Lópezes had mismanaged the project and engaged in self-dealing by hiring their own construction companies for work on the biorefinery.  (AC ¶¶ 33, 82; *see* ECF No. 7-2.)  According to Plaintiffs, the biorefinery project was "out of money and past its completion date" because of the Lópezes' "thievery and incompetence."  (AC ¶ 94.)  Plaintiffs also alleged that Banco Popular had "agreed to the [Lópezes'] self-dealing."  (*Id.* ¶ 33.)

Following the filing of the RICO lawsuit, Biomass "missed more completion deadlines," failed to make its debt payments, and defaulted on its agreement with the landfill. (*Id.* ¶¶ 89, 97, 144.)

**D.      The RLNG Supply Agreement**

While one division of Banco Popular engaged with Biomass as a creditor, another division engaged with Biomass as a potential RLNG customer.   Plaintiffs allege that, on November 11, 2019, almost a year before Biomass entered into the Credit Agreement with Banco Popular, Biomass "sent a renewable liquified natural gas (RLNG) supply (Off Take) agreement to Banco Popular." (*Id.* ¶ 18.)  Boyd produced a copy of this alleged proposal in the related state court litigation.  The alleged proposal is an unsigned form agreement that did not include product information, pricing terms, or even the name of the proposed purchaser. (Ex. 11.)

More than two and a half years later, on July 18, 2022, Banco Popular and Biomass entered into an entirely different agreement for the purchase, sale, and delivery of RLNG (the "RLNG Supply Agreement").[4] (ECF No. 7-1 at 1.)  Under that agreement, Banco Popular agreed to upgrade its facilities so that they would be "capable of generating power using RLNG as fuel," and Biomass agreed to begin providing Banco Popular with RLNG once Biomass's biorefinery was "operational." (*Id.* at 19-20.)  The parties agreed that, for an initial term of ten years, Banco Popular would purchase up to "155 MMBtu of RLNG" per day at a price of US $14.00 per MMBtu. (*Id.* at 17-20.)

---

[4] The RLNG Supply Agreement provided that if Banco Popular became capable of utilizing RLNG before Biomass completed the biorefinery project and began producing RLNG, Biomass could provide Banco Popular with non-renewable liquid natural gas in the interim. (ECF No. 7-1 at 19-20.)

The RLNG Supply Agreement recognized that, under Puerto Rico law, "the buyer of RLNG is eligible for a 35% recycled products tax credit." (AC ¶ 127.) Accordingly, Section 2.7 of the agreement provided that "any current and future environmental incentives and tax credits under federal or state law to which Popular is entitled . . . regarding the RLNG and LNG purchased from [Biomass] will be retained by Popular." (ECF No. 7-1 § 2.7.)

The RLNG Supply Agreement also contained a liquidated damages clause. Section 5.3(F) provided that Biomass must pay Banco Popular a penalty of "$2,100 per day" if there was an "interruption of the supply of RLNG or LNG" that "exceeds ten (10) consecutive calendar days," and that renders Banco Popular's facilities "unable to operate as a direct result." (AC ¶ 104; ECF No. 7-1 § 5.3(F).)  This clause further provided that if Biomass "owns unencumbered, transferable carbon credits . . . Popular shall have the option of receiving [the payments] in the form of cash or in the form of carbon credits." (*Id.* § 5.3(F).)

The RLNG Supply Agreement also contained an integration clause.  Section 8.8 provided that the agreement and its accompanying documents "constitute the entire contract between [Banco Popular and Biomass], and supersedes all prior or contemporaneous agreements or understandings, written or oral, concerning the subject matter of [the RLNG Supply] Agreement." (ECF No. 7-1 § 8.8.)  The integration clause further provided that the RLNG Supply Agreement "may not be modified, amended or supplemented in any manner except by mutual agreement of the Parties and set forth in a writing signed by a duly authorized representative of each Party." (*Id.*)

Although nothing in the RLNG Supply Agreement was conditioned on the Credit Agreement or any of its amendments, the RLNG Supply Agreement acknowledged that, in addition to Banco Popular being Biomass's customer, Banco Popular (or one of its affiliates) could

also be Biomass's creditor. Accordingly, the parties agreed that Banco Popular would not be required to pay Biomass under the RLNG Supply Agreement to the extent that Biomass was delinquent on any obligation or debt to the bank or its affiliates. (ECF No. 7-1 § 2.8.) This common-sense provision allowed Banco Popular to "off-set any [Biomass] debt or obligation owed to [Banco Popular] or any of its affiliates that is more than ninety (90) days past due against any payment [Banco Popular] owes to [Biomass] hereunder." (*Id.*) In other words, if Biomass had satisfied its obligation to supply RLNG to Banco Popular—which, as Plaintiffs acknowledge, Biomass did not—instead of being forced to pay Biomass under the RLNG Supply Agreement and separately seek to collect any delinquent debts (whether under the Credit Agreement or any other arrangement), the bank could forgo payment under the RLNG Supply Agreement and consider a corresponding amount of delinquent debt satisfied.

E.    **The Collections Action and Counterclaim**

The RLNG Supply Agreement reinforces that completion of the biorefinery project was in both Biomass's and Banco Popular's best interest. As both a lender and a client, Banco Popular, like Biomass, would benefit from Biomass commencing operations and fulfilling its contractual commitments. Unfortunately, however, even though Banco Popular agreed to forbearance, deadline extensions, and revised project completion dates, Biomass never managed to complete the project or catch up on its debt payments. (AC ¶ 188 ("The project remains uncompleted and in default to this day.").) Accordingly, on May 21, 2024, Banco Popular filed a collections action in the Court of First Instance of Puerto Rico, seeking over $12 million in cash or collateral from Biomass and the Credit Agreement's guarantors, including Boyd. (Ex. 12 ¶¶ 84,

88.)[5]  In response, Boyd filed a rambling, 100-page response and counterclaim alleging, among other things, that Banco Popular had conditioned the Credit Agreement or one or more of its amendments on Biomass's agreement to the RLNG Supply Agreement in violation of the BHCA. (Ex. 13.)

### F.    This Action

On December 9, 2024, Boyd, with Lassers joining him, filed this action based on the same allegations that are the basis for Boyd's counterclaim in the state court collections action. (ECF No. 1.)  Three days later, Plaintiffs filed a substantively identical Amended Complaint.  (ECF No. 7.)  The Amended Complaint asserts a single claim for an alleged violation of 12 U.S.C. § 1972(1)(C), the BHCA provision that prohibits banks from engaging in certain anticompetitive tying arrangements.  Plaintiffs contend that Banco Popular unlawfully conditioned an extension of credit to Biomass on Biomass's assent to the RLNG Supply Agreement, but it is unclear from Plaintiffs' confusing and contradictory allegations which purported extension of credit Plaintiffs allege was improperly tied to the RLNG Supply Agreement.

The Amended Complaint asserts that Banco Popular's alleged violation of the BHCA caused Biomass damages in the amount of $338,013,683, which Plaintiffs allege should be trebled to $1,014,041,049 under 12 U.S.C. § 1975.  (AC ¶ 214.)  Plaintiffs claim that they are entitled to a share of those alleged damages based on "their respective percentage ownership in [GFC]."  (*Id.* at 46.)  Plaintiffs, however, make no effort to establish standing to sue on Biomass's behalf.

---

[5] Defendant is separately requesting leave to file Exhibits 12 and 13 in their original Spanish language and a 30-day period within which to submit certified translations thereof, as required by Local Rule 5(c).

**ARGUMENT**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). Here, the Amended Complaint should be dismissed because (i) Plaintiffs do not allege facts establishing that they have standing to assert a BHCA claim against Banco Popular, and (ii) even if Plaintiffs could demonstrate standing, the Amended Complaint does not plead facts that would establish an anticompetitive tying arrangement under the BHCA.

**I.    Plaintiffs Do Not Have Standing To Assert a BHCA Claim Against Banco Popular.**

"[S]tanding is a 'threshold question in every federal case[.]'" *United States* v. *AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992). "When evaluating a motion to dismiss for lack of jurisdiction, including lack of standing, it 'is to be presumed that a cause lies outside the Court's jurisdiction and the burden of establishing the contrary rests upon the plaintiff.'" *Union de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan* v. *UBS Fin. Servs. Inc. of Puerto Rico*, 2013 WL 12237669, at *2 (D.P.R. July 9, 2013) (quoting *Kokkonen* v. *Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (alterations accepted)); *see also Hochendoner* v. *Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) ("Just as the plaintiff bears the burden of plausibly alleging a viable cause of action, so too the plaintiff bears the burden of pleading facts necessary to demonstrate standing."). Plaintiffs have failed to carry their burden to plead standing because they do not allege that they suffered a direct injury and they have made no attempt to plead derivative standing to assert a BHCA claim on Biomass's behalf.

**A.    Plaintiffs Do Not Allege That They Suffered a Direct Injury.**

"[B]ecause a [company] and its shareholders are distinct juridical persons, 'actions to enforce corporate rights or redress injuries to a [company] cannot be maintained by a stockholder in his own name even though the injury to the corporation may incidentally result in

-11-

the depreciation or destruction of the value of the stock." *Pagan* v. *Calderon*, 448 F.3d 16, 28 (1st Cir. 2006).  It is thus axiomatic that the stockholders of a corporation or members of an LLC lack "standing to sue in their personal capacities unless the alleged misconduct causes harm to them separate and distinct from the injury inflicted upon the [company]." *Id.* at 29; *see also Bishay* v. *Am. Isuzu Motors, Inc.*, 404 F.3d 491, 495 (1st Cir. 2005) (only the corporation or a stockholder acting derivatively in the corporation's name ordinarily may sue to redress an injury to the corporation).

The Amended Complaint makes abundantly clear that Plaintiffs seek damages based on an alleged injury to Biomass and a corresponding loss in the value of their ownership stakes in GFC, not any direct injury that Plaintiffs themselves allegedly suffered.[6]  (*See*, *e.g.*, AC ¶ 161 ("Banco Popular injured Biomass Green Fuels by destroying [its] value."); *id.* ¶ 150 ("[Biomass] now has a negative value.").)  Plaintiffs do not allege any direct injury that affects them "in a personal and individual way." *Pagan*, 448 F.3d at 27; *see also id.* at 29–30 ("The short of it is that where, as here, the [company] incurs the only direct injury from the alleged misconduct, the [company] . . . is the only proper party to bring suit for that injury.").  Indeed, Plaintiffs attempt to calculate their alleged injury based on Biomass's alleged injury and their alleged percentage ownership of GFC.  (AC ¶ 214 ("Boyd is entitled to be paid 24.7%" of the damages that Biomass allegedly incurred, and "Lassers is entitled to be paid 2.8%"); *see also id.* at 46 (requesting judgment for Plaintiffs "in an amount not less than their respective percentage ownership").)

---

[6] Biomass has already effectively conceded that it has suffered no such injury by repeatedly recognizing that it owes Banco Popular millions of dollars under the Credit Agreement and its amendments and that it has no "defenses, off-sets, claims or counterclaims, of any nature . . . against [Banco Popular], directly or indirectly related to the Outstanding Indebtedness, the Credit Agreement, and all the other Loan Documents, and any and all such defenses, off-sets, claims and counterclaims are hereby expressly and forever waived and released." (*See* Exs. 5-8, 10 §§ 1(a), 1(b); Ex. 9 §§ 1(a), 1(c); ECF 7-4 §§1(a), 1(b).)

Although Boyd is a guarantor under the Credit Agreement, he does not allege that he has suffered any direct injury in that capacity.  Again, the only injury he alleges is derivative of the alleged injury to GFC, which is derivative of the alleged injury to Biomass, and his status as a personal guarantor does not confer standing to sue for Biomass's alleged losses.  *See*, *e.g.*, *Mid-State Fertilizer Co.* v. *Exch. Nat'l Bank of Chicago*, 877 F.2d 1333, 1336 (7th Cir. 1989) ("Guarantors are contingent creditors," and "creditors cannot recover directly for injury inflicted on a firm, so guarantors as potential creditors likewise cannot recover.").[7]

### B.    Plaintiffs Do Not Plead Standing To Sue Derivatively on Biomass's Behalf.

Under Federal Rule of Civil Procedure 23.1, a plaintiff seeking to assert a claim derivatively on behalf of a company must "allege with particularity" that he has made a pre-suit demand on the company or that "such a demand would have been futile."  *Union de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan* v. *UBS Fin. Servs. Inc. of Puerto Rico*, 704 F.3d 155, 163 (1st Cir. 2013); *Gonzalez Turul* v. *Rogatol Distributors, Inc.*, 951 F.2d 1, 2 (1st Cir. 1991) (plaintiff must "plead with particularity either that demand was made on the [company] or that demand was futile").  "[T]he circumstances in which a demand is required or, conversely, excused are determined by [state law]."  *Union de Empleados*, 704 F.3d at 163.

Because "Puerto Rico law does not specifically elaborate the requirements of demand or when it is excused," courts in Puerto Rico "look to Delaware corporate law, on which Puerto Rico corporate law is modeled."  *Id.* (internal quotation marks omitted).  Under Delaware law, "the issues in determining demand futility" for limited liability companies such as Biomass

---

[7] Lassers is not even a personal guarantor.  The Amended Complaint alleges only that Lassers "is a participant owner of GFC" (AC ¶ 4), which is itself a guarantor under the Credit Agreement. Accordingly, for Lassers to have standing based on GFC's guarantee, he would need to allege facts establishing standing to sue on GFC's behalf, which he has not attempted to do.

are "identical to those in corporation law." *Ishimaru* v. *Fung*, 2005 WL 2899680, at \*12 (Del. Ch. Oct. 26, 2005); *see also* 6 Del C. § 18-1001; 14 P.R. Laws Ann. §§ 4003, 4004.

Regardless of the standard, however, Plaintiffs here have plainly failed to meet it. The Amended Complaint does not allege that Plaintiffs made a pre-suit demand on Biomass or that that they were excused from doing so, much less plead such facts with the requisite particularity. *Gonzalez Turul*, 951 F.2d at 3 (a court "need not consider the question of whether, under [state] law, demand would have been excused" where plaintiff fails to "allege with particularity the facts that would lead to that conclusion"). Thus, Plaintiffs have failed to plead that they have standing to assert a BHCA claim on Biomass's behalf, and the Amended Complaint should be dismissed.[8]

## II.     The Amended Complaint Fails to State a Tying Claim Under the BHCA.

Even if Plaintiffs had standing, the Amended Complaint fails to adequately allege that Banco Popular violated the BHCA, because the terms of the parties' agreements, including the integration clauses, foreclose Plaintiffs' conclusory allegations that Banco Popular conditioned an extension of credit on Biomass's agreement to supply RLNG.

Under 12 U.S.C. § 1972(1)(C), a bank may not condition an extension of credit on a requirement "that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with" an extension of credit. To state a claim under that provision, a plaintiff must adequately plead that "(1) the bank imposed an anticompetitive tying arrangement; (2) the arrangement was unusual in the banking industry; and

---

[8] In a derivative suit, the company "is an indispensable party within the meaning of Fed. R. Civ. P. 19." *TC Invs., Corp.* v. *Becker*, 733 F. Supp. 2d 266, 283 (D.P.R. 2010). Thus, Plaintiffs' failure to name Biomass as a nominal party is an additional reason that their claim must be dismissed under Rule 12(b)(7). *Id.* at 287 (dismissing derivative claim for failure to join LLC as a party).

(3) the practice benefitted the bank." *Méndez Internet Mgmt. Servs., Inc.* v. *Banco Santander de Puerto Rico*, 2009 WL 1392189, at \*5 (D.P.R. May 15, 2009) (internal quotation marks omitted), *aff'd*, 621 F.3d 10 (1st Cir. 2010).

The Amended Complaint fails to plead that Banco Popular imposed an anticompetitive tying arrangement because it does not plausibly allege that the "bank conveyed an intention to withhold credit unless the borrower fulfilled a prerequisite of purchasing or furnishing some other product or service from the bank." *Méndez*, 2009 WL 1392189, at \*5 (internal quotation marks omitted). Indeed, it is not even clear from the Amended Complaint's scattershot allegations what "extension of credit" Plaintiffs allege Banco Popular supposedly conditioned on Biomass's assent to the RLNG Supply Agreement. At one point, the Amended Complaint alleges that "Banco Popular conditioned its extension of the [original] Non-Revolving Credit Agreement" in September 2020 on the RLNG Supply Agreement that the parties did not enter into until April 2022. (AC ¶ 6.) That allegation is a chronological impossibility. At other points, the Amended Complaint alleges that Banco Popular conditioned one or more of the later amendments to the Credit Agreement on Biomass's acquiescence to the RLNG Supply Agreement. (*See*, *e.g.*, AC ¶ 91 ("[Biomass] capitulated to a RLNG Off Take Agreement . . . ***in exchange for the bank's forbearance on the outstanding loan***.") (emphasis added);[9] *id.* ¶ 97 (Banco Popular "extended the missed construction deadline" to the Credit Agreement because "[t]he bank wanted the rights to the RLNG"); *id.* ¶ 160 ("Banco Popular required [Biomass] to sell RLNG for 65% below its market

---

[9] To the extent Plaintiffs claim that mere forbearance by Banco Popular was conditioned on assent to the RLNG Supply Agreement, that would not even qualify as an extension of credit within the meaning of the BHCA. *Exec. Leasing Corp.* v. *Banco Popular De Puerto Rico*, 1994 WL 448985, at \*8 (D.P.R. June 20, 1994) ("To construe the concept of 'extension of credit' within the context of [the BHCA] to include any extension of time to pay a debt is too encompassing and would only restrain banks from granting extensions of time to their customers.").

price and give away the Carbon Credits for no consideration in return to Banco Popular in exchange for . . . an additional $1 million expansion of the direct loan.").)

Regardless of which of these contradictory theories Plaintiffs choose to pursue, the express terms of Banco Popular's agreements with Biomass foreclose their BHCA claim.  The First Circuit has held that even where, unlike here, a plaintiff offers "extrinsic evidence" of conditionality, a BHCA claim fails as a matter of law if "no such restriction appears in the agreement itself, and the loan agreement, by its clear language, 'constitutes the entire agreement among the parties.'"  *Exec. Leasing Corp.*, 48 F.3d at 69.  That holding is fatal to Plaintiffs' BHCA claim here.  Plaintiffs do not and cannot allege that the Credit Agreement or any of its amendments were expressly conditioned on the RLNG Supply Agreement (or vice versa), and the integration clauses of each of those agreements leave no doubt that they constitute the parties' entire agreements with respect to their subject matter.  That should be the end of this case.  *See Vulcan Tools of Puerto Rico* v. *Makita USA, Inc.*, 23 F.3d 564, 567 (1st Cir.1994) (under Puerto Rico law, "[w]hen an agreement leaves no doubt as to the intention of the parties, a court should not look beyond the literal terms of the contract").[10]

Notwithstanding the absence of any conditionality in the parties' agreements and the existence of unambiguous integration clauses, the Amended Complaint points to several elements of the RLNG Supply Agreement that Plaintiffs say were unfairly favorable to Banco Popular in an effort to create an appearance of conditionality.  Under *Executive Leasing*, these

---

[10] Plaintiffs also allege that a separate "NMTC loan" was conditioned on the RLNG Supply Agreement.  (AC ¶ 6.)  But Banco Popular is not even a party to that agreement and thus could not have extended credit to Biomass through it. (Ex. 15.)  Moreover, the "NMTC loan" was agreed to on September 15, 2020, and thus could not possibly have been conditioned on an RLNG Supply Agreement executed more than two years later.  (*Id.* at 1.)

allegations cannot overcome the lack of conditionality in the parties' agreements and the broad integration clauses.  In any event, none of Plaintiffs' allegations withstand scrutiny.

Plaintiffs first cite Section 2.8 of the RLNG Supply Agreement, which provides that "Popular may off-set any [Biomass] debt or obligation owed to Popular or any of its affiliates that is more than ninety (90) days past due against any payment Popular owes to [Biomass] hereunder." (ECF No. 7-1 § 2.8; AC ¶ 102.)  Plaintiffs assert that this provision "shows the Credit Agreement is tied to the [RLNG Supply] Agreement" because a "standard supplier agreement would not have a clause allowing payment of [Biomass's] debts by offsetting Banco Popular's bills for RLNG."  (AC ¶ 103.)   But the offset provision does not even reference the Credit Agreement.  It simply allows Banco Popular to avoid being forced to pay Biomass under the RLNG Supply Agreement while Biomass is in default under the Credit Agreement or any other arrangement with Banco Popular.[11]  Nothing in Section 2.8 suggests that any extension of credit was **conditioned** on the terms of the RLNG Supply Agreement.

Plaintiffs next assert that Section 5.3(F) of the RLNG Supply Agreement suggests conditionality.  That section provides that if there is an "interruption of the supply of RLNG or LNG" that "exceeds ten (10) consecutive days" and that renders Banco Popular's facilities "unable to operate as a direct result," Biomass will pay Banco Popular a penalty of "$2,100 per day."  (*Id.* ¶ 104; ECF No. 7-1 § 5.3(F).)   Further, if Biomass "owns unencumbered, transferable carbon credits, . . . Popular shall have the option of receiving [the payments] in the form of cash or in the form of carbon credits."  (*Id.*)   Plaintiffs allege that this provision is atypical and suggests

---

[11] Far from being unusual, such an offset is precisely what happens any time parties are both debtors and creditors, and it is fully consistent with Puerto Rico law.  *See* 31 P.R. Laws Ann. §§ 9221, 9222 (providing that when two parties are mutually creditors and debtors of one another, and both debts are due, liquid, and unencumbered, then the debts are extinguished in equivalent amounts).

-17-

conditionality because if Biomass "gave all their other customers carbon credits," Biomass "would have no surplus 'unencumbered, transferable carbon credits,'" which in turn would make "paying Banco Popular in carbon credits impossible." (AC ¶ 105.) Even crediting Biomass's assertion that this penalty is not a "normal business practice," there is no basis to infer from Section 5.3(F) that any extension of credit was *conditioned* on the RLNG Supply Agreement.

Plaintiffs also repeatedly allege that Banco Popular received carbon credits "for free" under the RLNG Supply Agreement. (*E.g.*, AC ¶¶ 138, 157.) Plaintiffs appear to be referencing a term in the RLNG Supply Agreement under which Biomass would "transfer free of charge all [Renewable Energy Credits] and [Carbon Credits] *to which Popular may be entitled to by Law or regulation*." (*Id.* ¶ 92 (emphasis added).) Meanwhile, under the same provision, Biomass would "retain all [Renewable Energy Credits] and [Carbon Credits] *to which [Biomass] is entitled by Law or regulation*." (*Id.* (emphasis added).) Simply agreeing that each party would retain tax credits to which they are otherwise entitled is hardly nefarious, and it does not suggest that any extension of credit was conditioned on the RLNG Supply Agreement.

Finally, Plaintiffs rely heavily on the supposedly favorable pricing that Biomass gave Banco Popular. (*See id.* ¶¶ 6, 91, 160, 161, 214.) Conspicuously, however, Plaintiffs do not allege what RLNG pricing Biomass offered to other customers when it entered into the RLNG Supply Agreement with Banco Popular in 2022. Instead, Plaintiffs allege only that market prices supposedly increased over the course of *2024*. Specifically, Plaintiffs assert that "[t]oday, Island Renewable Energy owned by Venture Engineering, a [Biomass] competitor[,] offers renewable natural gas in Puerto Rico for $40 MMBtu." (*Id.* ¶ 128.) Separately, Plaintiffs allege that in "April 2024 . . . the average price of RLNG [was] over $29.91 per MMBTU." (*Id.* ¶ 126.) And a separate RLNG supply agreement with AstraZeneca that Plaintiffs cite was priced at $21.50 per

MMBtu on February 19, 2024. (*Id.* ¶ 146; Ex. 14 at 40.) To the extent that any of those datapoints are relevant, they simply suggest that the price of RLNG has been increasing over time and was likely significantly lower in September 2022 than it was in 2024.[12] None of these allegations suggest, however, that any extension of credit was conditioned on the RLNG Supply Agreement.

In sum, Plaintiffs' theory boils down to an assertion that the economic terms of the RLNG Supply Agreement were so favorable to Banco Popular that there must have been an unstated *quid pro quo* for one or more extensions of credit by Banco Popular, but the facts Plaintiffs allege do not support that conclusion. *See Méndez Internet Mgmt. Servs., Inc.* v. *Banco Santander de Puerto Rico*, 621 F.3d 10, 16 (1st Cir. 2010) (affirming dismissal of BHCA claim because plaintiff had "not offered sufficient supporting facts" of an actual tying arrangement). More fundamentally, no such conditionality appears anywhere in the terms of the parties' agreements, and those agreements, by their clear language, constitute the entire agreement between the parties. Under binding First Circuit precedent, Plaintiffs' BHCA claim fails as a matter of law. *Exec. Leasing Corp.*, 48 F.3d at 69.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

---

[12] Even if the 2024 AstraZeneca contract and the 2022 RLNG Supply Agreement were contemporaneous, comparing their prices does not demonstrate anything because they have entirely different terms. For example, the AstraZeneca contract ran for only five years (Ex. 14 at 23), while the RLNG Supply Agreement was guaranteed for ten years (ECF No. 7-1 at 1). AstraZeneca agreed to purchase only "up to 100 average MMbtu/day" from 2026 through 2029 (Ex. 14 at 24), while Banco Popular agreed to purchase up to "155 MMBtu of RLNG" per day for the duration of the ten-year contract (ECF No. 7-1 at 17). It is not surprising that Biomass would have set a lower price for Banco Popular because the bank agreed to a purchase more RLNG per day for a longer period of time.

**WHEREFORE**, Banco Popular respectfully requests that the Court dismiss the Amended Complaint with prejudice.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 7th day of February 2025.

**IT IS HEREBY CERTIFIED** that on this same date, the undersigned counsel electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**SULLIVAN & CROMWELL LLP**

125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

/s/ Richard C. Pepperman II
(*Pro hac vice application pending*)
peppermanr@sullcrom.com

/s/ Benjamin R. Walker
(*Pro hac vice application pending*)
walkerb@sullcrom.com

/s/ Aaron J. Blake
(*Pro hac vice application pending*)
blakea@sullcrom.com

**PIETRANTONI MÉNDEZ & ALVAREZ LLC**

Popular Center, 19th Floor
208 Ponce de León Avenue
San Juan, Puerto Rico 00918
Telephone: (787) 773-6000
Facsimile: (787) 274-1470

/s/ María Dolores Trelles Hernández
USDC-PR Bar No. 225106
mtrelles@pmalaw.com

/s/ María Elena Martínez
USDC-PR Bar No. 305309
mmartinez@pmalaw.com

*Attorneys for Defendant Banco Popular de Puerto Rico*

-20-