**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| GREGORY BOYD, JONATHAN LASSERS | CIVIL NO.: 24-CV-01569 (PAD) |
| Plaintiffs, | FOR: |
| | Bank Holding Company Act Anti-Tying Claim |
| **vs.** | |
| BANCO POPULAR DE PUERTO RICO | JURY DEMAND: TO BE SEEN BY JURY |
| Defendant | |

**MOTION FOR LEAVE TO SUPPLEMENT THE COMPLAINT**
**PURSUANT TO FEDERAL RULE OF PROCEDURE 15(d)**

**TO THE HONORABLE COURT:**

Plaintiffs Gregory Boyd and Jonathan, by and through their undersigned attorneys very respectfully **STATE, ALLEGE, AND PRAY**:

1. Since the filing of the Amended Complaint[1] in this case, the following event has occurred: the Majority of Members of GFC Holdings, LLC, the owner of Biomass Green Fuels, LLC voted for and gave Written Consent to enter this lawsuit as Plaintiffs together with Boyd and Lassers and those companies have hired the undersigned as its counsel.

---

[1] The case was amended as of right to include information inadvertently omitted from the original Complaint.

1

*See* Exhibit 1 at 2.

2. **The Relevant Operating Agreements and their Consequences**

The above action, along with the other actions authorized in the Member Resolution are permitted and, indeed, required by the companies' Operating Agreement, as amended. In relevant part, GFC Holdings, LLC operates pursuant to the First Amendment to the Second Amended and Restated Operating Agreement, dated May 22, 2023. *See* Exhibit 2 to this Motion.

Under the terms of the First Amendment to the Second Amended and Restated Operating Agreement, two fundamental Sections enshrine the rights of the Majority of Members:

"**Section 3.2 Members**. The Members of the Company are the Persons listed in **Exhibit A** hereto, those parties who from time to time execute this Agreement, counterparts hereof or a joinder agreement as Members and those other parties who comply with any other conditions for becoming a Member as set forth herein and are recorded in **Exhibit A** as a Member. Subject to any protective provisions in favor of the holders of the Series A Preferred Units, the Members may, subject to Section 4.2(j), act by written consent by the Majority Approval of the Members (a "**Member Resolution**")."

*See* Exhibit 2 at the 24th page [the document does not have page numbers] (Emphasis added.) That is precisely what a majority of the members have done by issuing the attached Resolution, which authorizes the dismissal of attorney Abesada, the hiring of Becker Vissepó, and the withdrawal of the Motion to Dismiss filed by GFC Holdings and Biomass Green Fuels. The resolution explains the rationale for taking the actions authorized therein:

"**WHEREAS**, the Company is seeking to protect its rights and properly recover the value of its business and assets, and the Majority of Approval of the Members have determined that it is in the Company's best interests to enter into legal action to do so, consistent with the fiduciary duties of the Board of Managers under 14 L.P.R.A. § 3965 to act in the best interests of the Company and all its Members.
**WHEREAS**, the Company is seeking to ensure that the best interests of the Company, its Unitholders, and the Majority of the Members desire to provide proper standards of conduct and are properly represented by Managers who are not conflicted in their actions."

Exhibit 1 at 1.

2

Section 4.2(j), in turn, provides for the protection of the Series A Preferred Holders only in the following situations:

"(j) Protective Provisions. So long as ten percent (10%) of the Series A Preferred Units are outstanding, in addition to any other vote or approval required under this Agreement, the Company will not, without the written consent of the Series A Holders holding at least a majority of the Series A Preferred Units then outstanding, either directly or by amendment, merger, consolidation, or otherwise: (i) effect any waiver or amendment of any covenant, term or condition of the Agreement and the Certificate of Formation of the Company" *[Plaintiffs have not done so.]* " (ii) create or authorize the creation of or issue any other security convertible into or exercisable for any equity security, having rights, preferences or privileges senior to or on parity with the Series A Preferred Units, or increase the authorized number of units of Series A Preferred Units;" *[Plaintiffs have not done so.]* "(iii) effect any Deemed Liquidation Event or other conveyance, sale, lease, transfer or other disposition of all or substantially all of the Company's business or assets, or the merger, consolidation or similar transaction of the Company with another entity;" *[Plaintiffs have not done so.]* "or (iv) effect the liquidation, recapitalization, reorganization or dissolution of the Company or the filing of a voluntary bankruptcy petition by the Company." *[Plaintiffs have not done so.]*

*Id.* at the 30th page.

Thus, under Section 4.2(j), the only limitation on actions by written consent, is not relevant to the actions the Majority of the Members have taken through the attached Resolution.

Section 4.3 of that same agreement provides:

**Section 4.3 Approvals by the Members**. Any actions with respect to the Company that are subject to the approval, consent, determination or vote of the Members shall require Majority Approval of the Members. *Id.*

The authority to manage the company *is vested in the Managers by the Members*:

**Section 6.1 Management Generally**.

(a) Except as otherwise expressly required under this Agreement (including, without limitation, section 4.2(j)) or the Act, the full, absolute and exclusive right, power and authority to manage the Company is vested in, and reserved to, the Board of one or more Managers *designated by the Members* (the "**Board of Managers**"). *Id.* at the 33rd page. (Emphasis added.]

The "full, absolute and exclusive right, power and authority to manage the Company is vested in and reserved to" the Managers ***by the Members***. It is given to the Managers by the Members who ***maintain*** the right to act by written consent by the Majority Approval of the Members (a "**Member Resolution**") - subject only to any protective provisions in favor of the holders of the Series A Preferred Units, including Section 4.2(j). *Id.* at the 31st page. **As a review of Section 4.2(j) reveals, there are no protective provisions that prohibit the Majority of Members from acting by written consent in this context, in fact it is expressly required under Section 3.2 set forth above.**

3.    In sum, a Majority of the Members – the owners – of GFC Holdings, LLC, which is the sole owner of Biomass Green Fuels, LLC has authorized the filing of the attached Proposed Second Amended Complaint.

4.    In addition to that development, on February 27, 2025, Banco Popular announced the retirement of Ignacio Alvarez, its CEO, and his replacement with Javier Ferrer, the Bank's COO. Alvarez signed and promoted the offtake agreement with BGF. Ferrer is the person who received evidence of the Lopezes' and fraud with the Bank from Plaintiff Lassers and did nothing to stop the crimes in progress.

5.    Rule 15(d) of the Federal Rules of Civil Procedure allows a plaintiff "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *See also Griffen v. School Bd. Of*

*Prince Edward Cty.,* 377 U.S. 218, 227 (1964); *U.S. ex rel. Gadbois v. Pharmerica, Corp.,* 809 F.3d 1,4 (1st Cir. 2015) The majority of members approval occurred on June 23, 2025, months after the original complaint was filed.

6. Plaintiffs have also learned that on January 10, 2025, a qualified potential investor in the biorefinery project provided a term sheet to Banco Popular to purchase the defaulted loans, pay 100% to the creditors, complete the project and keep BGF operating. Banco Popular refused, accepted a lesser offer, liquidating 100% of GFC/BGF's assets for pennies on the dollar and did not pay creditors in full. That same investor approached each company that had an offtake agreement with GFC Holdings and sought to adjust such agreements to a higher cost closer to market value. Every such company except Banco Popular agreed to adjust its contract to the higher cost.

7. Despite a counterclaim filed by Boyd in *Banco Popular v. BGF et al*, Case No. SJ2024CV04616 (P.R. Super. Ct. filed May 22, 2024), Banco Popular participated in the sale of the promissory note and rights to VRM-Penzini. On February 7, 2025, VRM-Penzini closed an asset acquisition agreement. VRM-Penzini's acquisition of the assets of BGF allowed Banco Popular to maintain their favorable offtake agreement.

8. In addition to the information in the preceding paragraphs, Plaintiffs have also learned the companies' CEO emailed Banco Popular about the RLNG offtake agreement during the closing of the initial Credit Agreement; that BPPR released $610,000 in cash collateral against a tax credit bond to BGF after the RICO was filed; that BGF's CEO told BPPR that BGF was negotiating a contract with Amgen with a price of $19.50 [Popular's price was $14] a week before the offtake agreement was signed; and a side agreement for 100% of the $1.625 million Tranche Two Tax Credit would be available for project expenses instead of debt reduction before the closing of the Third

Amendment to the Credit Agreement.

9. The Second Amended Complaint also attaches dozens of additional exhibits to support the allegations made.

10. Plaintiffs seek leave to file the attached Proposed Second Amended Complaint which includes the above transaction and the additional information.

11. The addition of the companies as Plaintiffs moots much of the Motion to Dismiss filed by Defendant, since even Banco Popular concedes GFC Holdings and Biomass Green Fuels have standing to bring this case.

**WHEREFORE**, Gregory Boyd and Jonathan Lassers very respectfully ask this Honorable Court to grant them leave to file the attached Proposed Second Amended Complaint.

Dated June 30, 2025

## Respectfully submitted,

S/Jane Becker Whitaker/
**JANE BECKER WHITAKER**
USDC No. 205110
PO Box 9023914
San Juan, PR 00902-3914
Tel.(787) 585-3824
E-mail: jbw@beckervissepo.com
janebeckerwhitaker@gmail.com

S/Jean Paul Vissepó Garriga/
**JEAN PAUL VISSEPÓ GARRIGA**
USDC No. 221504
PO Box 367116
San Juan, PR 00936-7116
Tel.(787) 633-9601
E-mail: jp@vissepolaw.com

S/ Luis E. Miñana/
**Luis E. Miñana, Esq.**
PR RUA No. 16297 USDC-PR No. 225608
**ESPADA, MIÑANA, & PEDROSA LAW OFFICES, PSC.**
122 Calle Manuel Dómenech Altos Urb. Baldrich
San Juan, PR 00918
minanalaw@yahoo.com www.securitiesatty.com
Tel.: (787) 758-1999 Mob. (787) 402-2226