# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF PUERTO RICO

GFC HOLDINGS, LLC,

BIOMASS GREEN FUELS, LLC

GREGORY BOYD, and JONATHAN LASSERS,

Plaintiffs,

CIVIL NO.: 24-CV- 1059 (PAD)

Bank Holding Company Act

Anti-Tying Claim

Jury Trial Demanded

V.

BANCO POPULAR DE PUERTO RICO

Defendant

## SECOND AMENDED COMPLAINT

# Table of Contents

TABLE OF AUTHORITIES..................................................................................................3

    CASES ..........................................................................................................................3

    STATUTES ....................................................................................................................3

    OTHER AUTHORITIES ................................................................................................4

INTRODUCTION ..............................................................................................................5

JURISDICTION AND·VENUE.........................................................................................9

THE PARTIES ...................................................................................................................9

    ENTITIES .....................................................................................................................10

    DEFINITIONS ..............................................................................................................13

FACTUAL ALLEGATIONS ............................................................................................16

    BPPR BREACHES OF FIDUCIARY RESPONSIBILITIES FOR ACCESS TO RLNG .....................18

    PAY AND PERFORMANCE BOND FRAUD ..........................................................................23

    BGF DEFAULTS LEAD TO THE TIED OFFTAKE AGREEMENT .............................................33

    THE OFFTAKE AGREEMENT ...........................................................................................35

    THE REWARDS OF TYING THE OFFTAKE AGREEMENT .....................................................38

    ASTRAZENECA OFFTAKE AGREEMENT ..........................................................................53

    BANCO POPULAR TAKES ESTOPPEL AND SUES FOR COLLECTION .....................................53

BREACH OF FEDERAL ANTI-TYING STATUTE 12 U.S.C. 1972 ...........................55

DAMAGES CAUSAL NEXUS ........................................................................................57

    PRAYER FOR RELIEF ...................................................................................................59

# TABLE OF AUTHORITIES

## Cases

| Case Name | Citation | Page(s) |
|---|---|---|
| *Ballester Hermanos Inc. v. Olmar Lopez-Gomez et al.* | Case No. SJ2018CV03188 (P.R. Super. Ct. 2018) | 19 |
| *Banco Popular v. BGF et al.* | Case No. SJ2024CV04616 (P.R. Super. Ct. filed May 22, 2024) | 44, 54 |
| *Boyd v. Lopez, Civ 3:22-cv-01190(GMM)* | Document 145-1 (D.P.R. filed Jan. 23, 2023) | 6, 33, 34, 40, 44 |

## Statutes

| Authority | Citation | Page(s) |
|---|---|---|
| Bank Holding Company Act, Anti-Tying Provision | 12 U.S.C. § 1972 | 7, 9 16, 17, 22 36, 39, 41, 42, 44, 55, 56, 59, |
| Bank Holding Company Act, Remedies for Anti-Tying Violations | 12 U.S.C. § 1975 | 8, 17, 55, 59, |
| Investment Tax Credit | 26 U.S.C. § 48 | 15, 40 |
| Federal Question Jurisdiction | 28 U.S.C. § 1331 | 9 |
| Venue in Federal District Courts | 28 U.S.C. § 1391(b) | 9 |
| Venue for Specific Federal Actions | 28 U.S.C. § 1400(a) | 9 |
| Federal Tax Credit for Renewable Fuels | Inflation Reduction Act, 45Z Provision | 16, 48 |
| Puerto Rico Recycled Products Tax Credit | Law 73-2008, Section 2(d)(1)(1)(ii) | 16, 44, 47, 48 |
| Carbon Dioxide Capture and Storage Tax Credit | Section 45Q | 16, 61 |

## Other Authorities

| Authority | Citation | Page(s) |
|---|---|---|
| Environmental, Social, and Governance (ESG) Strategy | BPPR 2022 Proxy Statement | 46 |
| Market Share in Loans and Deposits | Fitch Ratings | 17 |
| Market Share and Financial Status | Popular, Inc. 2025 1st Quarter Financial Results | 17 |
| RLNG Pricing Data | U.S. Department of Energy Alternative Fuel Report | 35, 47, 56, |

**TO THE HONORABLE COURT:**

Plaintiffs GFC Holdings, LLC, Biomass Green Fuels, LLC, Gregory Boyd, and Jonathan Lassers, by and through their undersigned attorneys, very respectfully state, allege and pray:

**INTRODUCTION**

In February 2019, Banco Popular de Puerto Rico ("BPPR") began a relationship with Biomass Green Fuels, LLC ("BGF") to finance a plant producing Renewable Liquefied Natural Gas (RLNG) from landfill gas at Puerto Rico's largest landfill, operated by El Coqui Landfill Company. RLNG offered BPPR environmental, social, and governance (ESG) benefits and marketing advantages for powering its Señorial Center. See Exhibit 1 from a March 22, 2019, email from Marvin Diaz, Executive Vice President of Corporate Strategy for Banco Popular, "I'm aware of Popular's potential interest in buying gas, and it certainly adds to the validation of demand post operation, which we have comfort with. The project risk (construction and operations) is the key risk we seek to mitigate with our structure and capital requirements. We are close to being able to submit a term sheet for your team's consideration…" After receiving a proposal for RLNG, Exhibit 2 at 18-19, BPPR sent the term sheet for the loan on November 13, 2019. Exhibit 3. The term sheet required no special mitigation for construction or operations risk as described by Diaz.

BPPR closed on the Credit Agreement and a New Market Tax Credit loan on September 15, 2020, Exhibit 4, allowing BGF to use a construction company owned and operated by minority owners of BGF. Every other bank that considered issuing these loans refused to do so based on the risk caused by the conflict of interest. During the

closing of the loan, the CEO of BGF emailed Banco Popular's Executive Vice President about the offtake agreement, Exhibit 5.

The conflict of interest inevitably led to the siphoning of funds for other projects for the principals of the construction company, which substantially delayed construction. The construction completion date with the landfill owner was August 2021. Exhibit 6. In September 2021, a subcontractor was electrocuted to death at the construction site, Exhibit 7, and OSHA fined the Lopez company. Exhibit 8. BPPR disbursed all the construction funds by November 2021, when Boyd and Lassers provided evidence to Javier Ferrer, then the Chief Operating Officer of the bank and now its President, demonstrating fraud in the construction drawdowns; major design flaws; and that construction was far from complete. Exhibits 9-15.  Mr. Ferrer rejected that evidence, and the bank continued to disburse funds.

On April 25, 2022, Boyd and Lassers filed a RICO complaint against BPPR, the Lopezes, and others, alleging fraud. Exhibit 16. That same day, the Lopezes wired over $1 million to vendors for project commissioning, Exhibit 17 — payments that were due only upon completion. BGF, now insolvent, missed principal and NMTC loan payments, Exhibits 18-20, and defaulted on its contract with El Coqui Landfill Company for missing deadlines and payments. Exhibit 21.

After agreeing to terms verbally, Banco Popular ordered and received LNG from BGF starting in March 2022.Exhibits 22-23. Without a signed contract, BPPR could not pay BGF. Two days after Boyd and Lassers filed the RICO Lawsuit on April 25, 2022, BPPR restarted the negotiations. Exhibit 24. With BGF under maximum pressure, now was the time for Banco Popular to extract a deal with maximum benefits for itself. On July 12, 2022, Olmar Lopez Vidal emailed the BPPR Vice President of Commercial

Credit, alluding to a price increase, "waiting for a signing date for Mr. Ignacio Alvarez (BPPR CEO) and me to execute. The Agreement has already been approved and uploaded to the ARIBA platform. We are in discussions with Amgen who is very interested in purchasing 400 MMBtu per day. The pricing that we are negotiating with them is $19.50 per MMBtu," Exhibit 25. On July 18, 2022, BPPR signed a $14 MMBtu below-market RLNG offtake agreement with BGF, securing environmental credits worth millions, on terms unmatched by any other BGF client. Exhibit 26. A week later, BPPR executed Credit Amendment 3, extending an additional $1 million in credit, forbearing the collection of the $19 million loan, and extending the construction deadline without plaintiff Gregory Boyd's approval as guarantor. Exhibit 27. This amendment falsely denied the existence of the RICO lawsuit and BGF's default with El Coqui Landfill Company. Exhibit 28. These actions tied the credit extension of $1 million, forbearance on missed principal payments, extension of construction deadline and ignoring defaults and litigation to the below-market RLNG offtake agreement, violating the Bank Holding Company Act Amendments of 1970 are found in Section 106, specifically codified at 12 U.S.C. § 1971 and 12 U.S.C. § 1972(1). These sections prohibit banks from conditioning the availability or pricing of one product or service (e.g., a loan) on the customer obtaining another product or service from the bank or its affiliates (such as the purchase of RLNG in an offtake agreement).

BPPR's pursuit of the RLNG and its ESG benefits was behind its illegal decisions and fraud. The bank supported the Lopezes despite their inability to secure a performance bond and despite mounting evidence of fraud. Only after the Lopezes derailed a RICO settlement, damaged equipment and eligibility for tax credits in July 2023, did BPPR shift its support to its client, Rafael Rojo of VRM-Penzini. BPPR offered VRM Penzini a debt

reduction in exchange for stepping into their shoes, settling the litigation, maintaining the offtake relationship with BPPR, all while rejecting a superior offer from Cambrian Energy. Exhibit 29 at 2. "Honor the existing RNG supply relationships with major commercial customers who are key participants and contributors to the Puerto Rican economy, but on terms that include revised pricing that assures the long-term financial success of the BGF project…" According to Olmar Lopez Vidal, then CEO of BGF, "BPPR ignored emails on revised pricing, then on phone calls with Mr. Nelson Sandoval from BPPR, who reports to Mr. Julio Puidorfila. On the last call, Nelson told me that Julio told him to not ask him again and that was not going to happen."

BPPR's conduct—tying credit extensions to RLNG supply agreements, ignoring fraud, and favoring conflicted parties—deviated from standard banking practices; destroyed the value of BGF and its parent company, GFC; and harmed the companies and plaintiffs Boyd and Lassers. The Bank Holding Company Act, 12 U.S.C. § 1975, imposes treble damages for such anti-competitive practices, which leverage a bank's power to force unrelated transactions. BPPR's actions exemplify such violations, prioritizing their desire for access to Puerto Rico's sole source of RLNG and environmental credits over its fiduciary responsibility and legal compliance to GFC, BGF, and its owners.

## JURISDICTION AND·VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as the Plaintiff's cause of action arises under The Bank Holdings Company Act, 12 U.S.C. § 1972(1)(C).

2. Venue is proper within this District pursuant to 28 U.S.C. § 139l(b) and§ 1400(a) because the violation occurred here.

## THE PARTIES

3. Plaintiff GFC Holdings is a Limited Liability Company. Created on June 24, 2015, it is active and in good standing with the Department of State of Puerto Rico, with Registration Number 355513. The Company is the sole owner of BGF.

4. Plaintiff Biomass Green Fuels is a Limited Liability Company. Created on January 29, 2018, it is active and in good standing with the Department of State of Puerto Rico, with Registration Number 404180. The purpose of the Company is to produce RLNG and RCO2.

4. Plaintiff Gregory Boyd is a founding member of GFC and BGF, owning 4,252,500 Class A Common Units (17.657% of voting units). He was a personal guarantor of BGF's $19 million loans from BPPR but is no longer because he never agreed to any Amendment after the first one. He resides in Humacao, Puerto Rico.

5. Plaintiff Jonathan Lassers is a member of GFC and BGF, owning 675,000 Class A Common Units (2.803%). He is not a guarantor and resides in Uruguay.

6. Collectively, individual Plaintiffs hold 5,602,500 Class A Common Units, representing 20.46% of GFC's 24,088,500 voting units on a converted basis. They also represent a 55.468% majority of GFC's voting units.

7.     Defendant Banco Popular de Puerto Rico is a subsidiary bank owned and controlled by the holding company Popular, Inc., which is a Puerto Rico Corporation. Banco Popular de Puerto Rico's principal place of business is Avenida Muniz Rivera No. 209, Suite 913, San Juan, Puerto Rico, 00918.

## Entities

8.     **Accurate Solutions, Corp. (ASC).** It is a Puerto Rico corporation owned by Roberto A. Acosta. ASC holds a 50% stake in the ITS/ASC Construction Joint Venture, contracted to build the Biomass Green Fuels, LLC (BGF) biorefinery.

9.     **Biomass Green Fuels, LLC (BGF).** It is a Puerto Rico company that entered into a Landfill Gas Sale and Purchase Agreement and is the borrower in a Credit Agreement with Banco Popular. BGF previously held the first right of refusal to develop landfill gas at the Ponce and Salinas landfills. Its core asset is the 25-year agreement, worth hundreds of millions of dollars, with a 10-year extension for over 35 years for natural gas and carbon dioxide production from the Humacao, Ponce, and Salinas landfills. These landfills have long-term operational commitments, with gas production projected to increase by 2.5% annually, per landfill. Anaerobic digestion ensures gas production for 30 years post-closure, securing BGF's supply for the contract term.

10.     **Community Development Venture Capital Alliance (CDVCA).** It is a New York non-profit corporation established in 1993. CDVCA manages the $45 million Puerto Rico Fund for Growth (PFFG), which invested $2 million to acquire 2,000,000 Preferred Series A units in GFC Holdings on September 15, 2020. In October 2021, CDVCA invested $864,919 to acquire 864,919 units in GFC Holdings. Ernesto Villarini served as CDVCA's

Puerto Rico representative until resigning after the 2025 Asset Acquisition Agreement closed in February 2025.

11. **Crowley Marine (Crowley):** It is a U.S. shipping, logistics and LNG company serving Puerto Rico. It had offtake agreements with BGF, which included providing a backup supply of LNG to BGF's customers when BGF was not operational. It supplied LNG to Banco Popular following the signing of the BPPR-BGF Offtake agreement on July 18, 2022. Today, on information and belief, Crowley continues to provide backup LNG to Banco Popular and has an offtake agreement from the new owner of the El Coqui Landfill Company's landfill gas, Humacao, RNG.

12. **EC Waste, LLC (ECW).** It is Puerto Rico's largest waste management company. ECW owns El Coqui Landfill Company, LLC and holds ownership or long-term operating agreements for four additional landfills. ECW and El Coqui Landfill Company are often used interchangeably in documents, though BGF-related defaults technically apply to El Coqui Landfill Company. ECW signed a Landfill Gas Sale and Supply Agreement with BGF, granting BGF the first right of refusal to develop landfill gas at the additional landfills.

13. **El Coqui Landfill Company, LLC (ECL).** It is a wholly owned subsidiary of EC Waste, LLC. ECL operates the El Coqui Landfill in Humacao, Puerto Rico, the Caribbean's largest landfill, also known as Humacao Landfill. It processes 3,000 tons of Municipal Solid Waste daily, compliant with EPA regulations. ECL is the counterparty to the Landfill Gas Sale and Purchase Agreement with BGF, though it is often referred to interchangeably with ECW in various contexts.

14.     **GFC Holdings, LLC (GFC).** It is a Puerto Rico holding company whose sole asset is Biomass Green Fuels, LLC (BGF). GFC is a guarantor for the Credit Agreement with Banco Popular.

15.     **International Technical Services, Inc. of Puerto Rico (ITS).** It is a Puerto Rico corporation owned by Olmar Lopez Gomez and the Lopez family. ITS also owns International Technical Services Corp. of Puerto Rico, I.T.S. Corporation (Puerto Rico), and International Technical Service (Dominican Republic). ITS holds a 50% stake in JV Distributed Power Innovators, the joint venture contracted to construct the BGF biorefinery.

16.     **Island Renewable Energy, LLC (IRE).** It is a Puerto Rico entity owned by Venture Engineering and Construction, Inc. and VRM-Penzini. IRE is developing landfill gas projects at the Humacao, Ponce, and Salinas landfills and is managed by Brian Kalt. Exhibit 30.

17.     **Semillero Investment Fund I, LLC.** It is a Puerto Rico limited liability corporation managed by Alexander Borschow and Gualberto Rodriguez. On September 15, 2020, it invested $4.5 million in GFC Holdings, acquiring 4,500,000 Preferred Series A units.

18.     **Semillero Investment Fund II, LLC.** It is a Puerto Rico limited liability corporation managed by Alexander Borschow and Gualberto Rodriguez. In October 2021, it invested $191,250 in GFC Holdings, acquiring 191,250 Preferred Series A units.

19.     **Venture Engineering and Construction, Inc. (Venture Engineering).** It is an engineering and construction firm specializing in renewable natural gas. Hired by EC Waste in July 2022 to inspect BGF's biorefinery design and construction because of EC Waste's concerns about the work done by ITS, Venture Engineering later partnered with VRM-

Penzini to form Island Renewable Energy and Humacao RNG. These entities now hold the landfill gas rights for the Humacao, Ponce, and Salinas landfills, previously controlled by BGF.

20.    **VRM-Penzini (VRMP).** It is a Puerto Rico private equity firm led by principals Carlos Penzini, Diego Rodriguez, and Rafael Rojo. On January 31, 2025, VRMP acquired BGF's bank loans, gas rights, tax decrees, and equipment assets. Starting in May 2023, VRMP invested $1.5 million to acquire 1,617,000 Preferred Series A units in GFC Holdings. On February 7, 2025, Humacao RNG, LLC, majority owned by VRMP, purported to purchase GFC/BGF's assets. VRMP co-owns Island Renewable Energy, which acquired the gas rights to the Ponce and Salinas landfills, previously subject to BGF's first right of refusal. In addition to purporting to acquire GFC/BGF's assets via a vote where only the conflicted owners of BGF voted in favor of the sale, VRMP allegedly violated a non-disclosure and revenue-sharing agreement with Boyd and Lassers in acquiring the Humacao, Ponce, and Salinas projects.

## Definitions

21.    **Biorefinery** A facility that processes landfill gas, generated through anaerobic digestion of biomass (e.g., food and plant waste), into purified products, including 97% methane (natural gas) and 99.99% food-grade carbon dioxide ($CO_2$). The terms biorefinery, manufacturing plant, and Humacao facility are used interchangeably.

22.    **Carbon Credits** A tradable certificate representing one metric ton of carbon dioxide (or equivalent greenhouse gas) reduced, avoided, or sequestered through a verified project. Carbon credits are used in emissions trading arrangements to offset emissions or meet regulatory requirements.

23.    **Commercial Operations Date (COD)** The deadline stipulated in the Landfill Gas Sale and Purchase Agreement by which Biomass Green Fuels, (BGF) must begin production to maintain the contract. Failure to meet the COD incurred a $30,000 monthly gas payment to El Coqui Landfill Company, LLC and a potential $250,000 penalty for a six-month extension. BGF paid a $250,000 extension in October 2020, extending the COD to November 27, 2021; however, commercial operations have still not yet commenced.

24.    **Environmental Attributes** Quantifiable environmental benefits associated with renewable energy or low-carbon projects, such as reduced greenhouse gas emissions, renewable energy generation, or pollution avoidance. These attributes can be certified, traded, or sold separately from the physical energy, often as renewable energy credits (RECs) or guarantees of origin**.**

25.    **Environmental Social Governance (ESG)** A framework used by investors and capital markets to assess a company's behavior in environmental, social, and governance areas. ESG is critical for publicly traded companies, such as Popular, Inc., the parent company of Banco Popular de Puerto Rico.

26.    **First Right of Refusal** A provision in the Landfill Gas and Purchase Agreement granting BGF the first right of refusal until December 27, 2023, to secure 25-year gas rights, with 10-year extensions, for the Ponce and Salinas landfills. The successful operation of these landfills doubles the revenue of the Humacao Landfill. BGF lost this right due to the bank's participation in the RICO enterprise.

27.    **Independent Engineer** An individual or entity hired by the Administrative Agent and Lenders, at the borrower's expense, under the Credit Agreement. The engineer

advises on project construction; reports progress; and consults with the Administrative Agent and Lenders regarding the project, borrower, and its drawdown and completion status.

28.    **Investment Tax Credit (ITC)** A federal tax credit under 26 U.S.C. § 48 that supports investments in renewable energy projects, including biorefineries.

29.    **Landfill Gas Sale and Purchase Agreement (LFGSPA)** The core asset of Biomass Green Fuels, LLC (BGF), signed on December 28, 2018, with El Coqui Landfill Company, LLC. This 25-year contract, with a 10-year renewal option, grants BGF rights to collect and purify landfill gas into 97% methane (natural gas) and 99.99% food-grade carbon dioxide ($CO_2$). At full production, these gases could generate approximately $21 million in profits annually, after El Coqui Landfill receives a 14.5% revenue commission. The BGF biorefinery would reduce El Coqui Landfill's air pollution by over 90%, making it the first Caribbean landfill to adopt this practice, following 577 U.S. landfills that collect gas for energy and other uses, with over 400 more planning to do so.

30.    **New Market Tax Credits (NMTC)** A U.S. federal program established in 2000, administered by the Treasury Department's Community Development Financial Institutions Fund (CDFI Fund), to encourage investment in low-income communities and create jobs. The program provides seven-year interest-only loans to companies that locate, hire, and train employees in low-income and high-unemployment areas. If a borrower achieves its employment goals, 25-30% of the loan amount is forgiven as a put option. Biomass Green Fuels, LLC received $7.2 million in NMTC funding to construct its biorefinery. Banco Popular is the disbursing agent for this loan.

31.     **Offtake Agreement** A contract requiring Biomass Green Fuels, LLC to sell RLNG to Banco Popular de Puerto Rico at a fixed price and providing BPPR with valuable tax credits.

32.     **Puerto Rico Act 73 of 2008 Tax Decree and Rescue Credit** A formal agreement under Puerto Rico's Act 73 (Economic Incentives for the Development of Puerto Rico Act) that provides qualifying businesses, primarily in manufacturing, with tax incentives for up to 15 years. The Act 73 Rescue Credit Section 6-2 of Regulation # 7772 of Act #73 of 2008 supports eligible businesses facing financial hardship, based on credit costs, capital needs, potential employment, and tax revenue generation. Act 73 also provides for a 35% recycled product tax credit to the buyer.

33.     **Renewable Carbon Dioxide (RCO2)** Carbon dioxide purified from landfill gas to 99.99% food-grade quality, also referred to as beverage-quality CO2.

34.     **Renewable Liquefied Natural Gas (RLNG)** 97% of methane is derived from landfill gas, which is compressed into a liquefied form for safer and easier transportation. It is considered renewable due to its origin from landfill gas.

35.     **Section 45Q** A federal tax credit incentivizing carbon dioxide capture and storage, valued at $28.43 per metric ton for storage and $14.21 per metric ton for utilization as of 2025.

36.     **Section 45Z** A federal tax credit providing up to $8.77 per MMBtu for clean transportation fuel produced and sold between December 31, 2024, and January 1, 2028.

## FACTUAL ALLEGATIONS

37.     Plaintiffs incorporate all prior allegations as if set forth in full.

38.     Under 12 U.S.C. § 1972(1)(C), a bank may not condition credit extensions on unrelated services, except traditional banking services.

39.     BPPR conditioned its extension of the Third Amendment of the Non-Revolving Credit Agreement and the New Market Tax Credit loan to BGF to an Offtake agreement that provided the bank with RLNG in a 10-year fixed-price contract at a less than half of fair market price, plus carbon and environmental credits worth tens of millions of dollars.

40.     Violations of the Bank Holding Company Act warrant treble damages and attorneys' fees.12 U.S.C. § 1975.

41.     On September 26, 2019, Olmar Lopez Vidal emailed Humberto Gonzalez, BPPR's Vice President of Commercial Lending, stating, "we are working with Roberto Acosta of ASD to offer our Renewable Liquid Natural Gas to BPPR." Exhibit 31

42.     The original gas purchase agreement (the "Offtake Agreement") that BGF proposed had BGF retaining the carbon and environmental credits, a benefit worth tens of millions of dollars to BGF and El Coqui Landfill Company. Exhibit 32.

43.     According to its 2025 1st Quarter Financial Results, "Popular, Inc. (NASDAQ: BPOP) is the leading financial institution in Puerto Rico, by both assets and deposits, and ranks among the top 50 U.S. bank holding companies by assets." Exhibit 33 at 10.

44.     Fitch Ratings reports that BPPR has over 55% of the market share in loans and deposits in Puerto Rico. Exhibit 34.

45.     Allowing lenders from other jurisdictions (Byline Bank Exhibit 2 at 20) to enter the lucrative business of green energy and receive low-cost electricity in Puerto Rico would undermine BPPR's dominant position in the banking industry in Puerto Rico.

46.    In 2019, BGF applied for construction loans from several banks. Except for BPPR, the banks recommended a combination of the federal Small Business Administration (SBA) and U.S. Department of Agriculture (USDA) loan guarantees.

47.    The federal loan guarantees from the USDA require that the borrower be independently owned and operated and that the principals not have a direct or indirect interest in the construction company building the project. This prevents the principals from using the loan to fund their other interests or to engage in self-dealing. Exhibit 35 at 4.

## BPPR Breaches of Fiduciary Responsibilities for Access to RLNG

48.    Olmar Lopez Gomez, Olmar Lopez Vidal, and their son/brother, Carlos Lopez Vidal, own multiple companies with the same or similar names: five ITS companies, four Green CO2 Companies, World Spirits, and Bravada, SRL, which are owned and or operated by co-defendants "(hereinafter 'the Lopez Companies.')" Exhibit 36.

49.    The Lopezes and their companies were not creditworthy, which prevented them from getting a Performance Bond for the project's construction as required by BPPR's Credit Agreement. Exhibit 4 at 3.1 (h), (p) 4.1(j)).

50.    Olmar Lopez Vidal's 2018 personal financial statement, submitted to the SBA, shows that he had a negative net worth of $90,234. Exhibit 37.

51.    Olmar Lopez Gomez's 2018 Tax return showed an income of $4,500. Exhibit 38.

52.    No other bank would allow such a company with such failed executives to lead the engineering and construction of a $30 million biorefinery. Exhibits 11 at 39-41.

53.    The U.S. Environmental Protection Agency's (EPA) Landfill Methane Outreach Program (LMOP) states as of September 2024, "488 MSW landfills provide LFG to one or

more FG energy projects currently in operation." Exhibit 42. On June 18, 2025, the RNG Coalition issued a press release celebrating "500 operational RNG facilities in North America."

54.    Yet, Banco Popular acted as if the Lopezes were the only people who could build a biorefinery.

55.    Bank loans funded the majority of these EPA LMOP projects, most with federal guarantees from the SBA and/or the USDA.

56.    Byline Bank and other banks refused to fund this project because of the conflicts of interest posed by some of the owners of BGF (The Lopezes) also owning the construction contractor, ITS. Exhibit 35.

57.    Since ITS could not qualify for a bond due to poor credit, the Lopezes proposed that ITS, in a joint venture with Accurate Solutions Corp. ("ASC"), be the construction company for BGF's biorefinery.

58.    On information and belief, BPPR knew that the Lopezes sought to self-deal through their companies, and the bank agreed to the self-dealing by allowing the ITS/ASC joint venture to provide construction services to BGF because BPPR wanted a favorable Offtake Agreement. Exhibit 43.

59.    The bank found Olmar Lopez Gomez and ITS were being sued in *Ballester Hermanos Inc. v Olmar Lopez-Gomez et al*. Case # SJ2018CV03188 (P.R. Super. Ct. 2018) for non-performance on an energy project and failing to refund the clients' deposit. BPPR required the case to be settled before the loan closing.

60.    The President of Ballester Hermanos is Alejandro J. Ballester, who has been a member of the Popular, Inc. Board of Directors since 2010 and is Director of the Audit

Committee and Chairman of the Governance and Nomination Committees at Banco Popular. Exhibit 39.

61. Neither the inability to qualify or pay for the required Performance Bond, the outstanding lawsuit, nor their lack of experience in constructing a biorefinery caused BPPR to reject the Lopezes and ITS's integrity, or capability to engineer and construct the Caribbean's first landfill gas to RLNG and RCO2.

62. No other bank would allow such a company to lead the engineering and construction of a $30 million biorefinery. Indeed, Byline Bank and others refused to allow it.

63. The Tying arrangement was premeditated and initiated when BPPR financed BGF's Biorefinery Project with a Non-Revolving credit facility and New Market Tax Credit loans and allowed the Lopezes' ITS company to profit from the construction contract.

64. BPPR continued to deny reported frauds, multi-year delays and millions in cost overruns. Exhibits 16, 41.

65. The SBA and USDA required BGF to sign long-term Offtake Agreements with good-credit buyers showing enough revenue to pay for the loan. The lender would take a secure interest in these agreements.

66. BPPR did not require security over signed Offtake Agreements as a precondition for the direct loan because they planned to control, consume, and benefit from the RLNG and its valuable environmental attributes.

67. A precondition of the closing of the credit agreement is proof of payment for the Pay and Performance Bond for the construction company.

68.     BPPR also required a Performance Bond not less than 100% of the amount of Direct Costs. Exhibit 4, Section 3.1(h) at 46.

69.     The direct costs of the project, according to the Master Budget are $18,679,651. Exhibit 4 at 151.

70.     The prerequisite Performance Bond was only for $5 million, obtained after closing.

71.     Below is an excerpt from the Credit Agreement between BGF and BPPR dated September 15, 2020. Exhibit 4.

### ARTICLE III
### CONDITIONS OF LENDING

3.1     **Conditions Precedent to Effectiveness of this Agreement and to Initial Borrowing.** The effectiveness of this Agreement, and the obligation of each Lender to make an Advance on the Initial Borrowing are subject to the following conditions precedent:

(h)     Insurance. The Administrative Agent shall have received evidence required under Section 6.2.1(a) of the existence of all the required Policies and the designation of the Administrative Agent, for the ratable benefit of the Lenders, as the loss payee or additional insured, as the case may be, thereunder to the extent required hereby, and evidence that all Insurance Premiums then due and payable with respect thereto have been paid, including without limitation, evidence that the required payment and performance bond(s) in relation to the Project, name the Borrower and the Administrative Agent, for the benefit of the Lenders, as dual obligees, for not less than one hundred percent (100%) of the amount of the Direct Costs with respect to the whole Project from an insurance company reasonably acceptable to the Administrative Agent, and reasonably satisfactory evidence that the premiums on such bonds have been paid in full.

Emphasis added.

72.     On September 15, 2020, neither the Payment and Performance Bond for the construction company, nor the Bond for 100% of the Direct Costs, was not complete.

73.     No bond for 100% of the direct costs ever existed.

74.     As Administrative Agent, BPPR violated its obligations under the Credit Agreement by neglecting to enforce the requirement for a performance and payment bond covering 100% of direct costs ($18,679,651).

75.     Instead, BPPR permitted an inadequate $5 million bond, which it failed to perfect, and disbursed an improper payment for it.

76.     BPPR deliberately withheld this shortfall from BGF and its investors, falsely representing the bond's sufficiency during the execution of the credit agreement, including through communications via interstate wire to its subsidiary Popular Insurance. This misrepresentation and the subsequent payment are wire fraud under 18 U.S.C. § 1343, a predicate act for RICO violations (18 U.S.C. § 1961).

77.     The appearance of a performance and payment bond being in place for the Lopezes ITS JV enabled the lending and unlawful linking of credit extensions to the offtake agreement, contravening the Bank Holding Company Act, 12 U.S.C. § 1972(1)(C), resulting in substantial losses for BGF, GFC, and their investors.

78.     Securing the bond for $18 million, required under the terms of BPPR's own credit agreement, would have covered the now $12 million unpaid direct loan, with surplus funds available to engage a qualified RLNG engineering and construction firm to complete the project. This is one of many failures of BPPR as the Administrative Agent that contributed to BGF's failure.

79.     Without recourse to the bond, BPPR seized BGF's assets, including the LGSPA gas rights, and enabled their transfer to VRMP at a significantly reduced value to preserve a favorable offtake agreement, further harming BGF and its stakeholders. This conduct violates the Bank Holding Company Act, 12 U.S.C. § 1972(1)(C), because the asset transfer

is in furtherance of BPPR's interest in the tied offtake agreement, and constitutes a breach of fiduciary duty under the Credit Agreement, as well as contributing to additional RICO predicate acts under 18 U.S.C. § 1961.

80.     Banco Popular, as Administrative Agent and lender, in pursuit of its RLNG offtake, violated the Credit Agreement, Exhibit 4, every Credit Amendment and its fiduciary responsibilities to GFC/BGF, Exhibits 27, 44-53. The table below is Exhibit 45.

| Date | Agreement | Non-Revolving Termination Date | Credit Change | Novation include Guarantors | Signed by Boyd | Denied Defaults | Ignored Lawsuits | Other Violations |
|---|---|---|---|---|---|---|---|---|
| 9/15/2020 | Credit Agreement | 3/31/2021 | $ 11,869,250.00 | | Yes | | | Prerequisite Construction Pay and Performance Bond paid after closing by BGF for ITS/ASC with BPPR help and $18 million Direct Costs Pay and Performance bond never existed. BPPR as Administrative agent constantly lent a higher percentage of the loan than the percentage of work completed. Ignored fixed price requirement of construction contract. |
| 5/6/2021 | Credit Amendment 1 | No Change | Yes new revolving facility for $812,500 | No | Yes | | | Disbursement to BGF Exceeded Allowed Amount, Mapfre Letter of Credit Collateral Violated by Bank |
| 3/2/2022 | Credit Amendment 2 | 4/30/2022 | Unchanged | No | No | | | |
| 7/25/2022 | Credit Amendment 3 | 10/31/2022 | Additional Equity $1,500,000, Credit increased by $1 million | No | No | Yes EC Waste | Yes | Additional $1.5M Equity required by 9/15/2022 NOT met. Construction complete date not met. Tied to 7/18/2022 Offtake Agreement. |
| 11/1/2022 | Credit Amendment 4 | 12/31/2022 | $12,869,250.00 | No | No | Yes EC Waste | Yes | On or before 12/31/2022 Borrower to pay $1,000,000. This requirement was NOT met. |
| 1/5/2023 | Credit Amendment 5 | 3/31/2023 | Reduce by 1 million to 11,869,250 | No | No | Yes EC Waste | Yes | Prepayment of $1,000,000 still required, construction completion not met. |
| 2/23/2024 | BPPR Letter Releasing $500K of Second Tax Credit Tranche to BGF | | Yes, took 500K from debt reduction and gave it to BGF | No | No | | | 2nd Tax Tranche sale is eligible after the construction is complete. Construction was never completed. Hacienda required completion receipts performed 17 months prior in August 2022. Bank knew this tax credit sale was fraudulent, participated and received $1 million in proceeds. |
| 4/27/2023 | Credit Amendment 6 | | Use of tax credit account amended | No | No | No | No | Prepayment of $1,000,000 still required, construction completion not met. |
| 9/27/2023 | Credit Amendment 7 | 10/31/2023 | | No | No | No | No | Construction never Completed |

## Pay and Performance Bond Fraud

81.     On the morning of September 14, 2020, Gregory Boyd notified BGF's attorneys at DLA Piper of his availability to sign the loan papers. Attorney Ruben Fernandez responded at 10:38 AM by sending blank signature pages.

82.     On September 14th, various parties suggested changes to the Flow of Funds document, which is an integral part of the loan documentation.

83.    At 9:46 a.m. on September 14th, 2020, Jones Day, the law firm advising Capital One on the NMTC, noted that only two people still needed to sign the signature pages: Gregory Boyd and Joval Rodriguez for BPPR. On September 14th, 2020, at 12:44 PM, Priscila Ramirez of Pietratoni Mendez & Alvarez (PMA) submitted Joval Rodriguez's signatures for the closing, including his signature on the Flow of Funds document.



84.    Priscila Rodriguez attached Joval Rodriguez's signature on the Flow of Funds signature page 6 of 6, recorded nine hours before Rodriguez amended the document to include a $70,500 payment for the Performance and Payment Bond for the Lopez Companies

from BGF's checking account. This change to the Use of Funds occurred five hours after Gregory Boyd had submitted his signature for the Flow of Funds to the escrow.

85.    At 4:29 PM on September 14, 2020, Attorney Brett Heyman of Jones Day sent what appeared to be the final Flow of Funds. See in the message below, he was requiring "updated invoices or written confirmation…" Exhibit 54.

greg.boyd@icloud.com

| | |
|---|---|
| **From:** | Heyman, Brett E. <bheyman@jonesday.com> |
| **Sent:** | Monday, September 14, 2020 4:29 PM |
| **To:** | Cristina Dominguez; john.chamberlain@capitalone.com; douglas.fields@capitalone.com; al.kropog@capitalone.com; mark.preston@capitalone.com; kyle.fontanille@capitalone.com; seth.bosworth@capitalone.com; taylor.leblanc@capitalone.com; lisa.irons@capitalone.com; Cronin, Patrick J.; McGuckin, Aurora P.; Joval Rodriguez Barnes; Humberto E. Gonzalez Caraballo; Gabriel Lopez Somohano; asantos@pmalaw.com; amolina@pmalaw.com; pramirez@pmalaw.com; Natalia Guzman; Jessika M. Corujo Rodriguez; Isaac Wilkins Velez Barbeito; Guillermo Franco; drew.marlar@kutakrock.com; carol.mihalic@kutakrock.com; edward.gillespie@kutakrock.com; nicole.wilson@kutakrock.com; Olmar López; olg@greenfuelspr.com; G Boyd; george.economou14@gmail.com; jose.sosa@dlapiper.com; ruben.fernandez@dlapiper.com; paul.ohanlon@leveragelaw.com; blake.mason@leveragelaw.com; neal.johnson@leveragelaw.com; richard.davies@cohnreznick.com; jacen.killebrew@cohnreznick.com |
| **Subject:** | RE: Biomass Green Fuels - Flow of Funds |
| **Attachments:** | NAI_1513592648_3_Capital One - Biomass Green Fuels - Flow of Funds.XLSX |

Attached please find an updated draft Flow of Funds reflecting the figures received from Cristina earlier this afternoon. Please let me know if you have any comments/questions.

Brett E. Heyman
Associate
JONES DAY® - One Firm Worldwide℠
100 High Street, 21st Floor
Boston, MA  02110-1781
Direct: +1.617.449.6898
Mobile: +1.781.408.9092
Facsimile: +1.617.449.6999
bheyman@jonesday.com

---

**From:** Heyman, Brett E.
**Sent:** Monday, September 14, 2020 3:17 PM
**To:** 'Cristina Dominguez' <Cristina.Dominguez@popular.com>; 'john.chamberlain@capitalone.com' <john.chamberlain@capitalone.com>; 'douglas.fields@capitalone.com' <douglas.fields@capitalone.com>; 'al.kropog@capitalone.com' <al.kropog@capitalone.com>; 'mark.preston@capitalone.com' <mark.preston@capitalone.com>; 'kyle.fontanille@capitalone.com' <kyle.fontanille@capitalone.com>; 'seth.bosworth@capitalone.com' <seth.bosworth@capitalone.com>; 'taylor.leblanc@capitalone.com' <taylor.leblanc@capitalone.com>; 'lisa.irons@capitalone.com' <lisa.irons@capitalone.com>; Cronin, Patrick J. <pcronin@jonesday.com>; McGuckin, Aurora P. <amcguckin@jonesday.com>; 'Joval Rodriguez Barnes' <Joval.Rodriguez@popular.com>; 'Humberto E. Gonzalez Caraballo' <Humberto.Gonzalez@popular.com>; 'Gabriel Lopez Somohano' <Gabriel.lopezsomohano@popular.com>; 'asantos@pmalaw.com' <asantos@pmalaw.com>; 'amolina@pmalaw.com' <amolina@pmalaw.com>;

1

86.    After Heyman's email, since the Flow of Funds appeared complete, Boyd submitted his signature for the Flow of Funds to Jose Sosa, the DLA Piper attorney representing BGF on the September 15, 2020, financial close at 4:43 PM on September 14, 2020, to hold in escrow.



New Scan 2020-09-14 1640.pdf

GB   Greg Boyd <greg.boyd@icl
To   Jose Sosa
Cc   G Boyd
9/14/2020

(i) You forwarded this message on 9/14/2020 4:43 PM.

PDF   New Scan 2020-09-14 1640.pdf
.pdf File

**Greg Boyd**
(787)463-1830

87.     In the email below, approximately five hours after Gregory Boyd submitted his signature, BPPR's Officer made another change to the disbursements, altering the Flow of Funds to include a fraudulent payment for the Lopezes company ITS for the Payment and Performance Bond from BGF's direct loan proceeds in violation of the requirements of the Credit Agreement and New Market Tax Credit QLICI Disbursing Agreement.

88.     Joval Rodriguez sought to hide the $70,500 by mis-categorizing a Payment and Performance Bond as "Closing Cost."

89.     The new Flow of Funds did not include "updated invoices or written confirmation…" as requested by attorney Brett Heyman. These invoices would have shown this payment as an obligation of the Lopez Companies, not BGF. As a result, the executed Flow of Funds (Exhibit 55 p. 31) in the QLICI Disbursing Agreement does not include the $70,500 "Closing Costs.".

**greg.boyd@icloud.com**

| | |
|---|---|
| From: | Joval Rodriguez Barnes <Joval.Rodriguez@popular.com> |
| Sent: | Monday, September 14, 2020 9:38 PM |
| To: | Jacen Killebrew; Heyman, Brett E.; Cristina Dominguez; john.chamberlain@capitalone.com; douglas.fields@capitalone.com; al.kropog@capitalone.com; mark.preston@capitalone.com; kyle.fontanille@capitalone.com; seth.bosworth@capitalone.com; taylor.leblanc@capitalone.com; lisa.irons@capitalone.com; Cronin, Patrick J.; McGuckin, Aurora P.; Humberto E. Gonzalez Caraballo; Gabriel Lopez Somohano; asantos@pmalaw.com; amolina@pmalaw.com; pramirez@pmalaw.com; Natalia Guzman; Jessika M. Corujo Rodriguez; Isaac Wilkins Velez Barbeito; Guillermo Franco; drew.marlar@kutakrock.com; carol.mihalic@kutakrock.com; edward.gillespie@kutakrock.com; nicole.wilson@kutakrock.com; Olmar López; olg@greenfuelspr.com; G Boyd; george.economou14@gmail.com; jose.sosa@dlapiper.com; ruben.fernandez@dlapiper.com; paul.ohanlon@leveragelaw.com; blake.mason@leveragelaw.com; neal.johnson@leveragelaw.com; Richard Davies |
| Subject: | RE: Biomass Green Fuels - Projections |
| Attachments: | ESI Energy - Invoice.pdf |

Jacen, I have a small difference ($4,742) with the direct loan disbursement at closing. It is related to ESI Energy's invoice which I think is not included in the amount to be disbursed. My understanding is that this invoice will be paid with the Direct Loan. Could you please confirm this.

| Closing Costs | Total Invoices | Direct Loan |
|---|---|---|
| BPPR Fees | | 233,750.00 |
| P&P Bond | | 70,500.00 |

90.    The above email shows BPPR included the payment of the Lopez Companies' Construction JV Performance and Payment Bond by BGF in the BPPR Loan Disbursement. Exhibit 56.

91.    The email amount matches the invoice to the ITS/ASC Joint Venture from Popular Insurance for the Mapfre Bond.

92.    The credit agreement required this bond to be paid by the Lopezes ITS/ASC Joint Venture BEFORE the closing on September 15, 2020.

93.    The Bank Officer, Joval Rodriguez, included paying for the ITS/ASC bond as a "closing cost" to BGF, using the direct loan AFTER the closing (Exhibit 56). This directly contradicts the BPPR Credit Agreement with BGF where this bond is a prerequisite.

94.    BGF had no obligation to pay the bond, which was the responsibility of the Lopezes' construction JV.

95.     The bank was helping the Lopezes pay for the bond for ITS, a company owned by the Lopezes (ITS), with BGF's loan money.

96.     The bond was purchased from Mapfre Insurance with Popular Insurance as the agent.

97.     Popular Insurance is wholly owned by Popular, Inc., which also owns BPPR.

98.     Below is the invoice for the bond, showing the agent as Popular Insurance, and showing the amount matching Rodriguez's email above and the wire below. It also shows that the bond is for ITS/ASC Joint Venture, not BGF. Exhibit 57.

W. www.mapfrepr.com

Pág./Page    1    de/of    2

## Fianzas de Contrato / Contract Bonds
## FACTURA / INVOICE

| | |
|---|---|
| **Asegurado / Insured** | ITS/ASC JOINT VENTURE<br>PO BOX 11439<br>SAN JUAN PR 00922-1439 |
| **Dirección Postal / Postal Address** | |

| | |
|---|---|
| **Póliza / Policy** | 1301208000513 |
| **Fecha Factura / Invoice Date** | 14-SEP-2020 |
| **Fecha Corrida / Run Date** | 14-SEP-2020 |
| **Expediente / File Number** | WISE |
| **Núm. Identificación / Identification Number** | IND 1301208000513 |

| | |
|---|---|
| **Acreedor / Mortgagee** | |

| | |
|---|---|
| **Código Acreedor / Mortgagee Code** | |
| **Núm. Préstamo / Loan Number** | |

| | |
|---|---|
| **Productor / Producer Corredor / Broker Agencia / Agency** | 46561  . POPULAR INSURANCE LLC<br>PO BOX 70331<br>SAN JUAN PR 00936-8331 |

| | |
|---|---|
| **Comisión / Commission** | |
| **Sucursal / Branch** | POPULAR INSURANCE |

\* Claves al dorso/ See reverse side.

| Número de Factura / Invoice Number | Claves / Codes * Trans. | Efectividad/ Effective | Vencimiento / Expiration | Prima / Premium | Balance / Balance |
|---|---|---|---|---|---|
| 153467341 | NN | 14-SEP-2020 | 14-SEP-2021 | $70,500.00 | $70,500.00 |
| | | **Total a Pagar / Payment Amount :** | | $70,500.00 | $70,500.00 |

Según reglamentación actual,  esta póliza no entra en vigor hasta que el pago de la prima requerida sea recibido. Véase endoso adjunto a la póliza. / According to present regulations, this policy will not be in force until the payment of the required premium has been received.  See endorsement attached to the policy.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**TALON DE PAGO**

**PAYMENT STUB**

**DESPRENDA ESTE TALON Y ENVIELO CON SU PAGO / DETACH AND SEND THIS STUB WITH YOUR PAYMENT**

## MAPFRE PRAICO INSURANCE COMPANY

Una Compañía de Seguros por Acciones en adelante denominada la Compañía
PO BOX 70333, SAN JUAN PR  00936-8333
T. (787) 250-6500  F. (787) 250-5370
W. www.mapfrepr.com

⊛ **MAPFRE** | **PUERTO RICO**

| | |
|---|---|
| **Asegurado / Insured** | ITS/ASC JOINT VENTURE<br>PO BOX 11439<br>SAN JUAN PR 00922-1439 |
| **Dirección Postal / Postal Address** | |

| | |
|---|---|
| **Póliza / Policy** | 1301208000513 |
| **Factura / Invoice** | 153467341 |
| **Vencimiento del Pago / Payment Due Date** | 14-SEP-2020 |
| **Total a Pagar / Payment Amount** | $70,500.00 |

**Copia del Asegurado        /        Insured   Copy**

JF_999_FACTURA(0)
02/06 52226865

1301208000513    091420    0007050000    6    153467341    2    00070274

99.   This Bond is an obligation of the Lopez Companies, not BGF.

100.   GFC's contract with the ITS/ASC [the Lopez Companies] Joint Venture states:

> 8.   Both parties agree to execute all applications and indemnity agreements required by the sureties upon any bond, or bonds, required in connection with the contract and the performance thereunder, and if required by such bonding JV, execute any indemnity agreement(s) jointly and severally between the Joint Venturers. Both parties also agree to pay their (50%) percent share of all insurance premium costs and to be responsible in their proportionate share for any deductible costs associated with said insurance coverage.

Exhibit 43 at 21.

101.   Plaintiffs did not approve of the fraudulent Lopez Companies' Performance bond payment from the loan money.

102.   At 12:56 PM on September 15, 2020, Brett Heyman of Jones Day, representing Capital One, wrote to signatories to "reply all to this email providing express authorization to release signature pages…"

103.   Neither DLA Piper nor Boyd replied all with an express authorization to release" his signature from the escrow.. Exhibit 58. The document had changed multiple times since he submitted his signature 18 hours earlier, violating Federal Forgery laws at 18 U.S.C. § 471, 472, 473.

104.   On September 16, 2020, López Vidal fraudulently wired $70,500 to Popular Insurance for the MAPFRE Pay and Performance Bond for the Lopez Companies, with direct loan money belonging to and intended for BGF's operations.

105.   BPPR's officer in charge of the loan facility, <mark>Joval Rodriguez</mark> [I don't see his name on the document below], represented the Purpose of the wire for the Popular Insurance for the Bond for ITS/ASC, as Closing Costs. Exhibit 56.

### BANCO POPULAR.

**Outgoing Transfer of Funds**

| Reference No. or Test Key<br>202009165017309 | Amount<br>70500.00 | Currency<br>USD | Rate<br>0.0 |
|---|---|---|---|
| Commission<br>35.00 | Transmission<br>25.00 | USD Equivalent<br>0.00 | Transaction Total<br>70560.00 |
| Branch Prefix and Name<br>347 ALTAMIRA BRANCH | Issue Date (mm-dd-yyyy)<br>09-16-2020 | Recurring ID | Debit Account<br>347276244 |

**Originator Information**

| Name        BIOMASS GREEN FUELS LLC | Business / Profession / Occupation<br>PRODUCCION GAS NATURAL Y CO2 | |
|---|---|---|
| Address<br>URB ALTAMIRA<br>584 CALLE ALDEBARAN | City SAN JUAN<br>Country PUERTO RICO | State PUERTO RICO<br>Zip Code 00920 |

| ID Type, Number, and Country or State | Expiration Date |
|---|---|
| ID Type, Number, and Country or State | Expiration Date |

| Pay to Bank (Beneficiary's Bank)   BANCO POPULAR DE PR<br>Address<br><br>SAN JUAN PUERTO RICO | Account | ABA or SWIFT Code<br>(Route and Transit Number or SWIFT BIC Code)<br>021502011 |
|---|---|---|
| Intermediary Bank<br>Address | | ABA or SWIFT Code<br>(Route and Transit Number or SWIFT BIC Code) |

| Beneficiary Name     POPULAR INSURANCE | Account Number or IBAN ID<br>302000386 | |
|---|---|---|
| Address<br>CORPORATE OFFICE PARK 36 RD20 STE 201 | City  GUAYNABO<br>Country | State PUERTO RICO<br>Zip Code |
| Special Instructions | | Notify by Telephone |

**Authorized Person Information**

| Name       OLMAR J LOPEZ-VIDAL | Business / Profession / Occupation<br>PRESIDENTE | |
|---|---|---|
| Address<br>LA VILLA GARDENS APTS<br>26 CARR 833 APT 909U | City  GUAYNABO<br>Country   PUERTO RICO | State PUERTO RICO<br>Zip Code 00971 |
| ID Type, Number, and Country or State<br>LICENSE AND COUNTRY OF ORIGIN, 4654304, PUERTO RICO | | Expiration Date<br>09-MAR-2026 |
| ID Type, Number, and Country or State | | Expiration Date |

**Information of the Person Placing the Order**

| Name | Business / Profession / Occupation | | |
|---|---|---|---|
| Address | | | |
| City | State | Country | Zip Code |
| ID Type, Number, and Country or State | | | Expiration Date |
| ID Type, Number, and Country or State | | | Expiration Date |

| Purpose of Transaction<br>PAGO GASTOS DE CIERRE | ☐ Personal, Family,<br>Household Remittance | We certify the verification of the purpose of the payment in order to determine that it is not prohibited by any applicable regulation or policy. |
|---|---|---|

**Required Signatures**

| Authorized Person Signature or<br>Person(s) Placing the Order | NORMALIZ GONZALEZ<br>Employee Name | PR50173<br>Employee No. | Approving Officer Name | Employee No. |
|---|---|---|---|---|
| 1. | Employee Signature | Phone | | |
| 2. | Officer Signature & No. for Unavailable Funds Authorization | | Approving Officer Signature | |

BANK / CUSTOMER

BRA-405 / 10-16   (HTS)

106. Olmar Lopez Vidal also identified the purpose as "Closing Costs" or "Pago Gastos de Cierre" in Spanish. Exhibit 59.

107. BPPR breached the Credit Agreement by paying the Lopezes' ITS JV Performance Bond with funds from BGF's direct loan.

108. BPPR's officer, Joval Rodriguez, participated in the wire fraud 18 U.S.C. § 1343. Per Exhibit 55, this transaction was never approved.

109. BPPR is the Administrative Agent and Disbursing Agent for the direct or non-revolving and NMTC loans.

110. BPPR did not follow the disbursement controls or its own Credit Agreement.

111. BPPR never perfected the Credit Agreement because no bond exists for 100% of the direct costs of the project, the Pay and Performance bond for the construction company was not paid before the September 15, 2020, closing, and it was fraudulently paid with the direct loan proceeds of BGF in violation of the Credit Agreement.

112. BPPR's focus was always on the highly lucrative RLNG rights Offtake Agreement, to the extent that BPPR fraudulently wired BGF's money to pay for an inadequate and underinsured Performance Bond for the Lopezes' JV, which had neither the credit rating nor the liquidity to pay that essential prerequisite.

113. Because Plaintiffs believed that BPPR, as the Administrative Agent, would enforce the disbursement controls to protect over $27 million of GFC/BGF's assets entrusted to the bank, they were falsely induced to sign the Credit Agreement.

## BGF Defaults Lead to the Tied Offtake Agreement

114.   Despite BGF filing no audited financial statements in 2020, 2021, 2022, 2023 and 2024, as required by the direct and NMTC loan agreements, BPPR continued to lend to BGF.

115.   The Tying agreement came to light after Gregory Boyd and Jonathan Lassers sued BPPR, the Lopezes, and various other parties for violating the Racketeering Influenced Corrupt Organizations Act on April 25, 2022 (22-CV-1190 (GMM). Exhibit 16.

116.   On April 25, 2022, the Lopezes reacted to the RICO Complaint by wiring more than $1.1 million to pay equipment suppliers later that same day.

117.   Galileo Technologies received $1,029,460 and Tecno Project Industriale received $108,060. These final payments were not due until after the plant was operational. Exhibit 6.

118.   The Lopezes paid these suppliers, apparently to receive commissions from sending the last payment.

119.   Those payments emptied BGF's checking account and were not authorized in the approved drawdown schedules.

120.   In court documents, the Lopezes and Economou, BGF's CFO, never denied receiving compensation from these vendors for wiring the completion payment years before it was due.

121.   The plant was not and still is not operational.

122.   The company then missed four loan principal payments to the bank in April-June 2022. Exhibits 18-20.

123. The Lopezes faced the RICO lawsuit, accompanied by its RICO Statement, Exhibit 60, and Supplement, Exhibit 61, along with dozens of exhibits that verified each statement. Exhibit 16.

124. The company then defaulted on its payment obligations and commercial operations deadline to the landfill's owner, El Coqui Landfill Company. Exhibit 21.

125. With the $1.1 million wires sent, the Lopezes did not have enough money to complete the long-overdue construction. Exhibit 17.

126. BPPR ordered RLNG from BGF starting on March 30, 2022. Exhibits 22-23.

127. BGF shipped fossil RLNG from their backup supplier, Crowley, from April until the offtake was signed in July 2022 without payment from BPPR.

128. BPPR could not pay for the RLNG, since no offtake contract was signed.

129. BGF owed Crowley tens of thousands of dollars as a result of the BPPR's conduct.

130. Faced with six major disasters: 1) Default on the commercial operations date, 2) default on payments to El Coqui Landfill, 3) four missed principal payments, 4) insufficient funds to finish construction, 5) overdue debts to Crowley and, 6) facing a RICO complaint, the Lopezes capitulated to Banco Popular, acceding to a RLNG Offtake Agreement far below market pricing, ceding the carbon and environmental credits in exchange for the bank's forbearance on the outstanding loan, for $1 million in additional credit and extending the missed construction deadline to October 2022.

131. Simultaneously, the bank denied the existence of the defaults and the RICO litigation in its Credit Amendments that furthered this scheme. Exhibit 45

**The Offtake Agreement**

132. On July 18, 2022, Banco Popular and the Lopezes disregarded the draft contract from BGF, sent in 2019, Exhibits 31, 32, 62, and Olmar Lopez Vidal on behalf of BGF capitulated and signed Banco Popular's contract. Exhibit 26.

133. Banco Popular drafted and executed an entirely different contract that was significantly more onerous for GFC/BGF, at approximately 50% below the current market price, Exhibit 63 at 4, with the Carbon Credits and environmental attributes worth tens of millions of dollars being transferred to BPPR. Exhibit 26.

| | |
|---|---|
| **Renewable Energy Credits (REC's) and Carbon Credits (CC)** | Seller will transfer free of charge all REC and CC to which Popular may be entitled to by Law or regulation, due to the RLNG sold to Popular. Seller shall retain all REC's and CC's to which Seller is entitled to by Law or regulation. |
| **LNG Meter** | The utility grade meter located at the inlet of the Popular LNG tanks. LNG Meter will be the point at which title and risk of loss will transfer from Seller to Popular. |
| **Seller's Backup Supplier** | Crowley or any other such other replacement Backup Supplier agreed to by the parties. |
| **Preventive Maintenance Deliverables** | • Inspection of system hoses. Replacement included.<br>• Maintain pump bearing lubrication.<br>• Sensor system yearly validation test.<br>• Seismic detector validation test every 2 years. |
| **Equipment Operation Deliverables** | • Fuel connections to skids from truck<br>• Assure safety conditions on station<br>• Precool lines, if necessary<br>• Transfer fuel from truck to tanks<br>• Monitor fuel levels and site conditions<br>• Report any deviation within 4 hours |

DS
*EJMM*
7/18/2022

DS
*JDP*
7/18/2022

DS
*JD↑*
7/18/2022

| **Biomass Green Fuels LLC** | **Banco Popular de Puerto Rico** |
|---|---|
| By: ┌DocuSigned by:<br>*Olmar López*<br>└CFB6E050A58F446<br>Name: Olmar López Vidal | By: ┌DocuSigned by:<br>└7B6FDA8D0B8640A<br>Name: Ignacio Alvarez Zataraín |
| Title: President | Title: President & Chief Executive Officer |
| Signature Date: 7/18/2022 | Signature Date: 7/18/2022 |

134. This favorable Offtake Agreement would only benefit BPPR if BGF completed the construction and began production. This required the bank to double down on its

wrongdoings to support the Lopezes, so the bank issued Credit Amendment 3, along with other gifts.

135.   A July 7, 2022, email from Olmar Lopez Vidal to Humberto Gonzalez describes the other additional benefits: BPPR released the $610,000 LC Cash Collateral to BGF.

136.   After meeting the capital raise requirements, BPPR would make the $1 million Working Capital Account available and 100% of the $1.625 million Tranche Two Tax Credit would be available for project expenses instead of debt reduction. That would have reduced over $3 million of additional debt. Exhibit 64

137.   This RLNG agreement may be the only one in the banking industry. Plaintiffs know of no other. This violates the Bank Holding Company Act, 12 U.S.C. § 1972 because the arrangement is not a traditional banking practice, 12 CFR § 225.7(a)(1); and the bank conditioned the extension of additional credit and forbearance for the customer, GFC/BGF providing an additional product or service.

138.   The project was over budget and past its contractual completion date due to the bank's failure to address the Lopezes' thievery and incompetence, which caused significant harm to GFC/BGF, ultimately leading to its demise. This conflict of interest driven by the banks interest in the RLNG offtake agreement violates the Bank Holding Company Act, 12 U.S.C. § 1972 because this arrangement is anti-competitive or harmful.

139.   Banco Popular waited until the day after the offtake agreement was signed to raise BGF's interest rate. This demonstrates the close coordination between those managing the Offtake Agreement and the Credit Agreement and the control within the bank over BGF. Exhibit 65.

140.    Two days after Credit Amendment 3 was signed, BPPR transferred $16,125.54 and $27,736.47 to pay for the fossil natural gas provided under the offtake agreement by Crowley. See the checking statement below. Exhibit 66.

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 07/20/2022 | 2022201100005 | 2022072000000000000 | BANCO POPULAR PR VENDOR PAY | | $16,125.54 | $132,895.30 |
| 07/20/2022 | 2022201100010 | 2022072008500073907 | CHEQUE NUMERO 2742 | $7,875.00 | | $125,020.30 |
| 07/20/2022 | 2022201100015 | 2022072000000000000 | INTEREST-101-3268330-9001 9002 | $29,946.00 | | $95,074.30 |
| 07/20/2022 | 2022201100020 | 2022072008501010561 | CHEQUE NUMERO 2741 | $1,139.07 | | $93,935.23 |
| 07/21/2022 | 2022202100005 | 2022072108500112728 | CHEQUE NUMERO 2745 | $802.80 | | $93,132.43 |
| 07/21/2022 | 2022202100010 | 2022072108501000924 | CHEQUE NUMERO 2739 | $933.00 | | $92,199.43 |
| 07/22/2022 | 2022203100005 | 2022072200000000000 | 18004INTUIT QBooks Onl | $89.20 | | $92,110.23 |
| 07/22/2022 | 2022203100010 | 2022072200000000000 | BIOMASS GREEN FU CREDITS | $6,616.67 | | $85,493.56 |
| 07/22/2022 | 2022203100015 | 2022072208500112812 | CHEQUE NUMERO 2732 | $2,731.75 | | $82,761.81 |
| 07/22/2022 | 2022203100020 | 2022072208501005407 | CHEQUE NUMERO 2738 | $15,798.64 | | $66,963.17 |
| 07/25/2022 | 2022206100005 | 2022072200000000000 | REV CHEQUE NUMERO 2732 EFFECTIVE ON 07/22/22 | | $2,731.75 | $69,694.92 |
| 07/25/2022 | 2022206100010 | 2022072500000000000 | 18004INTUIT QBooks Onl | $61.33 | | $69,633.59 |
| 07/26/2022 | 2022207100005 | 2022072608500119386 | CHEQUE NUMERO 2746 | $414.29 | | $69,219.30 |

Available Balance: $182,827.19

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 07/26/2022 | 2022207100010 | 2022072608501009484 | CHEQUE NUMERO 2677 | $3,091.15 | | $66,128.15 |
| 07/27/2022 | 2022208100005 | 2022072700000000000 | BANCO POPULAR PRESTAMO | | $300,381.72 | $366,509.87 |
| 07/27/2022 | 2022208100010 | 2022072708500094721 | CHEQUE NUMERO 2744 | $70.00 | | $366,439.87 |
| 07/28/2022 | 2022209100005 | 2022072800000000000 | BANCO POPULAR PR VENDOR PAY | | $27,736.47 | $394,176.34 |
| 07/28/2022 | 2022209100010 | 2022072800000000000 | BANCO POPULAR PRESTAMO | $55,572.99 | | $338,603.35 |
| 07/28/2022 | 2022209100015 | 2022072808501016220 | CHEQUE NUMERO 2717 | $1,308.07 | | $337,295.28 |
| 07/28/2022 | 2022209100020 | 2022072808500004546 | CHEQUE NUMERO 2743 | $30,000.00 | | $307,295.28 |
| 07/29/2022 | 2022210100005 | 2022072900000000000 | BANCO POPULAR PRESTAMO | | $542,875.38 | $850,170.66 |

141.    On July 26, 2022, BPPR executed the Third Credit Amendment, Exhibit 28, because BGF had entered into the unduly onerous RLNG Offtake Agreement on July 18, 2022. Exhibit 26.

(1)    **Condition Imposed**: BPPR required RLNG at $14/MMBtu, less than 50% below the average DOE RLNG price in 2022 of $28.21/MMBtu (Exhibits 55-60), and carbon and environmental credits for no other payment.

(2) **Credit Extension**: One million dollars in additional credit, forbearance and deadline extension qualify as benefits. Exhibit 53 shows that these benefits could have reached an additional $3 million.

142. BPPR had an incentive to condition the grant of credit on the Offtake Agreement for RLNG, which would enable it to meet its corporate ESG requirements and reduce its electricity costs through a 10-year fixed price for the RLNG, along with valuable carbon credits and environmental attributes.

## The Rewards of Tying the Offtake Agreement

143. On the next day, July 27, the bank transferred $300,381.72 to BGF.

144. On July 28, the bank withdrew $55,572.99 as an interest-only payment on the construction loan, showing forbearance for the principal payments missed in April, May, and June 2022.

145. On the following day, July 29, the bank transferred $542,875.38 to BGF. Exhibit 54

146. The bank intentionally omitted putative guarantor Gregory Boyd's consent and signature from this Credit Amendment 3, despite his protests to the bank about the omissions and irregularities with the credit amendment. Boyd sent his objections the day before the Credit Amendment was signed. Exhibit 27.

147. Humberto Gonzalez of BPPR colluded with Olmar Lopez Vidal, rejecting Boyd's legal objections to the credit amendments (the default, litigation, and fraud) and seeking dirt on Boyd. See Exhibits 67-69, GFC Board Minutes.

148. After the parties signed Credit Amendment 3 on July 26, 2022, five further times, BPPR "loan washed" the monthly interest payments (Exhibit 70).

149.   For example, on August 22, from the same account, Banco Popular paid $29,996, to itself (Exhibit 71)

150.   On August 26, without a drawdown document, BPPR lent BGF $29,996 for a New Market Tax Credit (NMTC) interest payment.

151.   BGF had enough money to make the NMTC payment, because they had already made it four days earlier. No drawdown approval exists for this loan (Exhibit 71).

| 08/22/2022 | 2022234100010 | 2022082200000000000 | INTEREST-101-3268330-9001 9002 | $29,946.00 | | $199,128.29 |
| 08/22/2022 | 2022234100015 | 2022082200000000000 | 18004INTUIT QBooks Onl | $94.78 | | $199,033.51 |
| 08/22/2022 | 2022234100020 | 2022082208501019559 | CHEQUE NUMERO 2760 | $2,100.00 | | $196,933.51 |
| 08/22/2022 | 2022234100025 | 2022082208500128212 | CHEQUE NUMERO 2793 | $53.66 | | $196,879.85 |
| 08/22/2022 | 2022234100030 | 2022082208500113682 | CHEQUE NUMERO 2795 | $33.43 | | $196,846.42 |
| 08/22/2022 | 2022234100035 | 2022082208501009630 | CHEQUE NUMERO 2800 | $29,364.72 | | $167,481.70 |
| 08/23/2022 | 2022235100005 | 2022082300000000000 | 18004INTUIT QBooks Onl | $61.33 | | $167,420.37 |
| 08/23/2022 | 2022235100010 | 2022082308501016961 | CHEQUE NUMERO 2791 | $1,500.00 | | $165,920.37 |
| 08/26/2022 | 2022238100005 | 2022082600000000000 | BANCO POPULAR PRESTAMO | | $29,946.00 | $195,866.37 |

152.   Banco Popular acted as Administrative Agent and as fiduciary; it owes a duty of care and loyalty to BGF and other stakeholders. The bank increased BGF/GFC's debt without need or authorization from BGF/GFC.

153.   Not only does this action violate the Bank Holding Company Act, 12 U.S.C. § 1972, because the arrangement is not a traditional banking practice, and it is also a Breach of Fiduciary Duty. Puerto Rico Civil Code, 31 L.P.R.A. § 3561.

154.   Below is another example. BPPR deposited the direct loan interest payment of $65,972.35 to an account containing $200,000 in funds. A few minutes later, BPPR made the loan payment to itself for precisely the same amount, even though no loan was needed to make the payment (Exhibit 72).

| 2022-12-05 | 2022339100005 | 2022120500000000000 | EFT DEPOSIT BANCO POPULAR PRESTAMO 101-32683300001 | | $65,972.35 | $264,922.14 |
| 2022-12-05 | 2022339100010 | 2022120508500197187 | CHEQUE NUMERO 2921 | $70.00 | | $264,852.14 |
| 2022-12-05 | 2022339100015 | 2022120500000000000 | EFT PMT BANCO POPULAR PRESTAMO 101-32683300001 | $65,972.35 | | $198,879.79 |

155. Again, BPPR made the loan payment without providing supporting drawdown documentation, as required by BPPR's Credit Agreement with BGF.

156. The credit agreement allows the bank to make such loans to cover the payment and prevent non-payment.

157. Nonetheless, in every case, BGF already had enough money in the account to make the loan payment, so that no non-payment would have occurred.

158. This "loan payment washing" arrangement started immediately after signing Credit Amendment 3.

159. The "loan payment washing" breached BPPR's fiduciary duties and caused BGF and GFC Holdings to owe more than the amount agreed to in its original Credit Agreement.

160. The last "loan payment washing" payment was in June 2023.

161. On July 21, 2023, Olmar Lopez Vidal refused to sign the Federal Court Settlement of the RICO case.

162. By this time, the Lopezes had improperly started the Biorefinery, which lost the $10 million federal Investment Tax Credit because the application must be filed for such credit before the plant is started.

163. By intentionally starting the plant, the Lopezes caused substantial financial damage to the company.

164. The damage caused by turning on the plant exposed the flaws in the Lopezes' designs to BPPR, confirming the information Lassers provided Javier Ferrer, COO of Banco Popular in November 2021, Exhibits 9-15, and in the RICO complaint. Exhibit 16.

165. BPPR finally realized that the Lopezes were not capable of supplying RLNG and ended the "loan payment washing" and Credit Amendments that denied the existence of defaults and litigation.

166. Page 6 of the BPPR RLNG Offtake Agreement with BGF, Section 2.8, provides:

2.8    Debts. Popular may off-set any Seller debt or obligation owed to Popular or any of its affiliates that is more that ninety (90) days past due against any payment Popular owes to Seller hereunder.

167. Section 2.8 shows the Credit Agreement is tied to the Offtake Agreement.

168. A standard supplier agreement would not have a clause allowing payment of BGF's debts from its own loan agreement by offsetting BPPR's bills for RLNG.

169. None of the RLNG purchase agreements sent to other customers contained such a clause. This is a Breach of the Bank Holding Company Act, 12 U.S.C. § 1972, as the contracts are tied and this is not a traditional banking practice.

170. 5.3 (F) of BGF's Offtake Agreement with BPPR states:

"In the case of Seller, if the interruption of the supply of RLNG or LNG is not the result of a Force Majeure Event and exceeds ten (10) consecutive calendar days, and Popular's Facilities are unable to operate as a direct result of such interruption, Seller, will pay to Popular $2,100 per day pro- rated on an hourly basis after such ten (10) days, while Seller's Facilities remain inoperable. To the extent that on such payment date Seller owns **unencumbered, transferable carbon credits**, and only to such extent, Popular shall have the option of receiving payment of such $2,100 per day prorated on an hourly basis after 10 days in the form of cash or in the form of carbon credits. If Popular opts to receive all or part of such payment in the form of carbon credits, such credits shall be valued at a price agreed upon by the Parties. If the Parties fail to agree on a price, the price for such credits shall be

set in accordance with the price established by S & P Global Platts or other agreed upon third party expert as of the date such payment becomes due." Emphasis added.

171.   If BGF normally gave all their other customers carbon credits such as the BPPR Offtake Agreement requires, BGF would have no surplus "unencumbered, transferable carbon credits." Such contractual provisions with other off takers would make paying BPPR in carbon credits impossible.

172.   This arrangement is not a traditional banking practice either; thus violating 12 U.S.C § 1972. We know of no banks demanding the right to additional payments in "unencumbered, transferable carbon credits" as a condition for forbearance of a loan.

173.   BPPR by requesting a payment in additional carbon credits recognizes that BGF does not give all their carbon credits away to other customers.

174.   No other BGF Offtake Agreements awards the carbon credits to the purchaser.

175.   BPPR knows ceding free carbon credits is not normal business practice because BPPR's Credit Agreement with BGF requires that BGF submit all its Offtake Agreements (Project Contracts) to the bank, and BPPR has a secured interest in those Offtake Agreements as part of the Credit Agreement with BGF.

176.   What follows is an excerpt from the BPPR Direct Loan Agreement:

"Loan Documents" means, collectively, this Agreement, the Notes, the Security Agreement, the Environmental Indemnity Agreement, the Membership Interest Pledge Agreement, the Assignment of Leasehold Interest, the Assignment of Project Contracts, the Personal Guaranties, the Corporate Guaranty, the Accounts Control Agreement, the Assignment of Tax Credits, the Subordination Agreement, the Intercreditor Agreement, each of the other security instruments referred to in Section 3.1(c)(ii), and on and after the date of delivery thereof, such other guaranties, security instruments and other agreements as are required to be delivered

17

by a Loan Party under the terms of this Agreement or any other Loan Document, in each case as amended or otherwise modified from time to time.

177.    By contracting a portion of its RLNG to BPPR, BGF forfeited a minimum of $8 million of its profitability per MMBtu. This does not include the loss in carbon credits and environmental attributes.

178.    Island Renewable Energy and Venture Engineering, companies that are building biorefineries in Puerto Rico, now charge $40 MMBtu for RLNG from the Puerto Rico landfills in Ponce and Salinas. An email from Lopez Vidal to the GFC Board was sent on March 8, 2024, announcing this fact. Exhibit 55.

179.    On September 19, 2024, Olmar Lopez Vidal's email states BGF has a proposal to Haleon at $29 MMBtu and other clients in the $22-24 range. Exhibit 56

180.    The BPPR contract is for $14 MMBtu, plus receiving carbon and environmental credits, which is approximately $26 below the market rate as established by other operators in PR, Exhibit 73 Venture Engineering $40 MMBtu, and $14.21 below the DOE alternative fuel pricing report for 2022. Exhibit 63 $28.21 MMBtu.

181. The DOE pricing is for the mainland United States.

182. Puerto Rico pricing is higher due to the Act 73 35% and Act 60 25% recycling tax credit and the cost of transporting LNG overseas.

183. The BPPR Offtake Agreement is for 90 MMBtu daily (minimum quantity) for a ten-year term = 328,500 MMBtu x $26MMBtu ($40 Market rate - $14 Offtake Price). That represents $8,541,000 BGF could have made selling at the market rate. Exhibit 73. This action violates the Bank Holding Company Act, 12 U.S.C. § 1972, because the arrangement is both anti-competitive and harmful to the Plaintiffs.

184. This tying arrangement and the further extension of the loan ensured the Lopezes could continue to pay themselves and their own companies from BGF's loan proceeds for work they had never performed for BGF.Exhibit 16.

185. By tying the Third Credit Amendment and Offtake Agreements, BPPR ensured that, under the Lopezes' control, BGF was destined to run out of money and miss every construction deadline, ultimately allowing the bank to take estoppel on 100% of the assets of GFC/BGF, including the Landfill Gas Sale and Purchase Agreement (LFGSPA).

186. BPPR took estoppel on May 22, 2024, and then filed a collection case against BGF/GFC, and Olmar Lopez Vidal, Olmar Lopez Gomez and Gregory Boyd as personal guarantors. San Juan Superior Court, Case Number SJ2024CV04616.

187. Losing the LFGSPA ended all potential revenue for BGF/GFC and guaranteed its demise.

188. The LFGSPA agreement, at any price over $33 MMBtu, as outlined in Exhibits 63, 73-77, is worth at least $1 billion in profits over the 35-year term of the contract. That

amount does not include the loss of the first rights of refusal on the gas rights for the additional EC Waste landfills.

189. Section 1.9 of the BPPR Offtake Agreement with BGF states: "Popular represents that accepting RLNG from Seller does not, and will not, create a conflict of interest in Seller's relationship with Popular and Affiliate." Exhibit 26.

190. Section 1.9 is BPPR's attempt to forestall this cause of action.

191.  Saying no conflict of interest exists does not erase the conflict or tying.

192. BPPR intended to reduce its energy costs significantly by using BGF's renewable fuel for electricity generation for the "Carbon Neutral Facility at El Señorial Building."

| Delivery Location | Popular's combined heat and power facility located at the Carbon Neutral Facility at El Señorial Center, San Juan, Puerto Rico. |
|---|---|

193. The only way for the Facility at El Señorial Building to be "Carbon Neutral" was to buy RLNG from BGF, as BGF was the only source of RLNG produced in Puerto Rico in 2022.

194. On November 16, 2022, Ignacio Alvarez, CEO of BPPR and founder of PMA, one of the law firms defending BPPR in this case, released a promotional video from GFR Media. [He is the Alvarez in Pietratoni Mendez & Alvarez.]



195.    Having personally signed the tied Offtake Agreement on July 18, 2022, Alvarez stated that BPPR's Environmental, Social, and Governance (ESG) strategy included being the "first in Puerto Rico" to use RLNG for its Combined Heat and Power systems (CHPs), making its buildings Carbon Neutral.

196.    The RLNG is sourced from EC Waste's Puerto Rican landfill, for which BGF owned the gas rights.

197.    RLNG will be an essential part of BPPR's Environmental Social Governance (ESG) strategy.

198.    BPPR's 2022 Proxy Statement states on page 4: "In 2021, Popular completed the combined heat and power generation in one of our buildings located in Puerto Rico, to be fueled mostly by RLNG produced in local landfills." Exhibit 78.

199.    The Offtake Agreement states that: "The Contract Price" shall be $14.00 per MMBtu for the duration of the ten-year contract.

> The "**Contract Price**" shall be the guaranteed price for RLNG or LNG up to the Maximum Quantity, measured by weight at Sellers Facility or at third party supplier facility, when transferred to the ISO Tank that will transport the RLNG or LNG to the Delivery Location and will be inclusive of the Delivery Costs up to the amount stated below. The RLNG/LNG guaranteed price is fourteen dollars and no cents (US$14.00) per MMBtu during the Initial Term (subject to renegotiation for any Renewal Term).

200. The U.S. Department of Energy Alternative Fuel Report publishes the average price of RLNG approximately annually.

201. When the offtake was signed in 2022, the average price of RLNG in the mainland U.S. was $28.21. By January 1, 2025, it was $37.76 Exhibits 63, 75-77.

202. In Puerto Rico, the buyer of RLNG is eligible for a 35% recycled products tax credit according to Section 2(d)(l)(l)(ii) in Law 73- 2008 and 25% under Act 60.

203. Today, Island Renewable Energy, owned by Venture Engineering and VRMP, a BGF competitor, offers RLNG in Puerto Rico for $40 MMBtu. Exhibit 73.

204. Venture Engineering has built over twenty RLNG facilities in the States and owns six. Along with VRMP, they now own the RLNG projects in Humacao, Ponce and Salinas for which BGF had the rights.

205. Although $14 MMBtu is priced well below the market for RLNG in Puerto Rico, it is just a fraction of the value of the tying agreement to BPPR.

206. The ten-year fixed-price Offtake Agreement gave BPPR all the Carbon Credits and environmental incentives for BGF's RLNG. From Section 2.7 of the Offtake Agreement:

> "Unless otherwise agreed in the Annex, any current and future environmental
> incentives and tax credits under federal or state law to which Popular is entitled

(including but not limited to renewable identification numbers, renewable energy credits, carbon credits, reduction in or avoidance of Greenhouse Gas emissions, emissions reductions credits, low-carbon fuel standard credits, verified emission reductions, voluntary emissions reductions, offsets, allowances, voluntary carbon units, avoided compliance costs, emissions rights and authorizations and $CO_2$ reduction and sequestration) regarding the RLNG and LNG purchased from Seller will be retained by Popular."

207.    The market value of these credits varies depending on regulations and demand but is substantial.

208.    The value of these credits may well exceed the $14 MMBtu the bank is paying BGF during the period of the 10- year agreement.

209.    During 2025-2027, the 45Z provision of the Inflation Reduction Act will pay $8.77 per MMBtu. This would reduce the effective cost ($14-35%=$9.10 - $8.77 45z credit = $4.10) to **$0.33 per MMBtu**. When one deducts RECs and Carbon Credits, the $0.33 can be less than $0 for a product sold to other customers in Puerto Rico for $40 MMBtu.

210.    No properly managed RLNG company would sell gas below market and give the carbon and environmental credits worth tens of millions of dollars away for free, but BPPR understood BGF was not properly managed and was in no position to negotiate.

211.    Below is the table and signatures from the BPPR Offtake Agreement with BGF. Ignacio Alvarez, the President and CEO of BPPR, a $62 billion banking institution, took the time to sign a supplier agreement.

212.    After the original Anti-Tying lawsuit was filed in Federal Court in December 2024, and Banco Popular added new counsel for this case, Ignacio Alvarez announced his retirement from Banco Popular in February and left in June. Exhibit 79.

213.   Javier Ferrer, the same person to whom Boyd and Lassers delivered documentation of the frauds and who promised to investigate in November 2021, has now replaced Alvarez. Exhibits 9-15.

| | |
|---|---|
| Delivery Location | • Popular's combined heat and power facility located at the <u>Carbon Neutral</u> <u>Facility at El Señorial Center,</u> San Juan, Puerto Rico. |
| Seller's Facility | • Seller is in the process of establishing a biorefinery plant ("Seller's Plant") located at Road PR-3, intersection 923, Km 1.7 in Bo. Buena Vista, Humacao, Puerto Rico 00791 (the "Seller's Facility") that will produce RLNG (RLNG) for commercial and industrial use. |
| Delivery Point | • The LNG Meter at Popular's LNG tanks located at the Delivery Location. |

| | |
|---|---|
| Supply Start Date | • The earlier of (i) the date on which Popular's Facilities are capable of generating power using RLNG as fuel and (ii) the date on which the Seller's Plant is operational, which is estimated to be no later than August 1, 2022. In the case of (i), Popular shall have up to sixty (60) days for commissioning of Popular's equipment. Popular shall give Seller at least fourteen (14) calendar days prior written notice of the completion of construction of Popular's Delivery Site and at least seven (7) calendar days prior written notice of the completion of commissioning. If Popular's Delivery Site become capable of generating power prior to Seller's Plant becoming operational, then Seller shall supply LNG to Popular from Backup Supplier. During this interim period, Popular shall pay spot market price plus any other verifiable out of pocket costs incurred by BGF and the LNG supplied shall not count against the 98% RLNG guarantee. If on August 31, 2022, Seller does not begin supplying RLNG, Seller will continue supplying LNG at the Contract Price established herein. If on September 30, 2022, |

| | |
|---|---|
| | Seller has not begun supplying RLNG, Popular at its option may (i) permit Seller to continue supplying LNG at the Contract Price established herein (ii) terminate the Agreement for cause. and require the immediate payment of an amount equivalent to six (6) months Maximum Quantity supply of RLNG/LNG at Contract Price as provided in section 6.4(D). |
| Renewable Energy Credits (REC's) and Carbon Credits (CC) | • <u>Seller will transfer free of charge all REC's and CC's to which Popular may be entitled to by Law or regulation, due to the RLNG sold to Popular.</u> Seller shall retain all REC's and CC's to which Seller is entitled to by Law or regulation. |
| LNG Meter | • The utility grade meter located at the inlet of the Popular LNG tanks. LNG Meter will be the point at which title and risk of loss will transfer from Seller to Popular. |
| Seller's Backup Supplier | • Crowley or any other such other replacement Backup Supplier agreed to by the parties. |

| Effective Date | 1 April 2022 | Initial Term Expiration Date | 31 May 2032 |
|---|---|---|---|
| Renewal Term: | Upon mutual agreement. | | |

**This Agreement includes the following Annexes and Exhibits:**

- Annex(es) of Service
- Exhibits: (Annex 1) (Annex 1-A)
- ☒ (Exhibit 1) Insurance Requirements for Popular Providers
- ☐ Certification Form
- ☐ _____
- ☐ _____

DS
EJMM
7/18/2022

**IN WITNESS WHEREOF**, the parties have executed this Agreement by their duly authorized representatives as of the Effective Date.

DS
JDP
7/18/2022

| Biomass Green Fuels LLC | Banco Popular de Puerto Rico |
|---|---|
| By: DocuSigned by: *Olmar López* CEB6E050A58F446... | By: DocuSigned by: *[signature]* 7B0FDA8D0B8040A... |
| Name: Olmar López Vidal | Name: Ignacio Alvarez Zataraín |
| Title: President | Title: President & Chief Executive Officer |
| Signature Date:7/18/2022 | Signature Date:7/18/2022 |

DS
JDT
7/18/2022

{00035899 2 }

214.   This agreement was important to Attorney Alvarez because it provided significant benefits to the bank, both monetarily and in terms of its "Carbon Neutral" ESG status as a publicly traded company.  The picture below is of the BGF  RLNG  tanks  at "Señorial Carbon  Neutral  Center".



215. BPPR paid BGF $280,000 for these tanks in December 2021, seven months before signing the Offtake Agreement, showing their intent to sign the offtake agreement once BGF was desperate.

216. Flexitank is an investor in BGF and provides fuel delivery. This shows a prior plan and commitment to sign an Offtake agreement with BGF.

217. Galileo is a major equipment supplier to BGF.

218. Indeed, Galileo is one of the suppliers to which BGF wired $1 million for project completion on the day Plaintiffs Boyd and Lassers filed their RICO case.

## AstraZeneca Offtake Agreement

219. In 2024, BGF missed more completion deadlines, had damaged equipment trying to operate a mis-designed plant, and was still in default with El Coqui Landfill and now BPPR.

220. In desperation, BGF executed an Offtake Agreement with Astra Zeneca, requiring a $350,000 advance payment to stave off estoppel with EC Waste (Exhibit 80).

221. Astra Zeneca's price for the RLNG was $21.50 compared to BPPR's $14 MMBtu. While $21.50 is significantly higher than BPPR's $14, it is still a substantial discount over the DOE's 2024 pricing average of $29.91, Exhibit 76, which contributed to AstraZeneca providing a $350,000 advance payment to BGF.

222. In the rush to complete the AstraZeneca Offtake Agreement, it mistakenly stated that both the Supplier and Buyer are to retain the carbon and environmental credits. Exhibit 80 at 37, paragraph 21.

## Banco Popular Takes Estoppel and Sues for Collection

223. On May 22, 2024, BPPR exercised estoppel on the Gas Rights Agreement, seizing BGF's 30-year RLNG rights and rendering BGF worthless. Exhibits 81-82. This

gave BPPR control of the RLNG rights for the remaining thirty years, as predicted by Boyd and Lassers in the RICO Complaint in April 2022.

224.    BPPR sued BGF and guarantors GFC, Boyd [as a purported guarantor], Lopez Gomez, and Lopez Vidal for $12.1 million in loan repayments. SJ2024CV04616 P.R. Super. Ct. filed on May 22, 2024. Exhibit 83

225.    Boyd filed a counterclaim in the collection case on July 12, 2024. Exhibit 84.

226.    BPPR further breached its fiduciary responsibilities to GFC/BGF when it sold BGF's promissory note and all of its rights to VRMP, in the face of a better offer made by Cambrian Energy. Exhibit 29.

227.    BPPR sold BGF's promissory note and all of its rights, despite the open counterclaim and the credit agreement having never been perfected. Exhibit 45.

228.    VRMP's subsidiary Humacao, RNG, purported to close an Asset Acquisition Agreement to purchase essentially all of GFC/BGF's assets on February 7, 2025, for $4.4 million.

229.    Semillero Ventures, Puerto Rico Fund for Growth, CDCVA, and Olmar Lopez Gomez, who is the president of ITS, voted in favor of the Asset Acquisition Agreement. Each of them had a conflict of interest, since each was receiving payments from the Asset Acquisition Agreement, Exhibit 85, and each should have abstained from voting. 14 L.P.R.A. § 3565.  None did.

230.    Total payment consideration was: Semillero $1,239,723, PRFG $528,526, CDVCA $208,576, Olmar Lopez Gomez $230,804. Exhibit 86.

231.    The Asset Acquisition Agreement is a deemed liquidation event as defined in the GFC Holdings Operating Agreement, Exhibit 87 at 7, "disposition of all or substantially

all of the assets of the Company." Such an event requires unanimous approval from the members of GFC Holdings. Exhibit 87 at 28, §9.1. No such vote was ever held.

## BREACH OF FEDERAL ANTI-TYING STATUTE 12 U.S.C. 1972

232.    Plaintiffs incorporate the prior allegations as if set forth in full.

233.    BPPR violated 12 U.S.C. §1972 by tying the Offtake Agreement to its loan to BGF and GFC.

234.    In relevant part, 12 U.S.C. § 1972 provides, (1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement …[C]that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service.

235.    12 U.S.C. §1975, in turn, provides that any person who is injured in his business or property by reason of anything forbidden by this statute shall be entitled to treble those damages and a reasonable attorney's fee as well as an injunction ending the tying agreement.

236.    Statutory and Regulatory Language: The specific language of the anti-tying laws and regulations typically does not require that contracts be signed at the exact same time (contemporaneously) to be considered a tying arrangement.  Instead, the focus is often on whether one service is conditioned upon the taking of another.

237.    Nonetheless, Biomass Green Fuels signed the offtake agreement with BPPR on July 18, 2022, and the Third Amendment to the Credit Agreement with BPPR on July 26, 2022, so the timing is extremely close.

238.   Conditionality, Not Timing, is Key: The essence of a tying arrangement is the conditionality of one product or service upon the acceptance of another, not the timing of when the agreements are signed. If the approval or favorable terms of one service (e.g., a loan) depend on the customer's agreement to use or provide another service, this is a tying arrangement regardless of whether the contracts are signed on the same day.

239.   BPPR violated the Anti-Tying law when it "tied" the favorable loan agreement and Credit Amendment to the Offtake Agreement favorable to BPPR, despite Lopezes' lack of creditworthiness, competence to build a biorefinery, and their conflicts of interest, outstanding litigation, lack of audited accounts, and reports of fraud.

240.   BPPR used its market dominance in Puerto Rico to force unfavorable agreements on an intentionally weakened company, which harmed the Plaintiffs.

241.   BPPR required BGF to sell RLNG for approximately 50% below the then current market price, Exhibit 63 at 4 $28.21, on a fixed price 10-year contract and give away the Environmental Attributes and Credits for no consideration in exchange for forbearance on BGF's Credit Agreement with the bank, extending the missed deadline by six months and an additional $1 million expansion of the direct loan as part of the illegal tying agreement. This is not a normal business practice, but rather the direct result of the tying, and it violates 12 U.S.C. § 1972.

242.   By allowing the Lopezes to operate BGF with conflicts of interest, without any fiscal controls or audited financials, in exchange for the Offtake Agreement with its below-market pricing and the appropriation of the carbon and environmental credits, BPPR injured Biomass Green Fuels by destroying the value of BGF and GFC.

## DAMAGES CAUSAL NEXUS

243.    BPPR's decision to enable and allow the Lopezes to hire their own construction company to get favorable terms for the Offtake Agreement doomed the project, causing Plaintiffs to suffer the damage set forth in this section.

244.    The EC Waste deadline for BGF was called the Commercial Operations Date. This date was extended by payment of $250,000 to EC Waste on October 15, 2020. This payment extended the Commercial Operations Deadline from March 2021 until August 2021. Exhibit 88.

245.    The construction contract with ITS and ASC (the Lopezes Construction JV) expired in June 2021, with a fixed price of $5 million. The contract has no approved change orders. The BPPR Credit and NMTC Agreements require the construction contract to be a fixed-cost contract.  BPPR never enforced the fixed price requirements. It failed its fiduciary responsibilities as Administrative Agent by paying millions of dollars over the construction contract's fixed price to ITS and ASC.

246.    BPPR as Administrative Agent should not have allowed payment to ITS or ASC after June 2021 from BGF's checking account, as the contract had expired and more so after Gregory Boyd and Jonathan Lassers reported fraud to BPPR in November 2021, but they did so because of BPPR's desire for the offtake agreement to earn ESG, Carbon and Environmental Credits for the use of RLNG.

247.    BPPR facilitated the frauds and fraudulent drawdowns by allowing the construction company to be owned by the co-owners of BGF, a condition that no other financial institution with which BGF negotiated would have permitted.

248.   Federally backed loan requirements prohibit the payor and the payee from being the same person. It is too risky due to the inherent conflict.

249.   The results of those risks – deficient design and construction work never finished on time - manifested themselves repeatedly, but BPPR kept disbursing the loan, millions of dollars after BGF had paid the full amount of the construction contract.

250.   The BGF construction project was required to be completed by the new Commercial Operations Date of August 2021.

251.   The loans, equities, and tax credits were budgeted to cover the costs until that date. Thereafter, the positive cash flow from the Biorefinery's operation after November 2021 should have covered all costs and provided a substantial profit.

252.   The Lopezes' fraud, bad design, and construction failures caused BGF to miss the Commercial Operations Date.

253.    BPPR contributed to the Lopezes' fraud and construction failures by allowing the Lopezes to operate BGF and the construction company, resulting in significant losses for BGF with every month of delay.

254.   BPPR permitted these misdeeds to secure the Offtake Agreement and never altered that decision despite realizing that Boyd and Lassers possessed the metastasizing evidence demonstrating that the Lopezes were corrupt and incompetent from before the September 15, 2020, credit agreement.

**PENDENT CLAIM**

255.   Plaintiffs incorporate all of the prior allegations as if set forth in full.

256.   BPPR's actions, described above, breached the fiduciary duties it assumed as Administrative Agent for its loan and Disbursing Agent for the NMTC loan.

257.   The Third Credit Amendment saddled BGF with an additional $1 million in debt, part of which BPPR caused through its "loan payment washing" – a term Plaintiffs have coined to describe the conduct set forth above whereby the bank deposited money that BGF did not need to pay the loan and then paid the loan with that money, having increased the loan amount.

## Prayer for Relief

258.   BPPR's tying practices caused BGF and GFC substantial damages, including direct losses and future profit losses, arising from violations of anti-tying laws under Section 1972 of the Bank Holding Company Act Amendments of 1970 (12 U.S.C. § 1972) and breaches of fiduciary duties under common law principles, as well as incurred attorneys' fees and expenses. An expert witness will substantiate the extent of these damages during the discovery process.

**WHEREFORE**, GFC Holdings, LLC, Biomass Green Fuels, LLC, Gregory Boyd, and Jonathan Lassers very respectfully ask this Honorable Court to enter a judgment in favor of GFC Holdings, LLC, Biomass Green Fuels, LLC, Gregory Boyd, and Jonathan Lassers suffered damages in an amount to be proven at trial, plus attorneys' fees, expenses and punitive/consequential damages pursuant to 12 U.S.C. § 1972, Bank Holding Company Act, Anti-Tying Provision and 12 U.S.C. § 1975 Bank Holding Company Act, Remedies for Anti-Tying Violation, breach of fiduciary and whatever relief this Honorable Court may deem necessary and appropriate.

**JURY DEMAND**

**Plaintiffs hereby demand a trial by jury.**

Dated July 2,  2025.

**Respectfully submitted,**

S/Jane Becker Whitaker/
**JANE BECKER WHITAKER**

USDC No. 205110
PO Box 9023914
San Juan, PR 00902-3914
Tel.(787) 585-3824
E-mail: bw@beckervissepo.com
janebeckerwhitaker@gmail.com

S/Jean Paul Vissepó Garriga/
**JEAN PAUL VISSEPÓ GARRIGA**

USDC No. 221504
PO Box 367116
San Juan, PR 00936-7116
Tel.(787) 633-9601
E-mail: jp@vissepolaw.com

S/ Luis E. Miñana/
**Luis E. Miñana, Esq.**
PR RUA No. 16297 USDC-PR No. 225608
**ESPADA, MIÑANA, & PEDROSA LAW OFFICES, PSC.**
122 Calle Manuel Dómenech Altos Urb. Baldrich
San Juan, PR 00918
minanalaw@yahoo.com www.securitiesatty.com
Tel.: (787) 758-1999 Mob. (787) 402-2226