GREGORY BOYD, et al.,

Plaintiffs,                                                        CIVIL NO. 24-1599 (PAD)

v.

BANCO POPULAR DE PUERTO RICO,

Defendant.

**OPPOSITION TO MOTION TO STRIKE "UNAUTHORIZED" CLAIMS AND EXHIBITS IN THE SECOND AMENDED COMPLAINT AND TO DISQUALIFY PLAINTIFFS' COUNSEL**

**TO THE HONORABLE COURT**:

**COME NOW** Plaintiffs Gregory Boyd, Jonathan Lassers, GFC Holdings, LLC ("GFC"), and Biomass Green Fuels, LLC ("BGF") (collectively, the "Companies"), through undersigned counsel, and respectfully state and pray:

## I. INTRODUCTION

Roberto Abesada, Esq., representing a minority of the Companies' owners, purports to dismiss a valid Anti-Tying case that could benefit the Companies with substantial monetary compensation. This action attempts to conceal the misconduct of those minority owners, which has culminated in the unauthorized liquidation of the Companies' assets, in violation of the Operating Agreement's requirement for unanimous approval for liquidation.

The buyer, also an insider member, compensated each member of the Abesada faction as detailed below. In exchange, that faction delivered all of the Companies' assets to the buyer and agreed that neither they nor Gregory Boyd would sue Banco Popular, even though Boyd had already sued Banco Popular twice [Once in the RICO and the second time the Anti-Tying case].

A motion to strike under Fed. R. Civ. P. 12(f) is disfavored and requires a showing of significant prejudice. *See* 5C Arthur R. Miller et al., *Federal Practice and Procedure* § 1382 (3d ed. 2024) (Westlaw). Disqualifying a "party's chosen attorney is a serious matter which could not be supported by the mere possibility of a conflict." *Cora v. Amgen,* 2-1626, (D.P.R. August 1, 2024) Docket 191, *citing Estrada v. Cabrera,* 632 F. Supp. 1174, 1175 (D.P.R. 1986) (citing *Richmond Hilton Ass'n v. City of Richmond,* 690 F.2d 1086, 1089 (4th Cir. 1982)) Of course, the issue here is what party chooses counsel. Plaintiffs ask this Court to make that judgment based on our argument that we are best suited to represent the Companies' best interests.

The Motion to Strike Unauthorized Claims and Exhibits in the Second Amended Complaint and to Disqualify Plaintiffs' Counsel, filed by Roberto Abesada, Esq. in purported representation of the Companies seeks to strike claims and exhibits from the Second Amended Complaint ("SAC") (ECF No. 57) and disqualify Plaintiffs' counsel. Atty Abesada argues that the Written Consent of Members (ECF No. 47-1) is "null and void" and that the SAC is frivolous. These arguments fail.

First, the Written Consent is valid under GFC's Amended and Restated Operating Agreement dated September 14, 2020 (as amended January 20, 2021) (the "Operating Agreement") (SAC Ex. 87) and Puerto Rico law, as a majority of members may act by written consent, and the Board of Managers (the "Board") has forfeited its authority through conflicts of interest and

breaches of fiduciary duty, including an improper asset sale without unanimous member approval. Second, the SAC seeks to vindicate the companies' valuable claims against Banco Popular, a goal which is in the companies' best interests. Judicial estoppel could only apply if this Court were to determine that Banco Popular has the right to repeal a federal law by contractual fiat. Third, disqualification is unwarranted, as counsel's representation aligns with the interests of the majority members and the Companies' best interests, without any ethical conflict. Indeed, it is the minority faction that Atty. Abesada represents that seeks to diminish the benefit that the Bank Holding Company Act affords the Companies.

## II. THE FACTS

The Abesada faction benefitted individually from the sale. SAC Ex. 86: Semillero received $1,239,723 for its interest in the company as well as $163,348.36 as a supplier. *Id.* at 12, 14.[1] Semillero Partners received an additional $65,000 as a supplier. *Id.* at 14. The Puerto Rico Fund for Growth received $528,526. *Id.* at 12. The Community Development Venture Capital Alliance (CDVCA) received $208,576. *Id.* VRM Penzini, in addition to receiving all the Companies assets at a bargain received$657,818. *Id.* Olmar López Gómez's company, International Technical Services (ITS) received $230,804, for constructing the non-operational biorefinery. *Id.* at 13. This was 100% of the debt he claimed. *Id.* All of them had conflicts of interest. All they votes for the sale.

---

[1] The consulting advice Semillero provided to the Companies included advising them to ignore the conflict of interest between the Lopezes as members of the Companies and owners of the construction company building the biorefinery and to refuse to create a separate bank account for the federal New Market Tax Credit money to avoid its being used for expenses other than equipment, as federally mandated.

In fact, Semillero, its principal, Alexander Borschow, and VRM sued the Lopezes and the Companies, stating in part that "the truth that we have discovered to date is that the Lopezes are two corrupt people who lack the knowledge they claim, but, even worse, any honor. Their acts demonstrate complete disdain for all of those who economically supported the virtues of the project, such as their partners, Banco Popular, and the local and federal governments. After the failed construction of the biorefinery together with approximately $40 million embezzled during that construction, the plant is nonoperational and in order to remedy the defects that the Lopezes have tried to hide needs between $7 and $10 million additional investment. This is because the design and construction abilities of the Lopezes were not what they claimed." SJ 2024CV7694, Docket 1 at 3 August 21, 2024 (Our translation). On October 7, 2024, the Plaintiffs dismissed the case as to Mr. Lopez Gomez. Abesada represents the Companies in that case. Despite those allegations against Lopez Gomez, VRM Penzini paid him in full.

Although the sale of all the Companies' assets requires unanimous approval, the Abesada faction attached a Members' Resolution—representing a majority of unitholders on an as-converted basis—to the Asset Acquisition Agreement, thereby implicitly acknowledging that the Companies could proceed based on such a majority vote. See Exhibit 1: Executed Asset Acquisition Agreement. That resolution was signed by only Mr. Lopez Gomez and his wife, who at the time had a 12.61% ownership interest.

In relevant part, the Asset Acquisition Agreement is neither marked as confidential nor explicitly stated to be confidential. The only references to confidentiality within it pertain to a distinct subset of information designated as confidential. *See* Exhibit 1 at 6, 18-19.

## III. ARGUMENT

## A. The Written Consent of Members Is Valid, and the Board Has Forfeited Its Authority Due to its Members' Conflicts and Breaches

Puerto Rico corporate law was modeled on Delaware corporate law, so courts here turn to Delaware corporate law for reference. *Wiley v. Stipes,* 595 F.Supp.2d 179, 185 (D.P.R. 2009). In *Auriga Capital Corp. v. Gatz Properties, LLC, 40 A.3d 839* (Del. Ch. 2012), *aff'd sub.nom. Gatz Properties v Auriga Capital Corp.*, 59 A.3d 1206 (Del. 2012) the managing member of a Delaware LLC breached its fiduciary duties through self-dealing, including orchestrating a below-market sale of the LLC's assets to itself to squeeze out minority members. The Chancery Court held that "the LLC agreement here does not displace the traditional duties of loyalty and care that are owed by the managers of Delaware LLCs to their investors in the absence of a contractual provision waiving or modifying those duties." *Id.* at 843. Here, the Companies' Operating Agreement contains no such waiver either, so this Court should hold that the Abesada faction was and is bound by such duties.

The Chancery Court held that the manager's conflicted actions rendered its decisions invalid, imposing liability for damages and emphasizing that equity treats LLC managers as fiduciaries who forfeit legitimacy when engaging in self-interested transactions. The Court held: "It seems obvious that, under traditional principles of equity, a manager of an LLC would qualify as a fiduciary of that LLC and its members." *Id.* at 850. On appeal, the Delaware Supreme Court affirmed the breach findings, reinforcing that breaches like self-dealing (analogous to the Board's improper asset sale without unanimous approval and with personal benefits) strip managers of authority to act against the LLC's interests. This supports our position that the Board's conflicts

(e.g., violating P.R. Laws Ann. tit. 14, § 3965 by not abstaining from conflicted votes) forfeit its management rights, allowing majority member intervention.

Abesada's Motion asserts that the Written Consent, Docket 47-1, is null because it contravenes the Operating Agreement (Ex. 1 to Motion) by overriding the Board's exclusive management authority without an amendment to the Operating Agreement, which he contends requires consent of the Preferred unit holders. This misreads the Operating Agreement and overlooks the Board's forfeiture of authority due to its actions taken in bad faith.

Under Puerto Rico's Limited Liability Company Act, P.R. Laws Ann. tit. 14, §§ 3911 *et seq.*, members may act by written consent unless prohibited by the operating agreement: "Unless the limited liability company agreement provides otherwise, action required or permitted by this chapter to be taken at a meeting of the members may be taken without a meeting if the action is taken by members having not less than the minimum number of votes that would be necessary to authorize or take the action at a meeting at which all members entitled to vote thereon were present and voted." *Id.* § 3957(a). The Operating Agreement expressly permits this: Section 3.2 allows members to "act by written consent by the Majority Approval of the Members (a 'Member Resolution')." SAC Ex. 87 at 28. Section 6.6 further provides that "[a]ny action required or permitted to be taken at any meeting of the Members may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members entitled to vote thereon were present and voted." SAC Ex. 87 at 38. The Majority Members (Boyd, Lassers, John Lee Dumas and Olmar López Vidal, holding over 50% of voting units on an "as converted" basis per the Second Amendment) validly consented to join

this action and retain the Becker-Vissepo Law Firm. Docket ECF No. 47-1; SAC Ex. 87 § 3.2; SAC Ex. 4. No amendment to the Operating Agreement was needed, as this is a direct exercise of member rights, more so where conflicts incapacitate the Board. *See Auriga Capital* at 849 ("inequitable action does become legally permissible simply because it is legally possible.", *citing Shnell v. Chris Craft,* 285 A.2d 437, 439 (Del. 1971)

The Board's authority is expressly conditioned on good faith: Section 6.1(e) provides that the Board may act "provided that the Board of Managers agree to act in good faith in taking such actions or making such decisions." SAC Ex. 87 at 21. The Board has materially breached this condition through self-dealing and conflicts, including approving the January 2025 Asset Acquisition Agreement, SAC Ex. 85, without unanimous member approval required for a "deemed liquidation event," defined as the "sale, lease, license or other disposition of all or substantially all of the assets of the Company." SAC Ex. 87 at 7, 28 § 9.1. Board members received personal payments from the sale. SAC Ex. 86: Semillero $1,239,723; PRFG $528,526; CDVCA $208,576; VRM Penzini $657,818; Olmar López Gómez $230,804, where member VRM Penzini paid the other members and acquired the Companies' assets, creating self-dealing conflicts in violation of P.R. Laws Ann. tit. 14, § 3965 (managers must abstain from conflicted votes and act in good faith).

The Abesada Motion's reliance on *In re N2N Commerce, Inc.*, 405 B.R. 34, 41 (Bankr. D. Mass. 2009), is misplaced, because that case considered who had standing to file a bankruptcy petition, the Court found that the Board of Directors failed to assign such authority to an assignee. *Id.* at 42-43. Here, the Operating Agreement provides that unanimous consent is required for a liquidation, such as the one the Board of Managers purported to effect.

The Abesada Motion's claim that Series A consent is required under Section 11.3 overlooks the fact that no amendment has occurred—the Consent is a valid exercise under the existing terms. SAC Ex. 87 at 53 § 11.3. Plaintiffs disclosed the Consent to corporate counsel, Ex. 2 to Motion, but the Board's opposition stems from its conflicts, not legal infirmity. The Motion's invocation of P.R. Laws Ann. tit. 14, §§ 3953, 3959 (board management) fails to address these breaches. The Consent is valid, and the SAC claims are authorized.

Attorney Abesada further falsely claims that Plaintiffs' assertion of their rights as the Majority of Members under 3.2 would require an Amendment to the Operating Agreement. He also avers that any votes undertaken by GFC still require a vote of a majority of both the Preferred Unit holders and a majority the Common unit holders despite the Second Amendment, in which all unit holders agreed to vote as one class, on an "as converted basis". It should be noted that the vote implied by the Board's Written Consent to liquidate the Company's assets itself did not comply with this standard.

Abesada's claim that the Board of Managers' illegal liquidation of the Companies' assets among themselves was undertaken in their own Asset Acquisition Agreement by a Written Consent is validated only by those representing a simple majority on an "as converted basis" of both Preferred and Common unit holders. *See* Exhibit 1 at 57 and 58 Written Consent.

The centerpiece of the Board of Managers' illegal liquidation is a based on the very amendment to the Operating Agreement, they now seek to deny should be valid. Abesada and the conflicted Board of Managers cannot have it both ways and always be right. If the unitholders acting on an as converted basis have the right to issue a Written Consent to act to liquidate the Company's assets, which required a unanimous majority, how can the Majority of Members not

have the same right to act to benefit (protect) the Companies as they are entitled to under the Operating Agreement?

**B. The SAC Is Meritorious;, Judicial Estoppel Does Not Apply;, and No Exhibits Warrant Striking**

The Abesada Motion alleges the SAC is frivolous and exposes the Companies to sanctions under Fed. R. Civ. P. 11, citing judicial estoppel from prior waivers and releases. *See Rossay v. N.Y. Life Ins. Co.*, 992 F. Supp. 3d 20, 22 (D.P.R. 2023) (quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003)); *Dize-Baze v. Alicea-Vasallo*, 22 F.4th 11, 21 (1st Cir. 2022). This is incorrect. Judicial estoppel requires parties to refrain from taking inconsistent positions in litigation that would mislead the court. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001). Here, the anti-tying claims under 12 U.S.C. § 1972 are independent federal causes of action, not defenses to the loan, and cannot be waived by contractual provisions. *Cf. JST Properties v. First National Bank of Glencoe,* 701 F.Supp. 1443, 1446 (D.Minn. 1988) (especially those obtained through fraud.) (see *also* 12 U.S.C. § 1975 (providing remedies for violations). The waivers in the Credit Amendments SAC Exs. 48–53 are unenforceable in this context because they pretend to repeal the federal powers of the Bank Holding Companies Act by fiat.

Every member of the Board of Managers who signed the Asset Acquisition Agreement with its release (SAC Ex. 85) obtained a benefit not afforded to the non-signatories. Moreover, a deemed liquidation of the company requires unanimous consent, as stated in Section 9.1 of the Operating Agreement, SAC Ex. 87 at 28, which the Board of Managers did not have. The partial judgment in *Banco Popular de Puerto Rico v. Biomass Green Fuels LLC*, No. SJ2024CV04616 (P.R. Ct. First Instance Dec. 27, 2024), is not final—Boyd's motion for reconsideration was denied,

but a certiorari petition is forthcoming. *See Diaz-Morales v. Rubio-Paredes*, 170 F. Supp. 3d 276, 281 n.2 (D.P.R. 2016) (judicial notice does not preclude contesting non-final orders). No inconsistent position exists; the SAC advances new claims for Banco Popular's tying of credit to an offtake agreement. SAC ¶¶ 132–42. *Whitney Bros. v. Sprafkin,* 60 F.3d 8,13 (1st Cir. 1995), *quoting Jones v. Winnepesaukee Realty,Inc.* 990 F2d 1, 3 (1st Cir. 1993), supports fee shifting only for egregious filing, but the SAC is well-supported by evidence of below-market pricing and ESG benefits (SAC ¶¶ 63, 74-77) tied to the grant and extension of the Credit Agreement.

As to exhibits, none are privileged or prejudicial to the Companies, although some may, quite rightly, prejudice the bank. The Motion vaguely claims privilege without specificity. Attorney-client privilege is narrow and does not apply to board minutes unless there is confidential communication between client and counsel to obtain legal advice. *See Upjohn Co. v. United States*, 449 U.S. 383, 395–97 (1981). Here, two Board observers were present, as well as the company's CFO. Exhibits 67-69 to the SAC None of those people were communicating with counsel. No one present could have anticipated that the consultation would be confidential. Indeed, one of the Board members emphasized that Mr. Boyd should receive the Board minutes. *Id.* López Vidal waived any privilege by producing documents to Plaintiffs. *See United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 685 (1st Cir. 1997) ("[P]rivilege hinders truth-seeking and is narrowly confined."). *quoting Fisher v. United States*, 425 U.S. 391, 403 (1976); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 240 (2010) (privilege inapplicable to fraud). Exhibits are relevant business documents or public records and non-prejudicial; public filing serves the truth-seeking function. Striking the exhibits is unwarranted.

**C. Disqualification Is Unwarranted, as Undersigned Counsel Represents the Majority's Interests Without Conflict**

The counsel's representation aligns with the Majority Members' directive via a valid Consent. Any "adversity" stems from the Board's conflicts, not counsel's actions. The Companies' best interests lie in pursuing these claims to restore value lost to tying violations—not dismissing to shield Banco Popular or the conflicted insider member purchaser of Banco Popular's loan. No third-party claims arise from exhibits, as they expose fraud, and do not breach confidentiality. The Motion's conflict allegations are baseless because the undersigned are acting to assert the companies' rights, while Atty. Abesada seeks to deprive the companies of those rights. It is the latter who acts against the Companies' interests, not the undersigned.

**III. CONCLUSION**

For the foregoing reasons, the Motion should be denied. Plaintiffs respectfully request that the Court enter an order denying the Motion in its entirety and granting such other relief as is just and proper.

Respectfully submitted,

/s/ Jane Becker Whitaker
JANE BECKER WHITAKER
USDC No. 205110
PO Box 9023914
San Juan, PR 00902-3914
Tel: (787) 585-3824
E-mail: bw@beckervissepo.com
janebeckerwhitaker@gmail.com

/s/ Luis E. Miñana
LUIS E. MIÑANA, ESQ.
PR RUA No. 16297

USDC-PR No. 225608
ESPADA, MIÑANA, & PEDROSA LAW OFFICES, PSC
122 Calle Manuel Domenech Altos Urb. Baldrich
San Juan, PR 00918
minanalaw@yahoo.com
www.securitiesatty.com
Tel.: (787) 758-1999
Mob.: (787) 402-2226

/s/ Jean Paul Vissepo Garriga
JEAN PAUL VISSEPÓ GARRIGA
USDC No. 221504
PO Box 367116
San Juan, PR 00936-7116
Tel: (787) 633-9601
E-mail: jp@vissepolaw.com

Dated: July 25, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on all counsel of record.

/s/ Jane Becker Whitaker