GREGORY BOYD, *et al.*,

Plaintiffs,                                                   Civil No. 24-01569 (PAD)

v.

BANCO POPULAR DE PUERTO RICO,

Defendant.

**PLAINTIFFS' OPPOSITION TO DEFENDANT BANCO POPULAR DE PUERTO RICO'S JOINDER TO MOTION TO STRIKE UNAUTHORIZED CLAIMS AND EXHIBITS IN THE SECOND AMENDED COMPLAINT AND TO DISQUALIFY PLAINTIFFS' COUNSEL AND REQUEST TO HOLD IN ABEYANCE OR EXTEND DEADLINE TO ANSWER OR OTHERWISE PLEAD [Docket No. 69]**

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs Gregory Boyd, Jonathan Lassers, GFC Holdings, LLC ("GFC"), and Biomass Green Fuels, LLC ("BGF") (collectively, the "Companies" or "Plaintiffs"), through undersigned counsel, and respectfully state and pray:

**I. INTRODUCTION**

Plaintiffs understand that Banco Popular wants its lucrative offtake agreement without being held accountable for its violation of the Bank Holding Companies Act. Plaintiffs understand that the Abesada faction of the Companies want to keep the tainted money they received from an insider minority owner of the Companies with impunity. Unfortunately for the bank, it has neither standing to raise the argument nor a valid argument.

BPPR's Joinder repeats and restyles the flawed Motion to Strike filed by Roberto Abesada, Esq., on behalf of a conflicted minority faction of the Companies, Docket No. 62, without adding anything of value. BPPR accuses Plaintiffs of making deals with bad actors, but that is common practice in cases involving conspiracies because the bad actors have valuable information. Indeed, for example, federal investigators pursuing a Bank Secrecy Act violation case (No. 3:03-cr-00074) against Banco Popular reached deals with drug dealers such as Jose Miguel Marmolejos to gather evidence implicating BPPR in laundering millions from Dominican drug trafficking organizations, resulting in a record $21.6 million forfeiture[1]. *See* Exhibit 1, U.S. Department of Justice Press Release.

BPPR now criticizes Plaintiffs for settling with the Lopezes—"bad people"—in a parallel RICO case. However, Plaintiffs did what federal prosecutors did: they obtained detailed evidence and information to prosecute BPPR for tying violations under the Bank Holding Company Act, 12 U.S.C. § 1972(1)(C) as well as in the RICO case. To establish a violation of the BHCA, Plaintiffs must show (1) an anticompetitive tying arrangement; (2) the banking practice in question was unusual in the banking industry; and (3) an actual tie between the products. *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 394 (6th Cir. 1996). Here, BPPR's tying of credit extensions to a below-market Offtake Agreement satisfies these elements, as detailed in the SAC. BPPR's discomfort with this cooperation—similar to its prior exposure through deals with cooperators— consists of an attempt to shield itself from liability by supporting claims of a minority of members, who conveniently do not want to hold the bank liable.

Banco Popular's Joinder with the Abesada faction seeks to strike valid claims and exhibits from the Second Amended Complaint ("SAC") [Docket No. 57]; disqualify Plaintiffs' counsel; and

request a stay or extension of the deadline to respond. As set forth in Plaintiffs' Opposition to the Motion to Strike, Docket No. 76, these arguments lack merit: the Written Consent of Members, Docket No. 47-1, is valid; the Board's conflicts forfeited its authority; the SAC is well-pled; judicial estoppel does not apply; and disqualification is unwarranted. One is struck by the feeling that the Abesada faction's Motion was the prelude for the bank to file its Joinder.

Motions to strike under Fed. R. Civ. P. 12(f) are disfavored and require "substantial prejudice," which the Abesada faction could not demonstrate. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed. 2024). [Prejudice to Banco Popular for violating the anti-tying act is simply part of the equation.] Disqualification is a "serious matter," and mere "possible conflicts" are insufficient. *Cora v. Amgen, Inc.*, No. 21-1626 (D.P.R. Aug. 1, 2024), Docket No. 191; *citing Estrada v. Cabrera*, 632 F. Supp. 1174, 1175 (D.P.R. 1986); *Richmond Hilton Assocs. v. City of Richmond*, 690 F.2d 1086, 1089 (4th Cir. 1982).

BPPR's request for abeyance is a tactic to avoid responding to the SAC's claims—rooted in BPPR's tying of credit to a below-market Offtake Agreement— which are well-founded and properly pled. *See* Opposition at 8-9. The Court should deny both the Motion to Strike and the Joinder in their entirety.

## II. ARGUMENT

A. The SAC's Claims and Exhibits Are Valid and Authorized (Joinder ¶¶ 4-6)

BPPR joins the Motion to Strike, Docket No. 62, claiming the Companies' inclusion and representation are "unauthorized," and that the SAC and exhibits are "improper, immaterial, and impertinent." Joinder ¶¶ 4-6. This ignores the valid Written Consent, Docket No. 47-1, executed

by a majority of Members (over 50% on an as-converted basis) under Operating Agreement § 3.2 and P.R. Laws Ann. tit. 14, § 3575(a). *See* Opposition at 6-7. Exhibit 2, the Operating Agreement. This Consent authorizes Plaintiffs' counsel, Becker-Vissepó Law Firm, to act and join as plaintiffs.

The Board's conflicts—particularly its self-dealing in the Asset Acquisition Agreement without unanimous approval—voided its authority. *See* Opposition at 3-4, 5-6; *citing Auriga Capital Corp. v. Gatz Properties, LLC*, 40 A.3d 839, 843, 850 (Del. Ch. 2012), *aff'd, sub. nom. Gatz Properties, LLC v. Auriga Capital Corp.,* 59 A.3d 1206 (Del. 2013). In *Auriga Capital Corp.*, the Delaware Chancery Court held that LLC managers owe default fiduciary duties of loyalty and care under equity principles and statutory defaults, unless the LLC agreement explicitly displaces them. *Id.* at 849-50; *see also* 6 Del. C. § 18-1104. The court found breaches of such duties where the majority manager rejected a favorable third-party offer, misled minority members, and orchestrated a sham auction to acquire assets at a below-market price, enriching himself at the expense of the LLC and minorities. *Auriga Capital*, 40 A.3d at 843, 856-57, 870-71. These actions violated the duty of loyalty and a contractual "entire fairness" standard requiring fair dealing and fair price in affiliate transactions. *Id.* at 851-52, 870. The Delaware Supreme Court affirmed on contractual grounds, upholding findings of bad faith and self-dealing, while noting that default fiduciary duties apply absent contrary provisions, and deeming the Chancery Court's broader discussion on defaults as dicta. *Gatz Properties, LLC v. Auriga Capital Corp.*, 59 A.3d 1206, 1213-14, 1216-17 (Del. 2013).

The *Gatz* decisions prompted a 2013 amendment to 6 Del. C. § 18-1104, explicitly confirming that "in any case not provided for in this chapter, the rules of law and equity, including the rules of law and equity relating to fiduciary duties and the law merchant, shall

govern." [2] Del. H.B. 126, 147th Gen. Assemb., § 8 (2013) (effective Aug. 1, 2013). This amendment resolved ambiguity by incorporating default fiduciary duties of loyalty and care via equity, unless modified, reinforcing contractual freedom while providing clarity. *See id.* (synopsis) (noting that absent contrary provisions, "these default fiduciary duties would apply as a matter of equity," and the agreement may not eliminate core elements of loyalty like good faith and fair dealing). Cases post *Gatz* confirm these defaults unless disclaimed. *See Kyle v. Apollomax, LLC,* 987 F.Supp. 519, 524 (D.Del. 2013) *Cf. Allison v. Ericksson,* 479 Mass. 626 (2018) (Remedies where breach of fiduciary duty occurs are not constrained to the statutory right of distribution, and the trial court was within its discretion in fashioning an equitable remedy that amended the operating agreement.) In *Allison,* the Defendants breached their fiduciary duties, so the statute's exclusive remedy did not apply. *Id.* at 636-37.

Here, the Board's actions mirror those in *Gatz*: rejecting a superior offer from Evan Williams of Cambrian Energy to purchase 60% of GFC/BGF, misleading members, and facilitating a liquidation of the Company's assets without the unanimous vote required under the Operating Agreement. VRM- Penzini's acquisition of a $300 million asset for $4.4 million through the Asset Acquisition Agreement is a conflicted affiliate transaction lacking arms-length terms and legitimate approval. *See* Opposition at 3-4; *cf. Auriga Capital*, 40 A.3d at 843, 856 (rejecting $6 million offer equaling investments; sham auction for $50,000 cash plus debt assumption despite $8.9-$15 million valuations). Under Puerto Rico law, which expressly imposes fiduciary duties on LLC members and managers unless modified in the operating agreement, these breaches forfeit Board authority. *See* P.R. Laws Ann. tit. 14, § 3963(a)-(b) (providing that members and managers owe duties of loyalty and care, including acting in the best interest of the LLC, avoiding conflicts, and not competing; duties may be limited but not eliminated for loyalty or bad faith). *Id.* § 3565

(requiring abstention or disclosure and approval in conflicted transactions for directors, applicable to LLCs by extension).

The Puerto Rico General Corporations Act explicitly imposes fiduciary duties on LLC managers, subject to the business judgment rule, which presumes good faith but can be rebutted by gross negligence or self-dealing, triggering an entire fairness review. *See id.* §§ 3563 (duty of loyalty), 3564 (duty of care), 3963.  Here, given that the Board engaged in bad faith self-dealing without fair process or price, majority members may – nay - are obligated to act via written consent to authorize suit, aligning with the LLC's interests and overriding the conflicted Board. *Cf. Gatz Properties*, 59 A.3d at 1218 (affirming remedies for bad faith, including damages and fee-shifting); *Feeley NHAOCG*, 62 A.3d 649, 658-59(Del. Ch. 2012); *Kyle* 987 F. Supp. at 524. The SAC aligns with the Companies' interest in recovering damages from BPPR's tying conduct, including below-market off-take prices as well as the carbon and environmental credits. *See* Opposition at 8-9, ¶¶ 112-140, 196-206.

The Exhibits filed with the Complaint, including public filings and business records, are relevant and not privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-97 (1981); *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 683-84 (1st Cir. 1997). Motions to strike are inappropriate where, as here, the material supports well-pled claims without causing undue prejudice. *See* Fed. R. Civ. P. 12(f). The documents filed prejudice Banco Popular, of course, because the bank violated the anti-tying statute. Still, those documents benefit the Companies because any order requiring the bank to compensate the Companies for its violation would inure to the Companies' benefit. The very cost-benefit analysis of the bank versus the Companies destroys the bank's pretension of speaking for the Companies.

B. BPPR's Interest in Preventing Exposure of the Board of Managers' Actions is to Prevent Exposing its Own Liability

BPPR is mortally interested in preventing the exposure of the misdeeds of the conflicted board and the insider members. This Court should not validate the bank's interest over the relevant statutory obligations because those misdeeds are linked to bank's own misconduct.

1. The Prohibited Assignment

As lender and Administrative Agent, Banco Popular breached the Credit Agreement by assigning the loan to an ineligible affiliate VRM-Penzini, a minority owner of the Companies. The assignment violated the restrictions on assignments and good faith duties. The Credit Agreement governs the loan with strict assignment limitations to prevent insider self-dealing and its sale to an unqualified third party.

**Definition of "Eligible Assignee"** (i) Any Lender (Banco Popular).

- o (ii) A Lender's Affiliate (financial institution, majority-owned, with >$100M Tier 1 capital per federal guidelines).
- o (iii) U.S./Puerto Rico banks or savings institutions with >$100M Tier 1 capital.
- o (iv) A "Fund" (investment vehicle for institutional investors).
- o (v) Any other Person approved by the Administrative Agent.
- o **Exclusion**: Borrower (BGF) or its Affiliates cannot be Eligible Assignees.
- o **Portfolio Exception**: For portfolio sales including this loan, "Eligible Assignee" includes "any Person," but *ejusdem generis* limits this to entities similar to enumerated types (e.g., regulated financial institutions).

Exhibit 3, at Section 1.1, Page 10 of the Credit Agreement:

Banco Popular purports to have assigned the loan to Humacao RNG LLC, a subsidiary of VRM Penzini, a minority owner of GFC Holdings (BGF's parent, which is disqualified as an Eligible Assignee. VRM Penzini lacks $100M Tier 1 capital, bank/savings institution status, or

Fund designation. VRM is a private renewable investment vehicle focused on media, beverages, construction, and renewables.

There is an insurmountable textual obstacle to reading the Credit Agreement as drafted. Construing the residual phrase to permit any transfer whatsoever undermines the very purpose of the assignment clause: placing limits on what entity can receive an assignment of the loan. This circumstance calls for the application of the maxim *ejusdem generis,* the canon that "[w]here general words follow specific words in an enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. *Epic Sys. Corp. v. Lewis,* 584 U.S. --, 138 S.Ct. 1612, 1625 (2018), *cited in Maine Forest Products Council v. Cormier,* 15 F.4th 1, 10 (1st Cir. 2022).

Moreover, VRM Penzini acted in concert with other minority affiliate insiders - members of the board – to execute the disputed Asset Acquisition Agreement. That agreement required the unanimous vote of all owners. The transfer of BPPR's loan to VRM  depended on the Asset Acquisition Agreement, which itself was null ab inicio. [Via the Asset Acquisition Agreement, Humacao RNG acquired all of the Companies' assets, thereby liquidating the Companies. That transaction required a unanimous vote as a "Deemed Liquidation Event" *see* Exhibit 2, S.9.1 of GFC's Operating Agreement.]

Banco Popular's assignment to an ineligible insider entity acting in concert as a group of affiliates breached its implied duties of good faith (31 L.P.R.A. § 3375) and prioritized its interests over the borrower protections under the loan agreement, pretending to enable insider control of remedies. As lender and Administrative Agent for the loan, this violates Puerto Rico banking regulations (7 L.P.R.A. §§ 1 et seq.) requiring prudent loan management and arm's-length dealings

and should expose Banco Popular to both regulatory scrutiny as well as further civil liability. The bank's decision to wade into the controversy between the majority and minority groups of investors underscores the bank's disdain for the rule of law. Banco Popular wants the minority investors to prevail because those investors do not want Banco Popular to be held accountable because holding Banco Popular accountable will unwind the Asset Acquisition Agreement with its inappropriate compensation of only the minority members.

2. The Performance Bond Breach

BPPR violated its obligations under the Credit Agreement by failing to enforce the requirement for a performance and payment bond covering 100% of direct costs ($18,679,651). *See* Exhibit 3 Section 3.1(h) BPPR permitted an inadequate $5 million bond, which it failed to perfect, and disbursed a fraudulent payment for it to a third-party RICO coconspirator. *See* Second Amended Complaint paragraphs 80-113. The appearance of adequate bonding enabled BPPR's unlawful tying of credit extensions to the offtake agreement, contravening 12 U.S.C. § 1972(1)(C) and resulting in substantial losses for BGF, GFC, and their investors. If adequate bonding had existed, the Companies could have invoked the performance bond when the construction and design proved deficient, instead of placing itself at the mercy of the bank's onerous demands for the lopsided offtake agreement. The bank sought to seize the assets, but the Court has not granted that order. The bank instead purported to transfer the Credit Agreement to VRM, which the Credit Agreement prohibits.

C. Disqualification of Counsel Is Unwarranted (Joinder ¶¶ 7-9)

Although not explicitly re-argued, BPPR's joinder suggests support for disqualification. Undersigned counsel's representation is consistent with the Majority Members' Consent and the Companies' interests—pursuing BHCA claims against BPPR. *See* Opposition at 10-11, *citing* Model Rules of Prof'l Conduct r. 1.13 (Am. Bar Ass'n 2020). The "adversity" claimed by BPPR stems from Board's self-dealing, not counsel's conduct. As in *Gatz*, where bad faith conduct (e.g., misleading minorities, sham processes) justified denying exculpation and awarding fees, the Board's conflicts here do not create a basis for disqualification. *Auriga Capital*, 40 A.3d at 874-75, 881; *Gatz Properties*, 59 A.3d at 1218 (affirming bad faith findings). BPPR's criticisms of settlements with "bad people" ring hollow – those are the very people with whom the bank chose to do business and whom the bank never called to task for their fraud. The majority member's counsel is defending the Companies best interests. The minority members' counsel seek to surrender the Company's best interests. Disqualification is unwarranted.

## III. CONCLUSION

Plaintiffs ask the Court to remain focused on the substantive claims: BPPR's violation of federal banking law through improper tying arrangements; its unauthorized loan assignments; and breach of fiduciary duties as lender and Administrative Agent. These are serious allegations that merit adjudication on their merits, not dismissal through procedural gamesmanship. BPPR's Joinder lacks merit. It echoes a conflicted motion while underscoring its prior collaboration with the Abesada faction through cooperators. The SAC is properly filed, the exhibits are relevant and nonprivileged, and both the disqualification and continued stay are unwarranted.

**WHEREFORE**, Plaintiffs respectfully request the Court to deny the Motion to Strike and lift the

stay on the case and grant such other relief as appropriate.


Respectfully submitted,


In San Juan, Puerto Rico, on the 1st day of August 2025.

/s/ Jane Becker Whitaker
Jane Becker Whitaker, Esq.
USDC No. 205110
PO Box 9023914
San Juan, PR 00902-3914
Tel.: (787) 585-3824
Email: janebeckerwhitaker@gmail.com

/s/ Jean Paul Vissepó Garriga
Jean Paul Vissepó Garriga, Esq.
USDC No. 221504
PO Box 367116
San Juan, PR 00936-7116
Tel.: (787) 633-9601
Email: jp@vissepolaw.com

/s/ Luis E. Miñana, Esq.

CERTIFICATE OF SERVICE

We hereby certify that on this date, we have presented the foregoing to the Clerk of the Court for

filing and uploading to the CM/ECF system, thereby providing notice to all parties.


# FOOTNOTES

[1] *See* Deferred Prosecution Agreement, *United States v. Banco Popular de Puerto Rico*, No. 3:05-cr-00074 (D.P.R. Jan. 16, 2003). This agreement detailed BPPR's violations of the Bank Secrecy Act and its role in facilitating money laundering operations for Dominican drug trafficking organizations.

[2] Del. H.B. 126, 147th Gen. Assembly, § 8 (2013) (effective Aug. 1, 2013). This amendment resolved ambiguity by incorporating default fiduciary duties of loyalty and care via equity principles, unless contractually modified, thereby reinforcing contractual freedom while providing legal clarity regarding manager obligations.