**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

Gregory Boyd, et al.,

         Plaintiffs,

           v.

Olmar López-Vidal, et al.,

         Defendants.

**Civil No. 22-1190 (GMM)**

**MEMORANDUM AND ORDER**

This case arises from a dispute over the alleged misconduct of officers to GFC Holdings, LLC ("GFC") and Biomass Green Fuels, LLC ("BGF"). The issue to be resolved is whether Counsel for Plaintiffs may appear on behalf of nominal defendants GFC Holdings, LLC and Biomass Green Fuels, LLC over the objections of counsel for nominal defendants.

Before the Court is Plaintiff's Counsel's *Motion to Appear on Behalf of GFC Holdings, LLC and Biomass Green Fuels, LLC; For this Court to Eliminate Roberto Abesada, ESQ. as their Counsel; and to Withdraw Motions to Dismiss Files by Codefendants GFC and BGF* ("Motion to Appear"). (Docket No. 750). For the following reasons, the Court DENIES Plaintiff's Counsel's request and maintains Counsel Abesada as counsel of record for GFC Holdings, LLC and Biomass Green Fuels, LLC.

Civil No. 22-1190
Page -2-

## I.    RELEVANT PROCEDURAL HISTORY

On January 31, 2023, plaintiffs Gregory Boyd and Jonathan Lassers, individually and on behalf of BGF and GFC for their derivative claims (collectively, "Plaintiffs") filed a *Second Amended Complaint*. (Docket No. 147). Plaintiffs alleged multiple causes of action against Olmar López-Gómez, Vivian Vidal de López, the Conjugal Partnership López-Vidal, Olmar López-Vidal, Cristina Ríos Mena, the Conjugal Partnership López-Mena, Green CO2 Dominica S.R.L., Carlos López-Vidal, Claudia Ferrer Tañón, the Conjugal Partnership López-Ferrer, World Spirits, LLC, Alexander Borschow, Mariella Danspeckgruber, the Conjugal Partnership Borschow Danspeckgruber, George Economou, Lidiana Rodríguez, the Conjugal Partnership Economou-Rodríguez, Joval Rodríguez Barnes, Stephanie Cummings, the Conjugal Partnership Rodríguez-Cummings, International Technical Services, Inc., Accurate Solutions, Corp., Distributed Power Innovators JV, Banco Popular, Semillero Partners, and The Puerto Rico Fund for Growth and Community Development Venture Capital Alliance (collectively, "Defendants"). (Docket No. 147).

The *Second Amended Complaint* seeks: (1) a declaratory judgment that Gregory Boyd has not misappropriated BGF's trade secrets by negotiating discounts with suppliers for a biorefinery; (2) a declaratory judgment that Gregory Boyd has not violated the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq.; (3)

Civil No. 22-1190
Page -3-

a declaratory judgment that Gregory Boyd's personal guaranties are unenforceable; (4) a declaratory judgment that Banco Popular's "Bank Credit Agreement 7.1(e) " be deemed null and void; (5) damages for breach of contract; (6) damages for fraudulent inducement and concealment ("dolo"); (7) damages for violations to the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(a); (8) damages for violations to Rule 10b-5 issued by the Securities and Exchange Commission; (9) compensation for breach of fiduciary duty; (10) damages for defamation; and (11) to present derivative claims on behalf of BGF and GFC for "misconduct" of the defendants. *See* (id.).

Motions to dismiss have been filed by Community Development Venture Capital Alliance and Puerto Rico Fund for Growth (Docket No. 651); Banco Popular de Puerto Rico, Stephanie Cummings, Joval Rodriguez and Conjugal Partnership Rodriguez-Cummings (Docket No. 652); Banco Popular de Puerto Rico (Docket No. 653); CB Solutions PR, Corp., Conjugal Partnership Economou-Rodriguez, George Economou, and Lidiana Rodriguez-Economou (Docket No. 654); Accurate Solutions, Corp., Roberto A. Acosta, Distributed Power Innovators, JV (Docket No. 655); Alexander Borschow, Semillero Partners, LLC, and Semillero Ventures, LLC (Docket No. 657); Alexander Borschow, Conjugal Partnership Borschow-Danspeckgruber, and Mariella Danspeckgruber (Docket No. 658); Biomass Green Fuels, LLC, and GFC Holdings, LLC (Docket No. 659); Conjugal Partnership

Civil No. 22-1190
Page -4-

Lopez-Ferrer, Claudia Ferrer-Tanon, Carlos Lopez-Vidal, World Spirits, LLC (Docket No. 660); and Conjugal Partnership Lopez-Rios, Green CO2 Dominicana LLC of Puerto Rico, Green CO2 Dominicana S.R.L., Green CO2, LLC, Green Hydrogen, LLC, Olmar Lopez-Vidal, Cristina Rios-Mena (Docket No. 691) (collectively, "Motions to Dismiss").

As the Parties were in the midst of briefing the Motions to Dismiss, Plaintiffs entered into confidential settlement agreements with defendants Olmar Lopez-Vidal, Cristina Rios-Mena, Conjugal Partnership Lopez-Rios, Green Hydrogen, LLC, Green CO2 Dominicana LLC of Puerto Rico, Green CO2 Dominicana S.R.L., and Green CO2, LLC, Conjugal Partnership Lopez-Ferrer, Claudia Ferrer-Tanon, Carlos Lopez-Vidal, World Spirits, LLC, Conjugal Partnership Lopez-Vidal, International Technical Services, Corp., International Technical Services, Inc., Olmar Lopez-Gomez, Vivian Vidal-de Lopez ("Settling Defendants") and requested to voluntarily dismiss all claims against them. *See* (Docket Nos. 698; 701; 712; 720). Partial Judgments were issued and the Settling Defendants' respective motions to dismiss were dismissed by the Court as moot. *See* (Docket Nos. 706; 727; 730; 731).

Biomass Green Fuels, LLC, and GFC Holdings, LLC ("the Companies") were initially represented by independent counsel Guillermo Ramos-Luina who, upon appearing, requested the Court realign the Companies as nominal defendants in the case because of

Civil No. 22-1190
Page -5-

their intention to challenge Plaintiffs' standing to bring a derivative suit on behalf of the Companies. *See* (Docket Nos. 106; 107). The Court granted the request at Docket No. 123. Counsel Ramos subsequently moved to be withdrawn as counsel of record for the Companies due to apparent conflicts with certain members of GFC's Board of Managers concerning his litigation strategies. *See* (Docket No. 541). Eventually, Counsel Abesada appeared on behalf of the companies on the authorization of the Board of Managers. *See* (Docket No. 644). Plaintiffs have been represented by the Becker-Vissepó Law Firm for the entirety of this litigation. *See* (Docket No. 1).

After Plaintiffs' Counsel challenged whether Counsel Abesada was truly authorized to appear on behalf of the Companies, Counsel Abesada submitted a *Written Consent of the Board of Managers* specifically appointing Counsel Abesada as legal representative for the Companies "in all pending litigations, and authoriz[ed] [Counsel Abesada] to negotiate, execute and deliver any agreement, letter of engagement or related documents necessary to formalize such representation, with such terms as [Counsel Abesada] may determine to be in the best interest of the Companies." (Docket No. 672-1).

Counsel for Plaintiffs then filed an *Informative Motion* at Docket No. 719 notifying the Court that "a majority of the members of Biomass Green Fuels, LLC and GFC Holdings, LLC have voted to

withdraw their motion to dismiss this case." After the Court ordered Counsel Abesada to inform whether the Companies intend to withdraw their *Motion to Dismiss Plaintiffs' Derivative Claim (Count Six of Second Amended Complaint) and Incorporated Memorandum of Law* filed at Docket No. 659, Counsel Abesada informed that he had "not received a written company resolution from the Board of Managers of GFC Limited Liability Company overturning the March 21, 2025, written consent at ECF No. 672 or a request that the Companies withdraw their motion to dismiss at ECF No. 659." (Docket No. 740).

Thereafter, Plaintiffs' Counsel filed its *Motion to Appear* at Docket No. 750. Counsel Abesada vehemently challenges Plaintiffs' Counsel's request to appear on behalf of his clients as stated in his filing, *GFC Holdings Limited Liability Company's and Biomass Green Fuels LLC's Response in Opposition to Plaintiffs' Motion at ECF No. 750* ("Opposition"). (Docket No. 753). Counsel Abesada also provided the Court with a letter from the Companies' corporate counsel, Picó Advisors LLC, in which Plaintiffs were "explicitly forewarned the Plaintiffs and their counsel that the specific actions described in the motion filed at ECF No. 750 were unlawful and, thus, null and void." (Docket No. 751); *see also* (Docket No. 751-1).

Subsequently, Plaintiffs' Counsel filed *Plaintiffs' Reply to Unauthorized Opposition Supposedly Filed in Representation of the*

Civil No. 22-1190
Page -7-

*Board of Managers of Nominal Defendants GFC Holdings Limited Liability Company and Biomass Green Fuels LLC* ("Reply"). (Docket No. 766). Counsel for the Companies then filed *Surreply to ECF No. 766* ("Surreply). (Docket No. 769).

Plaintiffs Gregory Boyd and Jonathan Lassers have also initiated a separate case in this district solely against Banco Popular de Puerto Rico ("Banco Popular"), who is also a defendant in this case, on different claims than those presented here. *See* Civil Case No. 24-1569 (PAD). The Plaintiffs informed this Court that in the other case, Plaintiffs have amended their original Complaint to add the Companies as Plaintiffs and have asserted that the Becker-Vissepó Law Firm was hired by the Companies to represent them in that action. *See* (Docket No. 754). Counsel Abesada appeared to oppose this action and Banco Popular joined the challenge on the same grounds as they have been challenged here. *See* (Docket Nos. 757; 776). A resolution is yet to be reached in case no. 24-1569 (PAD), but a motion hearing has been set for August 14, 2025, to determine whether the Companies have standing in that case.

## II.  DISCUSSION

In their *Motion to Appear*, Plaintiffs' Counsel, Becker-Vissepó Law Firm, reported that "Olmar Lopez Gomez has transferred his ownership interests in GFC and BGF to his son Olmar Lopez Vidal, via a family transfer, which was exempt from any obligation

Civil No. 22-1190
Page -8-

to offer that interest to other owners of the LLCs." (Docket No. 750 at 1). Thereafter, the Majority of Members, meaning those possessing a majority of membership interests in GFC Holdings, LLC which is the sole owner of Biomass Green Fuels, LLC, issued a *Written Consent by the Majority of the Members, Member Resolution* ("Written Consent") which purported to authorize: 1) "The Company to withdraw its Motion to Dismiss in Case No. 3:22-cv-01190 (GMM)"; 2) "Require Attorney Roberto Abesada to withdraw forthwith from his representation of the Company in the litigation Case No. 3:22-cv-01190 (GMM)"; and 3) "Engage Becker Vissepó to represent the Company in Case No. 3:22-1190 (GMM)". (Id. at 2; Docket No. 750-1). Plaintiffs' Counsel explains that authorization to take the actions presented in the Written Consent stem from the GFC Holdings' governing document, the Second Amended and Restated Operating Agreement, Dated May 22, 2023, and its subsequent amendments (collectively, "Operating Agreement"). *See* (Docket Nos. 750 at 2-6; 750-2 at 9-61).

In his *Opposition*, Counsel Abesada challenged Plaintiffs' Counsel's request on multiple fronts. The *Opposition* alleges the Motion to Appear is "meritless for the following reasons: (i) the Court lacks jurisdiction to resolve new post-litigation internal corporate disputes that are irrelevant to the second amended complaint, and which are exclusively within the purview of GFC's Board of Managers; (ii) the purported "Written Consent of Members"

(ECF No. 750-1) enclosed to plaintiffs' Motion is null and void because is in direct conflict with GFC's Operating Agreement, as amended (ECF No. 751-1 and 751-2); (iii) plaintiffs' proposed actions are inconsistent with the business judgment rule, and their procedural approach undermines established corporate governance norms; and (iv) the Becker-Vissepó Law Firm faces an inherent conflict of interest in simultaneously representing both the Companies and the individual plaintiffs to the detriment of the Companies and its members, other than plaintiffs." (Docket No. 753 at 2-3).

In their *Reply*, Plaintiffs' Counsel denies each of Counsel Abesada's contentions, *see* (Docket No. 766), and presents new interpretations of the Operating Agreement which were then directly challenged by a Counsel Abesada's conflicting interpretation presented in his *Surreply*. *See* (Docket No. 769).

In lodging his opposition to Plaintiffs' Counsel's request to appear on behalf of the Companies, Counsel Abesada is essentially seeking to disqualify Becker-Vissepó Law Firm from representing the companies. Motions to disqualify are generally disfavored by the courts. *See* Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc., 903 F.Supp. 253, 256 (D.P.R. 1995) (citing Estrada v, Cabrera, 632 F.Supp. 1174, 1175 (D.P.R. 1986)). Disqualifying a party's chosen counsel is "a serious matter which could not be supported by the mere possibility of a conflict." Rivera Molina v.

Civil No. 22-1190
Page -10-

Casa La Roca, LLC, 546 F.Supp.3d 108, 110 (D.P.R. 2021) (citation and internal quotation marks omitted). Courts should be particularly cautious in deciding motions to disqualify "because they are often used for strategic purposes." Id. (citation omitted).

Attorneys admitted or permitted to practice before the United States District Court for the District of Puerto Rico must comply with the Model Rules of Professional Conduct adopted by the American Bar Association. See Local Civil Rule 83E(a). Model Rule 1.13(g) states that "[a] lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents." This rule is subject to Model Rule 1.7, which bars lawyers from representing a client when a concurrent conflict of interest would result, including situations where: (i) the representation of one client would be "directly adverse" to another client, or (ii) there is a "significant risk" that a lawyer's responsibilities to a client, former client, third party, or personal interest would materially limit that lawyer's representation of another client. Even if a concurrent conflict of interest exists, Model Rule 1.7(b) allows a lawyer to continue representing the client if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against

**Civil No. 22-1190**
**Page -11-**

> another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing.

Counsel Abesada claims the Becker-Vissepó Law Firm's attempt to simultaneously represent Plaintiffs and the Companies presents "a multifaceted conflict of interest in violation of Model Rules 1.13 and 1.7." First, Counsel Abesada points out that after the Companies were realigned as nominal defendants in this case (*see* Docket No. 107), representation of adverse parties by the same attorneys would present a conflict of interest. (Docket No 753 at 9-10). Second, Counsel Abesada states, "plaintiffs' attorneys demonstrated an adversarial stance toward GFC and BGF in the litigation by moving for entry of default against them (ECF No. 631 and 667), an action that is inherently antagonistic." (<u>Id.</u> at 10). Thus, the Becker-Vissepó Law Firm lacks the ability to advocate for the best interests of the Companies. Third, Counsel Abesada questions Plaintiffs' willingness to enter into a confidential settlement agreement with the "principal alleged perpetrator of the fraudulent activity that instigated the federal and derivative actions," Olmar Lopez-Vidal, and "and allowing him to become the largest stakeholder of the Companies, the plaintiffs have effectively diminished the potential for any substantial recovery or benefit for the Companies." (<u>Id.</u> at 10). On this basis, Counsel Abesada argues that Becker-Vissepó Law Firm's simultaneous attempt to represent both the plaintiffs, who strategically

Civil No. 22-1190
Page -12-

dismissed the key defendant, and the Companies, who are now deprived of potential recovery, highlights an irreconcilable conflict." (Id.). And finally, because "the Becker-Vissepó Law Firm has a significant risk of breaching attorney-client privilege." (Docket No 753 at 10). The risk being that "[i]nformation shared by GFC and BGF under the assumption of confidentiality could be used to advance the plaintiff members' individual and derivative conflicting claims, and vice versa." (Id.).

The Becker-Vissepó Law Firm states that even if a conflict of interest exists, "dual representation in derivative suits is allowable absent direct adversity, with informed consent." (Docket No. 799 at 9) (citing Model Rule 1.7(b)). The Court agrees that throughout the litigation these parties have consistently maintained adverse interests, documented on multiple occasions. See (Docket No. 107) (requesting a realignment of the Companies as nominal defendants so they could challenge Plaintiffs' standing in the derivative action); (Docket No. 178) ("The Nominal Defendants, who would be the beneficiaries of the derivative action that Plaintiffs pretend to assert in this case, take no position on the legal issues that are the subject of this action other than to state, first, that Plaintiffs lack standing to assert a derivative action on behalf of BGF since, on their own admission, they are not members of that corporate entity, and second, that Plaintiffs

Civil No. 22-1190
Page -13-

failed to comply with the demand requirement prior to filing this action."); (Docket No. 659) ("Nominal defendants, GFC Holdings, LLC ("GFC Holdings") and Biomass Green Fuels, LLC ("Biomass Green") (collectively, the "Companies") respectfully move for an order to dismiss count six of the second amended complaint for plaintiffs' failure to strictly comply with Federal Rule of Civil Procedure 23.12 and Article 19.55 of the General Corporation Act, Act No. 164-2009, P.R. Laws Annot. Tit. 14 §4005.").

Further, the Court acknowledges that representation for the Companies has been controlled throughout the litigation by the GFC Board of Managers. *See* (Docket No. 255) (stating that a Settlement Agreement had been approved by the Board of Managers for the Companies); (Docket No. 541) ("Over time, the Board of Managers of the Companies requested the undersigned to represent the Companies in a myriad of cases that arose subsequently and included collection actions and disputes among various members of GFC."); (Docket No. 541) ("The undersigned immediately notified the Order to the members of the Companies' Board of Managers and subsequently followed up with them, both before and after the deadline set by the Court elapsed."); (Docket No. 672) (submitting *GFC Holdings Limited Liability Company Written Consent of the Board of Managers* engaging Counsel Abesada as legal representation in all pending litigation involving the Companies).

**Civil No. 22-1190**
**Page -14-**

For the foregoing reasons, the Court finds that, at the very least, there exists a "significant risk" that the Becker-Vissepó Law Firm's responsibilities to the Plaintiffs may materially limit its representation of the Companies.

As Plaintiffs' counsel has implied, the Court must examine whether proper informed consent for the "dual representation" of plaintiffs and the Companies was properly given under Model Rule 1.7(b). Plaintiffs' Counsel asserts that "the majority now consents, aligning interests with no privilege breach." (Docket. No 766 at 9). Counsel Abesada specifically challenges the authority under the Operating Agreement for the Majority Members to make decisions regarding the Companies' legal representation. *See* (Docket No. 766). Thus, the situation calls into question whether informed consent was properly acquired from the Companies to allow for the concurrent representation by Plaintiff's counsel which presents an actual or "significant risk" of conflict of interest.

The Court first looks to the language of the Operating Agreement. Under Puerto Rico Law, the "limited liability company agreement" established the rights and powers of members and managers of the company. *See* Articles 19.17 and 19.23 of Puerto Rico's Corporation Act, P.R. Laws Annot. Tit. 14 §§ 3967, 3973.[1]

---

[1] "**Unless otherwise provided** in an [Limited Liability Company Agreement], the management of an LLC shall be vested in its members in proportion to their percentages or other interest of members in the profits of the LLC owned by all of the members. . . Provided, however, That **if a limited liability company agreement provides for the management, in whole or in part, of an LLC by a**

**Civil No. 22-1190**
**Page -15-**

The authority to manage the Companies is expressly and exclusively vested in GFC's Board of Managers, as stated in the Operating Agreement:

> **Section 6.1(a)** Except as otherwise expressly required under this Agreement (including, without limitation, section 4.2(j)) or the Act, the full, absolute and exclusive right, power and authority to manage the Company is vested in, and reserved to, the Board of one or more Managers designated by the Members (the **"Board of Managers"**).
>
> **6.1(b)** Only Members holding Class A Common Units shall be entitled to vote on the election of Managers, *provided notwithstanding*, that each Founding Member which is not a Disqualified Person shall have the right to occupy one board seat or appoint a member to the Board of Managers of the Company. Each Manager elected, designated or appointed by the Members shall not be a Disqualified Person and shall hold office until a successor is elected and qualified or until such Manager's earlier death, resignation, expulsion or removal. The initial Managers designated by the Members holding Class A Common Units are listed in Exhibit I Section 11.3.
>
> **6.1 (c)** Notwithstanding as provided in Section 6.1(b) above, as of the Effective Date and while the Series A Preferred Units are held by either Semillero or PRFG (or their transferees pursuant to a Permitted Transfer or as otherwise allowed under this Agreement), the Board of Managers shall consist of at least five (5) managers of which: (i) two (2) representatives shall be designated by the Founding Members which shall not be a Disqualified Person (the "Founding Members' Managers"), (ii) one (1) representative designated by Semillero which shall not be a Disqualified Person (for so long as it, or a transferee pursuant to a Permitted Transfer or as

---

**manager, the management of the LLC, to the extent so provided, shall be vested in the manager who shall be chosen in the manner provided in the LLCA."** P.R. Laws Annot. Tit. 14 § 3973 (emphasis added).

**Civil No. 22-1190**
**Page -16-**

otherwise allowed under this Agreement, holds Series A Preferred Units), (iii) one (1) representative designated by PRFG which shall not be a Disqualified Person (for so long as it, or a transferee pursuant to a Permitted Transfer or as otherwise allowed under this Agreement, holds Series A Preferred Units), and (iv) one manager designated by the Founding Members Managers, the representative designated by Semillero (or a transferee pursuant to a Permitted Transfer or as otherwise allowed under this Agreement) and the representative designated by the PRFG (or a transferee pursuant to a Permitted Transfer or as otherwise allowed under this Agreement), which manager shall be an Independent Manager of the Board of Managers and shall not be a Disqualified Person.

**6.1(e)** Without limiting, and in furtherance of, the foregoing, the business and affairs of the Company shall be managed and conducted, and its capital, assets, funds and liabilities shall be managed, dealt with and disposed of, exclusively by and under the direction of the Board of Managers and, except as otherwise expressly required under this Agreement or the Act, all decisions to be made by or on behalf of the Company or in respect of the Company's business, capital, assets, funds and liabilities of the Company shall be made solely and exclusively by the Board of Managers; provided that the Board of Managers agree to act in good faith in taking such actions or making such decisions.

**Section 6.2 Management by the Board of Managers**. Except as otherwise expressly required under this Agreement (including, without limitation, section 4.2(j)) the Board of Managers shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes herein, including exercising all powers, statutory or otherwise.

(Docket No. 750-2 at 31-34). Additionally, the Court notes that the language of the Operating Agreement requires any amendment by the Members to the duties and powers of the Board of Managers

Civil No. 22-1190
Page -17-

as described in the Operating Agreement must adhere to the Section 11.3 of the Operating Agreement, which states, "[t]his Agreement may only be amended, supplemented, or restated by the written consent of both (a) the Members holding a majority of the Common Units and (b) the Series A Holders holding a majority of the issued and outstanding Series A Units." (Docket No. 751-2 at 53). This provision has not been amended by any subsequent amendment to the Second Amended and Restated Operating Agreement. *See* (Docket No. 751-2).[2]

Counsel Abesada argues that "plaintiffs' assertion that a member majority can authorize the relief requested in their Motion (ECF No. 750) is directly contradicted by two inescapable facts: (i) the Series A members of GFC have not consented to the proposed actions (which would require an amendment to the Operating Agreement to allow the members to override decisions by the Board of Managers); and (ii) the engagement of company counsel remains the exclusive prerogative of GFC's Board of Managers, as it is by nature a managerial decision. Accordingly, Counsel Abesada contends that the putative "Written Consent of Members" at ECF No. 750-1 is null and void, as explained above and by the Companies'

---

[2] Each amendment subsequent to the Second Amended and Restated Operating Agreement reiterates that each amendment complies approval procedures established in Section 11.3 requiring both the Members holding a majority of the Common Units and the Series A Holders holding a majority of the issued and outstanding Series A Units. No amendments to the Operating Agreement directly or impliedly amended this Section.

Civil No. 22-1190
Page -18-

independent corporate counsel Picó Advisors LLC (ECF No. 751-1)."
(Docket No. 753 at 7).

In their reply, Plaintiffs' Counsel argues that Section 3.2 of the Operating Agreement sanctions the *Written Consent*: "Subject to any protective provisions in favor of the holders of the Series A preferred Units, the Members may, subject to Section 4.2(j)[3], act by written consent by the Majority Approval of the Members (a "**Member Resolution**")." (Docket No. 751-2 at 28) (emphasis in original).

The Court agrees with Counsel Abesada that "Plaintiffs' entire defense of the Written Consent hinges on an incorrect reading of Section 3.2," which does not authorize the members to take actions explicitly reserved for the Board of Managers but instead, outlines particular circumstances in which the majority members may act by Member Resolution. Namely when "any protective provisions [is] in favor of the holders of the Series A preferred

---

[3] Section 4.2(j): Protective Provisions. So long as ten percent (10%) of the Series A Preferred Units are outstanding, in addition to any other vote or approval required under this Agreement, the Company will not, without the written consent of the Series A Holders holding at least a majority of the Series A Preferred Units then outstanding, either directly or by amendment, merger, consolidation, or otherwise: (i) effect any waiver or amendment of any covenant, term or condition of the Agreement and the Certificate of Formation of the Company (ii) create or authorize the creation of or issue any other security convertible into or exercisable for any equity security, having rights, preferences or privileges senior to or on parity with the Series A Preferred Units, or increase the authorized number of units of Series A Preferred Units; (iii) effect any Deemed Liquidation Event or other conveyance, sale, lease, transfer or other disposition of all or substantially all of the Company's business or assets, or the merger, consolidation or similar transaction of the Company with another entity; or (iv) effect the liquidation, recapitalization, reorganization or dissolution of the Company or the filing of a voluntary bankruptcy petition by the Company.

Civil No. 22-1190
Page -19-

Units[.]" (Docket No. 751-2 at 28). Such a situation is not present here.

Further, Plaintiffs also mischaracterize the exception language in Section 6.1. The provision they cite merely states that the Board of Managers shall manage the company "except as otherwise expressly required under this Agreement or the Act." The Court agrees that this clause does not carve out the broad managerial authority for the members, but rather, it "recognizes that certain limited rights may be specifically reserved to the members elsewhere in the Operating Agreement (such as in section 4.2(j) regarding consent rights over particular transactions, amendments, or actions) and only to the extent those rights are clearly stated." (Docket No. 769 at 4).

Because Plaintiffs' Counsel has not presented a proper Written Consent from the GFC Board of Managers, as required by the Operating Agreement, nor do majority of Members in GFC have the authority to amend the Operating Agreement without the majority approval of the Series A Preferred interest holders, the *Written Consent* presented with the *Motion to Appear* cannot be considered proper informed consent for Plaintiffs' Counsel to simultaneously represent the Companies in this litigation.

## ORDER

Thus, the *Motion to Appear on Behalf of GFC Holdings, LLC and Biomass Green Fuels, LLC; For this Court to Eliminate Roberto*

Civil No. 22-1190
Page -20-

*Abesada, ESQ. as their Counsel; and to Withdraw Motions to Dismiss Files by Codefendants GFC and BGF* filed at Docket No. 750 is **DENIED**. Counsel Abesada shall remain as the counsel of record for the Companies at this time. The Court will allow Plaintiffs to file an opposition to the Companies' *Motion to Dismiss Plaintiffs' Derivative Claim (Count Six of Second Amended Complaint) and Incorporated Memorandum of Law* filed at Docket No. 659, if they so choose, on or before August 26, 2025. No extension of time will be allowed.

IT IS SO ORDERED.

In San Juan, Puerto Rico, August 12, 2025.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE