# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GREGORY BOYD, JONATHAN LASSERS, | |
| Plaintiffs, | Civil Action No.: 3:24-cv-01569-PAD |
| v. | |
| BANCO POPULAR DE PUERTO RICO, | |
| Defendant. | |

## REPLY TO PLAINTIFFS' OPPOSITION TO BANCO POPULAR'S MOTION FOR JOINDER (DOCKET NO. 69) AT DOCKET NO. 82

**TO THE HONORABLE COURT:**

**COMES NOW** Defendant Banco Popular de Puerto Rico ("BPPR"), through the undersigned counsel, and respectfully states and prays as follows:

## I.       INTRODUCTION

Plaintiffs[1] opposed BPPR's *Motion for Joinder* of the motions filed by Biomass Green Fuels, LLC ("BGF") and GFC Holdings, LLC ("GFC," and together with BGF, the "Companies") at Docket Nos. 62-64. See Docket Nos. 82, 69. The arguments set forth in the *Opposition* at Docket No. 82 should be disregarded as moot, improper, and ultimately meritless.

The *Opposition* is moot because the *Motion for Joinder* (Docket No. 69) has already been granted. See Docket No. 70. It is also improper because Plaintiffs seek to use the *Opposition* to surreptitiously expand on briefs previously filed in response to the Companies' motions and, at the same time, to sow confusion through the addition of disjointed allegations that are wholly impertinent to either (a) the issues raised by the Companies' motions at Docket Nos. 62-64, *i.e.*,

---

[1] Boyd and Lassers, represented by their counsel, purported to file on behalf of the Companies as well. Boyd and Lassers, however, are not the Companies, nor can they speak on their behalf. Moreover, Plaintiffs' attorneys do not represent the Companies, nor can they. See Docket Nos. 62-64. Accordingly, the references to Plaintiffs in this motion are to Messrs. Boyd and Lassers.

whether Plaintiffs can act for the Companies and require them to join in litigation represented by Plaintiffs' counsel when the Companies' Board of Managers has not authorized the Companies to do so, or (b) the merits of Plaintiffs' claim that BPPR allegedly ran afoul of the Bank Holding Company Act ("BHCA") when it supposedly conditioned the granting of an $11.9 million credit facility on BGF's agreement to sell renewable liquefied natural gas ("RLNG") to BPPR on allegedly unfair terms. As such, the *Opposition* should be disregarded.

Even if it is not, the arguments in the *Opposition* lack merit, as further explained below.

## II.    DISCUSSION

A.    The *Opposition* should be disregarded.

The Companies filed a *Motion to Strike Unauthorized Claims and Exhibits in the Second Amended Complaint and to Disqualify Plaintiffs' Counsel* (Docket No. 62), a *Notice of Filing of Exhibits in Support of ECF No. 62* (Docket No. 64), and a *Notice of Voluntary Dismissal with Prejudice* (Docket No. 64). The Companies concluded with a request that the Court strike the allegations, claims, and exhibits unlawfully presented by Plaintiffs (supposedly on behalf of the Companies) in the Second Amended Complaint ("SAC"). Along with the *Motion to Strike*, the Companies filed a *Notice of Exhibits* and a *Notice of Voluntary Dismissal.* Docket Nos. 63 and 64. Plaintiffs opposed these motions at Docket Nos. 76-77. The Companies replied. Docket No. 85.

Meanwhile, BPPR filed the *Motion for Joinder*. Docket No. 69. BPPR joined the Companies' motions and requested that the Court hold BPPR's obligation to answer or otherwise plead in response to the SAC in abeyance pending resolution of Docket Nos. 62-64. See id. at 4 ¶11. The Court granted BPPR's request and held the deadline for response to the SAC in abeyance. Docket No. 70. Afterwards, Plaintiffs filed the *Opposition* at Docket No. 82. Hence, by the time of its filing, the *Opposition* was already moot.

Notwithstanding that BPPR's motion already had been granted, Plaintiffs used the *Opposition* to take the proverbial second bite at the apple and file essentially a second opposition to the Companies' motions at Docket Nos. 62-64. Plaintiffs do not have a right to file two oppositions to the same request for relief. Nor is it proper for them to repeatedly include the same disjointed and misleading allegations across multiple cases before different Judges, regardless of the relevance of such allegations to the claims at issue.

Accordingly, Plaintiffs' *Opposition* should be disregarded.

B.  The *Opposition* improperly includes disjointed and irrelevant allegations.

Before discussing the *Opposition's* lack of merit, we address briefly Plaintiffs' purposeful use of inaccurate, repetitive, and irrelevant allegations to sow confusion and vexatiously multiply proceedings. The *Opposition* includes multiple examples of that strategy.

Starting with its introductory paragraphs, the *Opposition* inexplicably references a settlement agreement and BPPR's supposed criticism of it. But BPPR's *Motion for Joinder* did not mention that settlement agreement. Hence, the attacks on BPPR regarding the settlement are plainly irrelevant to the avowed purpose of the *Opposition*.

Knowledge of the context crystallizes the irrelevance of Plaintiffs' arguments. Boyd and Lassers sued and accused a fellow member of GFC ("López Vidal"), among others, of fraud and other illegal activities in the parallel case before Judge Méndez Miró. See Boyd et al v. López Vidal et al, Civil No. 22-1190. They later settled with Mr. López Vidal. Pursuant to that settlement, Plaintiffs dropped their RICO (and other) claims against Mr. López Vidal. See, Civil No. 22-1190 at Docket Nos. 698, 704.[2] But while there has been some limited discussion of this settlement in

---

[2] See also Docket No. 94-1 in the captioned action at 4.

the parallel proceedings in Civil No. 22-1190, BPPR did not reference it here because it is irrelevant to this lawsuit and Mr. López Vidal is not a party to this case.

Similarly, the *Opposition's* introduction mentions some alleged proceedings involving BPPR and Suspicious Activity Reports. But those proceedings took place over twenty years ago and have no connection to either (a) the question of whether Plaintiffs can represent the Companies and require them to use Plaintiffs' counsel, which is the issue at hand in Docket Nos. 62-64 or (b) the (lack of) merits of Plaintiff's claim in the SAC that BPPR violated the BHCA by allegedly conditioning the issuance of $11.9 million in credit on BGF agreeing to sell RLNG to BPPR at purportedly unreasonable prices. The allegations about these proceedings are nothing more than inflammatory rhetoric.

Unfortunately, Plaintiffs do not stop there. The *Opposition* also attacks GFC's Board of Managers based on an alleged conflict of interest stemming from the Board's alleged handling of *other* issues and transactions, unrelated to Plaintiffs' BHCA claim. Docket No. 82 at 4-5. Adding to the fog of confusion created by Plaintiffs, they do not even properly identify or explain the transactions that they purportedly believe the Board of Managers handled in a conflicted manner.

As more fully discussed below, the Companies' transactions with which Plaintiffs take issue—and that underpin their claimed conflict of interest—are: (a) an Asset Acquisition Agreement dated January 31, 2025, by and between the Companies and non-party Humacao RNG, see, Docket No. 52-5 and (b) a non-binding letter of intent dated January 10, 2025 sent to BPPR by non-parties Greenview Energy and Cambrian Energy, see, Docket No. 49-9. Neither document (or the transactions contemplated or proposed therein) has any relation to Plaintiffs' BHCA claim against BPPR in this action or, for that matter, whether Plaintiffs could agree with other members

of GFC to ignore the Board of Managers' authority over the administration of the Companies in connection with the decision to bring litigation or choice of the Companies' attorneys.

Plaintiffs' later attack on BPPR—that BPPR assigned its rights under the September 15, 2020 Agreement to another entity or that there was an improper use of loan funds to pay for a performance bond, see Docket No. 82 at 7-9—is similarly misguided and disconnected from the issues relevant to this case. Whether BPPR assigned its creditor rights, and to whom, has no relevance whatsoever to either the issues presented by Docket Nos. 62-64 or Plaintiffs' BHCA claim against BPPR. The same is true of whether any loan funds were used to pay a performance bond.

More troubling still, Plaintiffs included these undeveloped and irrelevant arguments knowing they made similar or identical allegations in other proceedings pending before other Courts and other Judges. For example, the allegation that loan funds[3] were improperly disbursed in 2020 to pay for a performance bond were included in two prior actions in which Plaintiffs (or one of them) are parties. Over two years ago, Plaintiffs included similar allegations in Civil No. 22-1190 (GMM), claiming that the performance bond had been unlawfully paid with loan funds. See Docket No. 48-16 at p. 38-39, ¶¶ 144-149. Civil No. 22-1190 is pending in this Court, but before a different Judge. Approximately a year ago, Plaintiff Boyd made essentially the same assertion as part of his breach of contract counterclaim against BPPR in the collection of monies

---

[3] Among other things, Plaintiffs studiously avoid precision whenever convenient, including with regards to the loans at issue. BPPR executed a Credit Agreement on September 15, 2020, as creditor to BGF. See Docket No. 48-4. On that same date, BGF obtained a loan for $7.2 million from another entity, PCC SUB-CDE 13, LLC. See Exhibit 1. Plaintiffs' allegations about the payment of the performance bond relate to the PCC loan, not the BPPR loan. And as Plaintiffs' own allegations in Civil No. 22-1190 and in the Commonwealth Court case make clear, the disbursement of funds from the PCC loan followed the receipt of signatures by counsel authorizing such disbursement.

case pending before the Puerto Rico Court of First Instance. <u>See</u> Docket No. 52-84 at p. 116-118 of the pdf (p.54-56 of the Boyd counterclaim), ¶¶229-233.

Even the issues at the heart of Docket Nos. 62-64 and related briefing—whether the Plaintiffs can determine what litigation the Companies should pursue, or if their attorneys can act as the Companies' attorneys—were previously submitted to another Judge in this District. <u>See</u> Docket No. 94-1. As the Companies informed at Docket No. 94, that controversy has just been resolved in Civil No. 22-1190. <u>See</u> Docket No. 94-1 (Memorandum Order in Civil No. 22-1190 denying Plaintiffs' motion to have the Court (a) recognize their attorneys as the Companies' attorneys, (b) terminate counsel Abesada as the Companies' attorney, and (c) allow the Plaintiffs to withdraw the Companies' motion to dismiss Plaintiffs' alleged derivative claim on the Companies' behalf).

In short, Plaintiffs seek to use the *Opposition*—and this case more generally—to needlessly and in bad faith multiply proceedings. Such conduct is contrary to basic notions of efficient use of scarce judicial resources.

C. <u>Plaintiffs' arguments in the *Opposition* concerning their supposed capacity to act on the Companies' behalf are legally and factually unfounded.</u>

As best can be understood, the *Opposition* can be summarized as follows: Plaintiffs believe they are authorized to file a complaint on the Companies' behalf and assign them Plaintiffs' attorneys as counsel because (a) an alleged majority of the members of GFC, so desires it, <u>and</u> (b) Plaintiffs contend that GFC's Board of Managers had a conflict of interest with regard to *other* transactions. <u>See</u> Docket No. 82 at 3-4. The alleged conflict of interest relates to (a) the handling of an Asset Acquisition Agreement by and between the Companies and a third party not before

this Court,[4] and (b) the rejection of some offer from another third party not before the Court, Cambrian Energy, to acquire part of the membership interest in the Companies.[5] <u>See</u> Docket No. 82 at 5.

The first part of Plaintiffs' argument—that the will of the alleged majority of the members of GFC trumps the Board of Managers' judgment where the Board is *alleged* to have a conflict of interest—tacitly acknowledges that the Board of Managers is the true decision maker under the Operating Agreement.[6] Plaintiffs nonetheless assert that the Board's authority can be ignored where some members allege the Board has a conflict as to certain matters. But the allegation that the Board is conflicted is simply that—an allegation by a disgruntled member. It is not a decision

---

[4] <u>See</u> Docket No. 52-5. As explained above, the Asset Acquisition Agreement has no bearing on the issues before the Court.

[5] <u>See</u> Docket No. 49-9. That *Non-Binding Letter of Intent* was directed to BPPR, as Greenview and Cambrian proposed acquiring the BPPR loan, among others, at a significant discount, subject to Greenview and Cambrian also being able to acquire 100% of the membership interest in BGF. <u>See</u> Docket No. 49-9 at 5 (tentatively proposing to pay $8.9 million for BPPR's creditor rights under the September 15, 2020 Credit Agreement, as amended, despite the fact that by such date, BGF's debt with BPPR had already been determined to be no less than $13.4 million by Judgment issued on December 27, 2024 in the case <u>Banco Popular de Puerto Rico v. Biomass Green Fuels, LLC et al</u>, SUMAC No. SJ2024CV04616) and 9-10 (noting that the proposed purchase of the loan rights at a discount had to occur concurrently with the "Cambrian Group" acquiring 100% of the membership interests in Biomass). As with the Asset Acquisition Agreement mentioned in the previous footnote, the *Non-Binding Letter of Intent* involves parties not before the Court and issues unrelated to the alleged BHCA violation or the matters raised by Docket Nos. 62-64.

[6] As the Companies have already discussed, the Operating Agreement vests the GFC Board of Managers with the exclusive authority to manage the Companies, including the decision to retain counsel and determine the legal strategy. <u>See</u> Docket No. 64-1 at 36-37, §§ 6.1(e), 6.2. Such authority cannot be overridden by the "Written Consent" of members of GFC. Instead, it can be overridden or altered only via amendment of the Operating Agreement, which requires the written consent of **both** (a) "the Members holdings a majority of the Common Units" and (b) "the Series A Holders holding a majority of the issued and outstanding Series A Units," Docket No. 64-1 at 53 § 11.3, which has not occurred here. <u>See</u> Docket No. 62 at 3-5 and Docket No. 85 at 3-4 ¶ 5. Plaintiffs do not claim that any such amendment has taken place, and the Companies have expressly denied any such amendment.

or a determination by a Court possessing jurisdiction over such dispute and the relevant parties thereto.[7]

In suggesting otherwise, Plaintiffs cite Gatz Properties, LLC v. Auriga Capital Corp., 59 A.3d 1206 (Del. 2012). But Gatz is plainly distinguishable and inapplicable here.[8] To start, Gatz resolved a dispute between members of a company and that company's manager. Id. at 1208, 1211-12. By contrast, this case does not involve litigation between the companies' members and/or their managers. Rather, two members of a limited liability company sued a bank that lent money to a subsidiary of the company. The SAC does not purport to assert claims between members of the LLC based on internal company disputes. This critical distinction renders Gatz irrelevant to the issues before the Court.

Further, the Court in Gatz issued its ruling after a full trial. After receiving evidence, the Court determined that the company's manager had certain contractual fiduciary duties that were breached. Id. at 1212. No such ruling has been made here. Plaintiffs cite no determination by any Court that the Board of Managers breached any fiduciary duty, much less that their decisions should be ignored or their contractual authority overridden without the consent of the Series A holders.

---

[7] There is no court ruling supporting Plaintiffs' contentions. Far from it, the Memorandum Order in Civil No. 22-1190 rejected Plaintiffs' arguments to have their counsel appear on the Companies' behalf and control their litigation strategy. See Docket No. 94-1.

[8] Similarly, none of the provisions of the Puerto Rico General Corporations Act that Plaintiffs cite—albeit inaccurately—provide for overriding a board's decision by written consent, let alone confer a right on certain members to act via written consent in violation of the provisions of an operating agreement. See Docket No. 82 at 5-6.

Furthermore, <u>Gatz</u> is a case-specific interpretation of a provision of the LLC agreement at issue in that case. <u>Id.</u> at 1212, 1214.[9] The decision is silent regarding the effect of a breach of fiduciary duties on a board's authority. Nor does <u>Gatz</u> suggest that the board's decisions become void or can otherwise be ignored following a claim of breach of fiduciary duties. None of the post-<u>Gatz</u> cases Plaintiffs cite hold that board action or authority is void due to breaches of fiduciary duties.

D. <u>Plaintiffs' arguments in the *Opposition* regarding BPPR are misleading and irrelevant.</u>

Plaintiffs also use the *Opposition* to criticize BPPR's assignment of its rights under the Credit Agreement to non-party Humacao RNG, LLC[10] and BPPR's alleged handling of a performance bond requirement. <u>See</u> Docket No. 82 at 7-9. Like the issue Plaintiffs attempt to create concerning the Asset Purchase Agreement, these claims are not properly before this Court and exceed the scope of the motions at Docket Nos. 62-64 and the *Motion for Joinder*—namely, whether Plaintiffs' counsel may also represent the Companies and assert claims on their behalf.

BPPR's assignment of rights under the Credit Agreement to an unrelated third party, which Plaintiffs claim is an ineligible assignee, has no bearing either on Plaintiffs' BHCA claim or the narrow issue before the Court resulting from Docket Nos. 62-64 and related briefing. Plaintiffs do not allege any ruling exists as to the alleged invalidity of the assignment nor can such issue be

---

[9] The *Opposition* states at page 4 that the Delaware Chancery Court held that LLC managers owe default fiduciary duties, unless the LLC agreement explicitly displaces them. The Supreme Court of Delaware specifically rejected that proposition in <u>Gatz</u>, holding that the Chancery Court should not have reached or decided that issue. <u>See</u> 59 A.3d at 1218.

[10] Plaintiffs incorrectly assert that the assignment was to "VRM-Penzini," but the copy of the Asset Purchase Agreement Plaintiffs have submitted—disregarding the confidential nature of the document—states the assignment was to Humacao RNG, LLC. <u>See</u> Docket No. 82 at 7; Docket No. 76-1 at 3 ¶E.

litigated in this case, given the absence of necessary parties and the lack of connection of any such controversy with the Plaintiffs' BHCA claims in the SAC.[11]

In any event, a plain reading of the Credit Agreement belies Plaintiffs' argument that Humacao RNG, LLC is an ineligible assignee. The Credit Agreement defines an "eligible assignee" as:

> (i) any Lender; (ii) any Affiliate of a Lender that is a financial institution, is majority-owned by such Lender or by the corporation controlling such Lender and has Tier 1 capital (as defined under the applicable federal regulatory capital guidelines) in excess of $100,000,000; (iii) any commercial bank, national bank, savings and loan association or savings bank organized under the laws of the United States, or any State thereof, or Puerto Rico, and having Tier 1 capital (as defined under the applicable federal regulatory capital guidelines) in excess of $100,000,000; or (iv) any Fund; or (v) **any other Person approved by the Administrative Agent**; provided, further, that for purposes of the sale of a portfolio of loans that includes this Agreement and the Note(s), the definition of "Eligible Assignee" shall also include any Person. Notwithstanding the foregoing, neither the Borrower nor any Affiliate of the Borrower shall qualify as an Eligible Assignee.

Docket No. 48-4 at 12 (emphasis added).

Plaintiffs' unsupported contentions that "VRM Penzini" (not Humacao RNG LLC) "lacks $100M Tier 1 capital, bank/savings institution status, or Fund designation" are insufficient on the face of the definition of "eligible assignee." Nor is Humacao RNG, LLC an "Affiliate" of the Borrower (BGF). BGF is 100% owned by GFC. See SAC ¶ 3, Docket No. 57 at 9. Humacao RNG, LLC and is not an officer or member of BGF. See Docket No. 48-4 at 7 (definition of "Affiliate").

Moreover, Plaintiffs incorrectly assert that the "transfer of BPPR's loan to VRM depended on the Asset Acquisition Agreement." Docket No. 82 at 8. Putting aside the fact that the argument is wholly irrelevant, the Asset Acquisition Agreement makes clear that the assignment of BPPR's

---

[11] Plaintiffs questioned the assignment and substitution of Humacao RNG for BPPR in the Commonwealth Court collection case, without success.

rights under the Credit Agreement did **not** depend on an asset acquisition. See Docket No. 82 at 8. The Asset Acquisition Agreement provides in relation to the acquisition and transfer of assets:

> Upon Buyer becoming the assignee and holder Popular Loan and PCC Loans, as a material inducement and consideration for Buyer to enter into this Agreement and to accept the transfer, assignment and conveyance of the Acquired Assets in lieu of partial payment in cash *(dación en pago parcial)* of the Popular Loan and the PCC Loans and other considerations provided by Buyer to the Sellers hereunder, the receipt and adequacy of which are hereby acknowledged . . . Buyer agrees to acquire, purchase and accept from the Sellers . . . all of the Seller's rights, title and interests in, to and under the Acquired Assets.

Docket No. 76-1 at 12-13, § 2.1(a). Accordingly, the Asset Acquisition Agreement was not a precondition for the assignment.

Plaintiffs' contention that the assignment breached the contract and violated banking regulations is equally irrelevant and meritless in any event. Again, this allegation has no bearing on whether Plaintiffs can join the Companies as plaintiffs in this action and require them to use Plaintiffs' lawyers when the Board of Managers has not authorized such actions.

As for Plaintiffs' claim that BPPR breached the Credit Agreement by failing to enforce the requirement for a performance and payment bond, see Docket No. 82 at 9, as explained above, the allegation is irrelevant. In any event, it is already before other Courts and Judges.

With respect to the SAC's exhibits, BPPR joined the Companies' *Motion to Strike* at Docket No. 62 under the premise that if the Companies had not authorized the filing of those documents on their behalf, they were also improperly included. See Docket No. 69 at 2-3 ¶ 6. Plaintiffs' conclusory response is merely that the Exhibits are "relevant and not privileged" because they support Plaintiffs' claims. Docket No. 82 at 6. Plaintiffs fail to explain that assertion and, therefore, it should not be credited.

Although Rule 12(f) motions are not typically granted without a showing of prejudice to the moving party, see Sheffield v. City of Bos., 319 F.R.D. 52, 54 (D. Mass. 2016), the Companies'

11

motion describes how the inclusion of certain of the Exhibits with the SAC would prejudice them. In particular, the Companies explained how the filing of the Exhibits, several of which include confidential, sensitive, and even privileged information would prejudice the Companies by (a) exposing them to claims by third parties regarding confidentiality, (b) losing the protection of confidentiality and competitive advantage, and (c) disclosing privileged information. See Docket No. 62 at 6-7. Moreover, the Companies pointed out that Mr. López Vidal cannot waive the Companies' attorney-client privilege because that privilege belongs to the Companies, not to him, and thus only the Board itself can waive it. See Docket No. 85 at 5 n.8 (citing 1 McCormick on Evidence, Sec. 93 (9th ed.))

Finally, with regard to the disqualification of Plaintiffs' counsel, Plaintiffs themselves admit that the *Motion for Joinder* did not "re-argue[]" this point. See Docket No. 82 at 10. To avoid repetition, BPPR incorporates by reference the arguments at Docket No. 62 at 5-8 and Docket No. 85 at 4 ¶6.

**WHEREFORE,** BPPR respectfully requests that the Court take notice of the above and of its joinder of the Companies' motions at Docket Nos. 62-64, and strike Plaintiffs' *Opposition* at Docket No. 82 as moot or, alternatively, disregard it as meritless.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 12th day of August 2025.

**IT IS HEREBY CERTIFIED** that on this same date, the undersigned counsel electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**SULLIVAN & CROMWELL LLP**

125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

Richard C. Pepperman II
*Pro hac vice*
peppermanr@sullcrom.com

Benjamin R. Walker
*Pro hac vice*
walkerb@sullcrom.com

Stella Meyer
*Pro hac vice*
meyerste@sullcrom.com

**PIETRANTONI MÉNDEZ & ALVAREZ LLC**

Popular Center, 19th Floor
208 Ponce de León Avenue
San Juan, Puerto Rico 00918
Telephone: (787) 773-6000
Facsimile: (787) 274-1470

/s/ María Dolores Trelles Hernández
USDC-PR Bar No. 225106
mtrelles@pmalaw.com

/s/ María Elena Martínez
USDC-PR Bar No. 305309
mmartinez@pmalaw.com