# Exhibit 1

**ANEJO 7**

## GUARANTY AGREEMENT

GUARANTY AGREEMENT dated as of September 15, 2020 (this "Guaranty") by GREGORY S. BOYD, of legal age, married, executive and resident of Humacao, Puerto Rico (the "Guarantor") in favor of the LENDERS from time to time parties to the Credit Agreement (as defined below) (collectively, the "Lenders") and BANCO POPULAR DE PUERTO RICO, in its capacity as Administrative Agent for the Lenders (in such capacity, the "Administrative Agent" and, together with the Lenders, the "Guaranteed Parties").

WHEREAS, the Administrative Agent and the Lenders have entered into a Credit Agreement dated as of the date hereof (as the same may hereafter be amended or otherwise modified from time to time, the "Credit Agreement") with BIOMASS GREEN FUELS LLC, a limited liability company organized and existing under the laws of the Commonwealth of Puerto Rico (the "Borrower"), whereby the Lenders granted to the Borrower certain credit facilities described therein;

WHEREAS, as a condition precedent to the making of the Advances by the Lenders to the Borrower under the Credit Agreement, the Guarantor has agreed to execute and deliver this Guaranty; and

WHEREAS, the Guarantor acknowledges that it will derive substantial direct and indirect financial benefits from the financing arrangements contemplated by the Credit Agreement.

NOW, THEREFORE, in consideration of the premises and in order to induce the Lenders to make the Advances to the Borrower, the Guarantor hereby agrees as follows:

1. **Definitions.** Reference is hereby made to the Credit Agreement for a statement of the terms thereof. All capitalized terms used herein that are not otherwise defined shall have the meanings set forth in the Credit Agreement.

2. **The Guaranty.** The Guarantor hereby absolutely, unconditionally and irrevocably guarantees, jointly and severally (*solidariamente*) with the Borrower and any other guarantor of the Obligations (as hereinafter defined), the punctual payment when due, whether at stated maturity, by acceleration or otherwise, of all obligations of every kind and character now or hereafter existing (whether matured or unmatured, contingent or liquidated) of the Borrower now or hereafter existing under the Credit Agreement, the Notes and each other Loan Document, in each case as such agreements or instruments may hereafter be amended or otherwise modified from time to time, whether for principal, interest (including, without limitation, all interest accruing or payable at the then applicable interest rate provided in the Credit Agreement after the maturity of the Notes and interest accruing or payable at the then applicable interest rate provided in the Credit Agreement after the filing of any petition in bankruptcy or the commencement of any insolvency, reorganization or similar proceeding relating to any Person), fees, expenses, reimbursement, indemnification or otherwise (all such obligations being the "Obligations"). This Guaranty is an absolute, unconditional, present and continuing guaranty of payment and not of collectability and is in no way conditioned upon any attempt to collect from

the Borrower or any other action, occurrence or circumstance whatsoever.

3.    **Guaranty Absolute.** The Guarantor hereby acknowledges receipt, and consents to the terms, of the Credit Agreement and guarantees that the Obligations will be paid strictly in accordance with the terms of the Credit Agreement, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of the Lenders with respect thereto. The obligations of the Guarantor hereunder are independent of any obligation of the Borrower under the Credit Agreement and a separate action or actions may be brought and prosecuted against the Guarantor to enforce this Guaranty irrespective of whether any action is brought against the Borrower, or whether the Borrower is joined in any such action or actions.    The obligations of the Guarantor hereunder shall be irrevocable, absolute and unconditional irrespective of, and the Guarantor hereby irrevocably waives to the fullest extent it may legally and effectively do so, any defenses it may now or hereafter have in any way relating to any or all of the following:

a.    any lack of validity or enforceability of the Credit Agreement, the Notes, any Loan Document or any other instrument relating thereto;

b.    any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations, or any other amendment or waiver of, or any consent to departure from, the Credit Agreement, the Notes, any Loan Document or any other instrument relating thereto;

c.    any taking and holding of collateral or additional guarantees for all or any of the Obligations; or any amendment, alteration, exchange, substitution, transfer, enforcement, waiver or subordination of any collateral or such guarantees; or the termination, release or non-perfection of any collateral or such guarantees or any consent to departure from any security agreement or guaranty with respect thereto;

d.    any manner of application of any collateral, or proceeds thereof, to all or any of the Obligations, or the manner of sale of any collateral;

e.    any consent by the Administrative Agent to (i) the change, restructuring or termination of the corporate or partnership structure or existence of the Borrower or any of its Affiliates and (ii) any corresponding restructuring of, or any other restructuring or refinancing of, the Obligations or any portion thereof;

f.    any modification, compromise, settlement or release by any Lender, or, by operation of law or otherwise, collection or other liquidation of the Obligations or the liability of the Borrower or any guarantor, or of any collateral, in whole or in part, and any refusal of payment by any Lender, in whole or in part, from any obligor or guarantor in connection with any of the Obligations, whether or not with notice to, or further assent by, or

2

any reservation of rights against, the Borrower;

g. the commencement of a case under the United States Bankruptcy Code by or against any Person or the death or incapacity of any guarantor (including, without limitation, the Guarantor); or

h. to the extent permitted by law, any other circumstance (including, but not limited to, any statute of limitations) that might otherwise constitute a defense available to, or a discharge of, the Borrower, the Guarantor, any other Person or any other guarantor.

It is further understood that if the Borrower shall have taken advantage of, or be subject to the protection of, any provision of the United States Bankruptcy Code, the effect of which is to prevent or delay the Lenders from taking any remedial action against the Borrower, including the exercise of any option that the Lenders have to declare the Obligations due and payable upon the occurrence of any Event of Default, the Administrative Agent may, as against the Guarantor, nevertheless, declare the Obligations due and payable and enforce any or all of its rights and remedies against the Guarantor provided for herein.

This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of any of the Obligations are rescinded or must otherwise be returned by any Lender upon the insolvency, bankruptcy or reorganization of the Borrower or any other Person or otherwise, all as though such payment had not been made.

4. **Waiver.** The Guarantor hereby waives to the fullest extent permitted by applicable law: (i) promptness, diligence, notice of acceptance of its guarantee hereunder, presentment, demand, protest or notice of the occurrence of an Event of Default, (ii) any requirement that the Lenders protect, secure, perfect or insure any lien or any property subject thereto or exhaust any right to take any action against any Person or any collateral, including, without limitation, the right to require application in respect of the property of the Borrower and any right to require that any resort be had by the Lenders to any security held for payment of the Obligations (*excusión*); (iii) any right to revoke this Guaranty; and (iv) any claim or defense that the Borrower or the Guarantor may have to the payment or performance of the Obligations, other than the discharge of the Guarantor's obligations as provided herein, whether by payment in full of the Obligations or otherwise but in any event not before the date on which this Guaranty shall no longer be in full force and effect pursuant to clause (a) of the second sentence of Section 6 hereof. The Guarantor acknowledges that it will receive substantial direct and indirect benefits from the financing arrangements contemplated by the Credit Agreement and that the waivers set forth in this Section 4 are knowingly made in contemplation of such benefits.

5. **Subrogation.** Any debt or liability ("Debt") of the Borrower to the Guarantor now or hereafter existing as a result of any payments made or obligations incurred by the Guarantor pursuant to the terms hereof (including, but not limited to, any rights of subrogation, reimbursement, exoneration, contribution or indemnification, that Guarantor may have as a result of any payment by Guarantor under this Guaranty) or any other debt or liability, together with

3

any interest thereon, shall be, and such Debt is, hereby deferred, postponed and subordinated to the prior payment in full of all of the obligations of the Borrower under the Credit Agreement, the Notes and the other Loan Documents. Until the date on which indefeasible payment in full in cash of all of the Obligations and all other amounts required to be paid by the Guarantor hereunder (which claim for payment the parties agree shall remain a claim that is prior and superior to any claim of Guarantor notwithstanding any contrary practice, custom or ruling in cases under the United States Bankruptcy Code generally) is received by the Lenders, the Guarantor agrees not to accept any payment or satisfaction of any kind of such Debt of the Borrower to Guarantor and if any amount shall be paid to the Guarantor with respect to such Debt at any time, such amount shall be held in trust for the benefit of the Lenders and shall forthwith be paid to the Lenders to be credited and applied to the Obligations, whether matured or unmatured, in such manner as the Lenders may determine in their sole discretion. Further, the Guarantor agrees that until such payment in full of all of the obligations of the Borrower under the Credit Agreement and the Obligations, (a) it shall not accept payment from any other guarantor by way of contribution on account of any payment made hereunder, (b) it shall not take any action to exercise or enforce any rights to such contribution, and (c) if any amount shall be paid to the Guarantor on account of any rights to such contribution at any time, such amount shall be held in trust for the benefit of the Lenders and shall forthwith be paid to the Lenders to be credited and applied to the Obligations, whether matured or unmatured, in such manner as the Lenders may determine in their sole discretion. Nothing herein shall be interpreted as restricting the right of the Borrower to make, and of any guarantor to receive, distributions of income from the operations of the Borrower or otherwise, subject to, and except as provided by, the terms and conditions of the Credit Agreement and to the rights and remedies of the Lender under the terms of the Credit Agreement.

6. **No Reduction or Termination; Continuing Guaranty.** The Guarantor's obligations hereunder shall not be subject to any defense, set-off, counterclaim, recoupment or abatement of any kind or nature that the Borrower or the Guarantor may assert, nor to any reduction, limitation, impairment or termination (except as hereinafter expressly provided) for any reason, including, without limitation, any claim of waiver, release, surrender, alteration or compromise of the obligations of the Borrower under the Credit Agreement. This Guaranty is a continuing guaranty and shall (a) remain in full force and effect until the date on which indefeasible payment in full in cash of the Obligations and all other amounts required to be paid by the Guarantor hereunder is received by the Lenders, (b) be binding upon the Guarantor, its successors and assigns and (c) inure to the benefit of and be enforceable by the Lenders and their successors, transferees and assigns. The Guarantor shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of the Required Lenders.

7. **Entire Agreement; Amendments, Etc.** All understandings, representations and agreements heretofore had with respect to this Guaranty are merged into this Guaranty which alone fully and completely expresses the agreement of Guarantor and the Lenders. No amendment or waiver of any provision hereof, nor consent to any departure by the Guarantor herefrom, shall in any event be effective unless the same shall be in writing and signed by the Administrative Agent, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

4

8. **Notices.** All notices, requests, consents and other communications required or permitted under this Guaranty shall be given in the manner, and shall become effective, as provided in the Credit Agreement. Notices to the Guarantor shall be sent to the address of the Borrower set forth in the Credit Agreement.

9. **No Waiver; Remedies.** No failure on the part of any Lender to exercise and no delay in exercising, and no course of dealing with respect to, any right, power or privilege hereunder shall operate as a waiver hereof nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The remedies provided herein and in the Credit Agreement are cumulative and not exclusive of any remedies provided by law, except to the extent expressly set forth to the contrary in this Guaranty or in the Credit Agreement.

10. **Costs, Expenses and Taxes; Indemnification.** (a) The Guarantor, jointly and severally (*solidariamente*) with the Borrower and each other guarantor, agrees to pay on demand all out-of-pocket costs and expenses in connection with the negotiation, preparation, execution, delivery, administration, modification, amendment or waiver of this Guaranty (whether proposed or made effective) including, without limitation, the reasonable fees and expenses of counsel to the Administrative Agent and the Lenders. The Guarantor, jointly and severally (*solidariamente*) with the Borrower and each other guarantor, agrees to pay on demand all costs and expenses of the Administrative Agent and the Lenders (including, without limitation, reasonable attorneys' fees and expenses) in connection with the enforcement (whether through negotiations, legal proceedings or otherwise) of this Guaranty, including without limitation, reasonable counsel fees and expenses in connection with the enforcement of this Section 10.

5

(b)     The Guarantor hereby agrees to indemnify the Administrative Agent and the Lenders, and each of their Affiliates and each director, officer, employee, agent and stockholder of any of the foregoing Persons (each an "Indemnified Party") against, and to hold each Indemnified Party harmless from, any and all losses, claims, damages, liabilities and related expenses, including the fees, charges and disbursements of any counsel for any Indemnified Party, incurred by or asserted against any Indemnified Party arising out of, in connection with, or as a result of (i) the execution or delivery of this Guaranty, the performance by the Guarantor of its obligations hereunder, or (ii) any actual or prospective claim, litigation, investigation or proceeding relating to the foregoing, whether based on contract, tort or any other theory and regardless of whether any Indemnified Party is a party thereto; provided that such indemnity shall not, as to any Indemnified Party, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted from the gross negligence or willful misconduct of such Indemnified Party.  The Guarantor further agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Guarantor or its partners or creditors for or in connection with the transactions contemplated by this Guaranty, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct; provided, however, that the provisions of this Section shall not in any way alter any contractual obligation or contractual remedy of any Indemnified Party.

11.     **Representations and Warranties.** The Guarantor hereby represents and warrants to the Administrative Agent and the Lenders as follows:

(a)     This Guaranty has been duly executed and delivered by the Guarantor and constitutes and will constitute a legal, valid and binding agreement enforceable against the Guarantor in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally or by general principles of equity.

(b)     The execution, delivery and performance of this Guaranty will not: (a) violate or contravene, in any material respect, any provision (i) of any law or regulation or of any order, decree, judgment or award of any Governmental Authority, court, arbitrator, other body or jurisdiction to or by which the Guarantor or any of its properties is subject or bound or (ii) of any mortgage, deed, contract or agreement to which the Guarantor is a party or which is binding upon it or any of its properties; nor (b) cause any lien to arise over or be attached to all or a substantial part of the Guarantor's property or assets or require the Guarantor to create any such lien or to enter into any title retention agreement.

(c)     There is no litigation, arbitration or other proceeding of or before any court, administrative or governmental authority, arbitrator, other body or jurisdiction taking place or pending against the Guarantor or, to the best of the Guarantor's knowledge, threatened against the Guarantor, to enjoin or restrain or question the execution, delivery or performance, legality, validity or enforceability of this Guaranty.

(d)     The Guarantor will receive substantial direct and indirect benefits from the

financing arrangement contemplated by the Credit Agreement.

12. **Covenants**. (a) The Guarantor hereby covenants and agrees that unless the Administrative Agent shall otherwise consent in writing, it will furnish to the Administrative Agent, as soon as available but no later than one hundred twenty (120) days after the end of every calendar year, the personal financial statements of the Guarantor for such year.

(b) So long as the Advances shall remain unpaid or any Lender shall have any Commitment under the Credit Agreement, the Guarantor will not, unless the Administrative Agent shall otherwise consent in writing:

(i) Sell, assign, lease, transfer or otherwise dispose of any asset or property, income or revenues, other than in its ordinary course of business at fair market value and on ordinary business terms.

(ii) Create, incur, guarantee, endorse, assume or suffer to exist any Indebtedness, direct, contingent or otherwise, that would result in a Material Adverse Effect.

(iii) Permit any Change of Control of Borrower.

(iv) Mortgage, hypothecate or otherwise encumber (other than Permitted Liens) or grant a license in all or any part of their business or assets, should the same result in any Material Adverse Effect.

13. **Counterparts**. This Guaranty may be executed in one or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute a single agreement of Guaranty. The failure of any party hereto to execute this Guaranty, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

14. **Severability of Provisions.** Any provision of this Guaranty that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

15. **WAIVER OF JURY TRIAL.** THE GUARANTOR, THE LENDERS AND THE ADMINISTRATIVE AGENT EACH HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OF THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY.

16. **SERVICE OF PROCESS; JURISDICTION AND VENUE.**

(a)     AS A FURTHER INDUCEMENT TO THE LENDERS TO MAKE THE ADVANCES AND IN CONSIDERATION THEREOF, THE GUARANTOR IRREVOCABLY CONSENTS TO SERVICE OF PROCESS BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, TO IT AT THE ADDRESS SET FORTH IN SECTION 8 HEREOF, THE GUARANTOR HEREBY WAIVING PERSONAL SERVICE THEREOF, AND AGREES THAT WITHIN THIRTY (30) DAYS AFTER SUCH MAILING, THE GUARANTOR SO SERVED SHALL APPEAR OR ANSWER TO ANY SUMMONS AND COMPLAINT OR OTHER PROCESS.

(b)     ALL ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH THIS GUARANTY MAY BE TRIED AND LITIGATED IN, AND THE GUARANTOR HEREBY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF, THE COURTS OF THE COMMONWEALTH OF PUERTO RICO AND THE FEDERAL COURT LOCATED IN SAN JUAN, PUERTO RICO, UNLESS SUCH ACTIONS OR PROCEEDINGS ARE REQUIRED TO BE BROUGHT IN ANOTHER COURT TO OBTAIN SUBJECT MATTER JURISDICTION OVER THE MATTER IN CONTROVERSY. THE GUARANTOR WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS, TO ASSERT THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH COURTS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS SECTION. GUARANTOR HEREBY AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT OR JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY APPLICABLE LAW.

17.     **Governing Law.** This Guaranty shall be governed by, and construed in accordance with, the laws of the Commonwealth of Puerto Rico.

**[Signature Page Follows]**

8

**IN WITNESS WHEREOF**, Guarantor has duly executed this Guaranty as of the 15th day of September, 2020.

**GUARANTOR:**

_____
Gregory S. Boyd

Affidavit No.: _1,572_

Acknowledged and subscribed before me by the following persons who are personally known to me, in San Juan, Puerto Rico, on this 15th day of September, 2020: Gregory S. Boyd, of legal age, Married to Julia Hathaway under a prenuptial agreement, executive and resident of Humacao, Puerto Rico.

_____
Notary Public

**ACKNOWLEDGED AND ACCEPTED:**

**BANCO POPULAR DE PUERTO RICO**

By:_____
Name: Joval F. Rodríguez Barnes
Title:   Commercial Relationship Officer

9