**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

Gregory Boyd, Jonathan Lassers,                    Civil Action No.: 3:24-cv-01569(PAD)

  Biomass Green Fuels, LLC

   GFC Holdings, LLC

    Plaintiffs,

     v.                                              Jury Trial Demanded

Banco Popular de Puerto Rico,

  Defendant.

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MEMORANDUM OF LAW ADDRESSING PLAINTIFFS' LACK OF STANDING**

---

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 6

PROCEDURAL BACKGROUND............................................................................ 10

    A. The First Amended Complaint................................................................. 11

    B. BPPR's Motion to Dismiss .................................................................... 12

    C. The Second Amended Complaint............................................................ 13

    D. The August 14, 2025 Conference........................................................... 14

ARGUMENT .......................................................................................................... 15

    I. Plaintiffs Have Alleged Direct Injury ...................................................... 16

    II. Guarantor Standing................................................................................ 16

    III. Various Circuits have Approved Shareholder Standing ......................... 17

    IV. Plaintiffs Have Adequately Pled Standing to Sue Derivatively on BGF's Behalf.............. 19

CONCLUSION ....................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Allison v. Eriksson*, 479 Mass. 626, 98 N.E.3d 143 (2018) .......................................................... 11

*Auriga Capital Corp. v. Gatz Props., LLC*, 59 A.3d 1206 (Del. 2013) .................................. 12, 19

*Bray v. Bank of America*, 611 F. App'x 888 (8th Cir. 2015) .................................................. 17, 19

*Continental Illinois National Bank & Trust Co. of Chicago v. Stanley*, 585 F. Supp. 1385 (N.D. Ill. 1984) ........................................................................................................................................ 18

*Cosmopolitan Tr. Co. v. Mitchell*, 242 Mass. 95, 136 N.E. 803 (1922) ....................................... 11

*Costner v. Blount National Bank*, 578 F.2d 1192 (6th Cir. 1978) ................................................ 19

*Demalous v. Demalous*, 428 Mass. 555, 703 N.E.2d 1149 (1998) ................................................ 11

*Demoulas v. Demoulas Super Markets, Inc.*, 424 Mass. 510, 677 N.E.2d 159 (1997) ................ 11

*Epstein v. F & F Mortgage Corp.*, 6 P.R. Off. Trans. 293 (D.P.R. 1977) .................................... 13

*Executive Leasing Corp. v. Banco Popular de Puerto Rico*, 48 F.3d 66 (1st Cir. 1995) ............ 12

*Gonzalez Turul v. Rogatol Distributors, Inc.*, 951 F.2d 1 (1st Cir. 1991) ............................. 13, 20

*In re First Bancorp Derivative Litigation*, 465 F. Supp. 2d 1123 (D.P.R. 2006) ........................ 13

*In re Lyman-Cutler, LLC*, 632 B.R. 355 (Bankr. D. Mass. 2021) ................................................ 14

*In re Oxbow Carbon LLC Unitholders Litigation*, 2018 WL 3655257 (Del. Ch. Aug. 1, 2018) ................................................................................................... 14, 17, 19, 20

*In re PHC, Inc., Shareholder Litigation*, 894 F.3d 419 (1st Cir. 2018) .................... 11, 14, 19, 20

*Kavanaugh v. Ford Motor Co.*, 353 F.2d 710 (1971) .................................................. 16

*McGovern v. Gen. Hldg., Inc.*, 2006 WL 1468850 (Del. Ch. May 18, 2006) ............................ 13

*Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333 (7th Cir. 1989) ......... 17

*Pagan v. Calderon*, 448 F.3d 16 (1st Cir. 2006) ....................................... 11, 13, 16, 21

*Swann v. Charlotte-Mecklenburg Bd. Of Educ.*, 402 U.S. 1 (1971) ............................... 14

*Swerdloff v. Miami National Bank*, 584 F.2d 54 (5th Cir. 1978) ........................... 18, 19

*Union de Empleados de Muelles de P.R. PRSSA Welfare Plan v. UBS Fin. Servs. Inc. of P.R.*, 704 F.3d 155 (1st Cir. 2013) .................................................................. 20

**Statutes**

12 U.S.C. § 1972(1)(C) ...................................................................... 8,18

12 U.S.C. § 1975 ........................................................................ 12, 16, 19

28 U.S.C. § 1367 ............................................................................. 20

14 L.P.R.A. § 3565 ......................................................................... 8, 11

14 L.P.R.A. § 3963(a)-(b) ............................................................................................. 10

14 L.P.R.A. § 3965 ................................................................................................ 12, 20

14 L.P.R.A. § 4003 ...................................................................................................... 20

31 L.P.R.A. § 3374 ...................................................................................................... 20

**Rules**

Federal Rule of Civil Procedure 23.1 .......................................................................... 20

ABA Model Rules 1.7 and 1.13 ................................................................................... 15

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs GFC Holdings, LLC ("GFC"), Biomass Green Fuels, LLC ("BGF") (collectively, the "Companies"), Gregory Boyd, and Jonathan Lassers (collectively, "Plaintiffs"), through undersigned counsel, and respectfully state and pray:

## <u>INTRODUCTION</u>

This Court sits in equity, and Plaintiffs seek a protean, equitable remedy to the untenable situation in which Banco Popular has placed them. The bank has bargained with the Companies' Board of Managers to preclude the Companies from bringing this lawsuit as an element of the liquidation of the Companies through an Asset Acquisition Agreement that leaves the Companies with no assets. Docket 57 at ¶¶ 223-31. Humacao RNG, LLC, majority owned by VRM Penzini, which learned of the value of the Companies' contracts from confidential information provided by Boyd and Lassers, purchased the assets and stepped into Banco Popular's shoes to collect the loans. [1] *Id.* at ¶ 228.

Every Board member who voted for the liquidation – which the Operating Agreement says must be unanimous – received money for that vote. *Id.* at ¶ 230. Every member who voted no, received nothing. Now, the majority of the members ask this Court to use its equitable powers to revoke the Board members' refusal to proceed forward with this litigation via a Members' Resolution because the Board members' breaches of their fiduciary duties revoke whatever

---

[1] Plaintiffs note that the San Juan Superior Court has held that Mr. Boyd has stated a claim for predatory lending, fraud in the inducement, breach of fiduciary duty as the administrative agent of the loan, breach of contract, forgery of his signature, and a declaratory judgment in his Counterclaim against BPPR. *See* July 15, 2025 order of the Hon. Cristina Suau SJ2024CIV04616. Boyd has filed a Motion to Dismiss Humacao's RNG's claim as based on a null transfer. Docket 242 of SJ2024CIV04616.

authority they may have had under the Operating Agreement.[2] Barring that, Plaintiffs sustain their earlier arguments that their status as owners and, in Boyd's case, guarantor, afford them standing.

**Relevant Background**

In 2021, Gregory Boyd and Jonathan Lassers reported to BPPR the fraud being committed by the co-owners of the Companies: those members of the Companies, primarily the Lopezes, father and son, by lining their own pockets,[3] but also secondarily Semillero and CDCVA because they hoped to buy out the Lopezes for pennies on the dollar. What Boyd and Lassers did not know then was that Banco Popular preferred a desperate debtor so that the bank could achieve its goal of executing a beneficial natural gas offtake agreement.

Unwittingly, Boyd and Lassers played into the bank's hands by filing their Racketeering Influenced Corrupt Organization lawsuit against the Lopezes, Semillero, CDCVA, the bank, and their co-conspirators on April 25, 2022. The Lopezes paid off two suppliers with the last million dollars in the bank account the very day Boyd and Lassers filed, and the bank had the degree of desperation it needed. The bank tied its below-market price off-take agreement, sweetened with tens of millions of dollars in tax credits, to a Third Amended Credit Agreement with the replacement money.

---

[2] In their Opposition to the Motion for Reconsideration, Docket 814 in 22-1190 (GMM-MEL), the Board members aver that, since the allegations of the RICO case do not include these claims against Board members – because the Board members had not breached their fiduciary duties in that way when Plaintiffs filed the operative Complaint, that "a substantive response to these arguments is unwarranted." Plaintiffs suspected that the word that the Board members were looking for was "impossible." Nonetheless, that argument fails here, because these fiduciary breaches are pled in Docket 57 of this case at ¶¶ 223-31.

[3] The Lopezes' inattention to the construction killed a day laborer, Julio Reyes Salas, who did not have the training or rubber boots and gloves to prevent his electrocution. The Companies backdated the check to the insurance company; BPPR honored the check, and then the bank official who managed the Companies' loan resigned. OSHA fined ITS $3,500.

Ultimately, Semillero, CDCVA, Olmar Lopez Gomez, VRM Penzini, and the noteholders agreed to liquidate the Companies for their personal benefit by selling the Companies' assets to Humacao RNG, LLC, a company 80% owned by VRM Penzini. Humacao RNG then pretended to step into the shoes of Banco Popular in the San Juan Superior Court collection to collect the bank's debt against the Companies and the guarantors, including Mr. Boyd. Through their actions, the Board members violated their fiduciary duties and vitiated their authority as a board. Each Board member who voted for the sale of all of the Companies' assets – the liquidation that required unanimous owner approval – received monetary compensation. Per Puerto Rico Corporate law, the Board members should have recused themselves. 14 L.P.R.A. § 3565. None did.

Boyd and Lassers stepped into the breach, having reached agreements with the Lopezes, father and son, to gain authority to act on behalf of the majority of the owners of the Companies to restore the Companies' assets through the pursuit of this lawsuit. The Board of Managers has sought to thwart this effort because their payment for gutting the companies will not be complete if the bank faces the consequences of its unlawful acts. By seeking to halt this litigation, the Board of Managers has revealed its true colors in scarlet, announcing that it cares nothing for the Companies and everything for the board members' own pecuniary benefit.

BPPR's Memorandum contends that Boyd and Lassers lack standing to assert claims under the Bank Holding Company Act ("BHCA"), 12 U.S.C. § 1972(1)(C), and the pendent fiduciary duty claim because the alleged injuries are purportedly derivative of harm to BGF, and no derivative standing has been properly pled. However, this argument overlooks critical facts and controlling law. Plaintiffs submit that BPPR's position fails for five fundamental reasons:

First, the pending Motion for Reconsideration in the related RICO case (Civil No. 22-1190 (GMM-MEL)) ("Motion for Reconsideration") challenges the Order (Dkt. 800) upon which BPPR relies, potentially validating the Companies' joinder and mooting individual standing issues. *See* Exhibit 1, Docket 806 from 22-1190(GMM). Plaintiffs incorporate the arguments from Docket 806 as if fully set forth herein. Puerto Rico LLC law imposes non-waivable fiduciary duties, and, as set forth above, the Board of Managers' breaches of those duties vitiate the Board's authority to make decisions for the Companies. Second, Boyd and Lassers allege direct injuries in the Second Amended Complaint (SAC), based on Boyd's guarantor status and both Plaintiffs' ownership interests in a closely held LLC, supporting personal standing. Third, BHCA standing requires personal harm tied to anti-tying violations, a requirement met here through tied credit extensions and the loss of Boyd's and Lassers' investments.

Fourth, the Motion for Reconsideration, Docket 806, Exhibit 1, argues that changed circumstances—including the Board's self-dealing liquidation of the Companies' assets without required unanimous approval—render the Board's actions *ultra vires* and authorize majority members (Boyd and Lassers, holding 55.468% of voting units) to appoint counsel, withdraw voluntary dismissal, and join the Companies as plaintiffs. *See* Reconsideration Motion at 5-6, 7-10. As of September 3, 2025, this Honorable Court has not issued a ruling on the Motion for Reconsideration, making BPPR's reliance on Dkt. 800 premature. This Court has the authority under its equitable powers to fashion such a remedy. Plaintiffs ask this Court to do so, determine that Plaintiffs, representing the majority of the Companies' owners and all the Companies' owners whose interests are not compromised against the Companies' best interests, and deny the Motion to Dismiss.

**PROCEDURAL BACKGROUND**

The Second Amended Complaint ("SAC") alleges BPPR unlawfully tied credit extensions to the purchase of renewable liquefied natural gas ("RLNG") at below-market prices through the Offtake Agreement, causing direct harm to Plaintiffs and the Companies, increasing the company's debt covered by Boyd's guarantee. BPPR also breached its fiduciary duties as Administrative Agent in managing the Credit Agreement, further contributing to financial harm and enabled wrongful asset transfers to emasculate the Companies.

The Motion for Reconsideration disputes the correctness of a prior order (Dkt. No. 800), which BPPR references to argue that Plaintiffs lack standing to represent the Companies. Plaintiffs hold a majority of voting units (55.468%) in GFC Holdings, whose contract for the liquidation of the companies' assets require unanimous consent from the Board, lacking here due to their fraudulent self-dealing and breaches. This motion is crucial to the procedural posture and should be considered before considering dismissing claims on the ground of standing.

Since Puerto Rico law mandates that the Board of managers of an LLC have fiduciary duties to the company unless modified in the operating agreement, the Board members' breaches forfeit Board authority. *See* P.R. Laws Ann. tit. 14, § 3963(a)-(b) (providing that members and managers owe duties of loyalty and care, including acting in the best interest of the LLC, avoiding conflicts, and not competing; duties may be limited but not eliminated for loyalty or bad faith). *Id.* 14 L.P.R.A. § 3565 (requiring abstention or disclosure and approval in conflicted transactions for directors, applicable to LLCs by extension).

"The hallmark of equitable relief is its protean nature and - within wide limits – a court sitting in equity [as this Honorable Court sits] may tailor the relief to fit the circumstances of the particular court." *In re PHC, Inc., Shareholder Litigation,* 894 F.3d 419, 435 (1st Cir. 2018), *citing Allison v. Eriksson,* 479 Mass. 626, 629, 98 N.E.3d 143, 154(2018); *Demalous v. Demalous,* 428 Mass. 555, 703 N.E. 2d 1149, 1169 (1998). The *PHC* Court continued: "Within this remedial realm, it is standard fare for a court to fashion remedies that deny a breaching fiduciary undue gain received by virtue of this position." *In re PHC* at 435. "This remains true even when a remedy at law is also available." *citing Cosmopolitan Tr. Co. v. Mitchell,* 242 Mass. 95, 136 N.E. $03, 409 (1922), *see also Demoulas v. Demoulas Super Markets, Inc.,* 424 Mass. 510, 677 N.E. 2d 159, 178 note 32 (1997).

Here, each member of the Board of Managers breached their fiduciary duties to the Companies. In the course of doing so, they made the specious agreement on behalf of the Companies not to sue Banco Popular. In *Pagan v. Calderon,* 448 F.3d 16, 28-29 (1st Cir. 2006), the First Circuit held that the remedy in law for the situation where it is absolutely inconceivable that the corporation itself will sue for misconduct because the malefactor[s] refuse, is to allow the individual owners to proceed. *Id.* Thus, if this Court were to reject the role that the First Circuit provides it should assume, the alternative is not to dismiss this case on behalf of the Companies; it is to allow Boyd and Lassers themselves to proceed with this litigation.

### A. The First Amended Complaint

BPPR accurately notes that the First Amended Complaint asserted a BHCA claim based on BPPR's alleged tying of credit extensions to an unfavorable RLNG offtake agreement, causing

damages to BGF for $338,013,683 (trebled to $1,014,041,049 under 12 U.S.C. § 1975). *See* BPPR Memo at 2; Dkt. No. 7 ¶ 214.

However, BPPR's characterization ignores the crucial fact that Boyd and Lassers seek their pro rata share of damages (24.7% and 2.8%, respectively) based on their ownership interests, alleging direct harm from the destruction of their personal investments. *Id.* at 46. This is not merely a derivative recovery; under Puerto Rico law governing closely-held LLCs, members may assert direct claims for harms that deplete their personal interests, particularly where fiduciary breaches, taint Board control. *See* 14 L.P.R.A. § 3965 (establishing that fiduciary duties of loyalty and care persist unless properly waived and are not eliminable in cases of bad faith); *Auriga Capital Corp. v. Gatz Props., LLC*, 59 A.3d 1206, 1213-14 (Del. 2013) (holding that self-dealing voids LLC manager actions). This Court should reach this result particularly given that BPPR is a co-conspirator in the fraud and RICO activities of those very managers.

**B. BPPR's Motion to Dismiss**

BPPR moved to dismiss both standing and failure to state a claim grounds. *See* BPPR Memo at 2; Dkt. No. 20. However, BPPR's integration clause argument relies on a case where the non-integrated contract was verbal, not the very contract tied to the loan agreement. *Executive Leasing Corp.* v. *Banco Popular de Puerto Rico*, 48 F.3d 66 (1st Cir. 1995). Here there are two distinct contracts: the Third Amendment to the Credit Agreement and the Offtake Agreement. Moreover, the SAC's amendment to add the Companies as plaintiffs directly addresses the standing concerns, either because the Court should allow Plaintiffs to proceed on behalf of the Companies as an exercise of its equitable powers, or because the Companies' refusal to sue confers that right on Plaintiffs. *Pagan* at 28-29.

**C. The Second Amended Complaint**

BPPR notes that the SAC added the Companies as plaintiffs and included a pendent fiduciary duty claim under Puerto Rico law (SAC ¶¶ 255-257), based on BPPR's role as Administrative Agent. *See* BPPR Memo at 2-3. BPPR characterizes this joinder as "unauthorized," but that characterization begs two questions: what group has the authority to litigate on behalf of the companies? And, what authority does this Court have to fashion a remedy that allows the Companies to litigate claims that the compromised Board of Managers refuses to litigate?

Since the Puerto Rico Supreme Court routinely looks to the law of Delaware for interpretations of its corporate law, Plaintiffs cite Delaware cases in support of its argument as to this Court's authority. *In re First Bancorp Derivative Litigation,* 465 F.Supp. 2d 1123,118 (D.P.R. 2006) ("Because Puerto Rican corporate law was modeled after Delaware corporate law, the court turns to Delaware corporate law..") *citing Gonzalez Turul v. Rogatol Distributors, Inc.,* 951 F.2d 1, 3 note 4 (1st Cir. 1991): *see also*, *Epstein v. F & F Mortgage Corp.,* 6 P.R. Off. Trans. 293, 308 (D.P.R. 1977) ("There is undoubtedly a fiduciary relation between a director and a corporation.");

Given Puerto Rico's reliance on the corporate law of Delaware, Courts in Puerto Rico should follow the Delaware rule that there is "capacious remedial discretion of the [chancery court] to address inequity" *McGovern v. Gen. Hldg., Inc.,* 2006 WL 1468850 at \*24 (Del Ch. May 18, 2006), *cited in In re Oxbow Carbon LLC Unitholders Litgation,* 2018 DEL Ch. LEXIS 263 at \*6-9 (August 1, 2018) *also citing Swann v. Charlotte-Mecklenburg Bd. Of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.") In *Oxbow Carbon,* the Court awarded specific performance and also took into

consideration the possibility that Defendants' breach of the LLC agreement would make specific performance an insufficient remedy because of timing of the transaction might inevitably leave the minority members undercompensated. *Id.* The Court further addresses the portion of the advisory fees that the majority members imposed on the minority members by disrupting the exit sale and the related interest and costs. In addition to the above citations, the *Oxbow Carbon* Court cited to its "power to grant factually tailored remedies designed to provide complete redress…" as well as the "protean power of equity" cited by the First Circuit in *In re PHC* at 435.

The Board's self-dealing conduct, including the fraudulent asset sale to insider VRM Penzini's subsidiary, while rejecting a superior offer, breached fundamental fiduciary duties and authorized majority members to act on behalf of the Companies. (citing *In re Lyman-Cutler, LLC*, 632 B.R. 355, 416-18 (Bankr. D. Mass. 2021) (discussing rescission remedies for fiduciary breach). The SAC alleges explicitly that BPPR ignored clear indications of fraud, improperly disbursed funds, that Plaintiffs raised and tied credit extensions to the gas Offtake Agreement, directly harming Boyd in his capacity as guarantor and member; Lassers in his capacity as member; and the Companies' very existence. *See* SAC ¶¶ 4-6, 150, 154, 185, 242, 258.

### D. The August 14, 2025 Conference

BPPR recounts the conference during which this Court agreed with the conclusion in Dkt. 800 that Plaintiffs' counsel are not proper representatives of the Companies. *See* BPPR Memo at 3. Plaintiffs have since asked the Court in the RICO case to reconsider that decision for the following reasons:

(1) Majority authority exists under Operating Agreement § 3.2, which contains no protective provisions for litigation decisions;

(2) The Board's actions were *ultra vires* due to fiduciary breaches, specifically the self-dealing fraudulent liquidation conducted without the required unanimous vote under Operating Agreement § 9.1;

(3) Board incapacity resulted from RICO violations;

(4) equitable rescission principles apply; and

(5) conflicts of interest exist regarding attorney Abesada under ABA Model Rules 1.7 and 1.13.

*See* Exhibit 1 at 7-10, 15-20.

Dismissal at this juncture would be both premature and inefficient.

## **ARGUMENT**

The Bank Holding Companies Act uses broad language: "any person injur[ed] in his business or property" may file suit. This language can encompass direct harms to LLC members where injuries are personal and tied to statutory violations. BHCA standing under § 1975 aligns with antitrust principles in requiring personal injury.

## I. Plaintiffs Have Alleged Direct Injury

BPPR argues that the SAC alleges harm only to BGF, citing specific paragraphs such as SAC ¶ 185 ("BGF was destined to run out of money"), ¶ 242 ("destroying the value of BGF and GFC"), and ¶ 258 ("caused BGF and GFC substantial damages"). *See* BPPR Memo at 5-8. However, this characterization misrepresents the comprehensive allegations in the SAC. Boyd specifically alleges direct injury in his capacity as guarantor, including his exposure to $19 million in liability from tied credit extensions executed without his consent. *See* SAC ¶¶ 4, 27, 150, 154. Both Plaintiffs allege direct harm resulting from the destruction of value in their ownership interests. *See* SAC ¶¶ 5-6, 202-208, 223 ("rendering BGF worthless"), 242. *Pagan v. Calderon*, 448 F.3d 16, 28-29 (1st Cir. 2006) notes an exception to the direct harm rule: where "it is absolutely inconceivable that the corporation itself would pursue a claim for the misconduct," the shareholder has standing. *Id.* at 28-29, *citing Kavanaugh v. Ford Motor Co.,* 353 F.2d 710, 717 (allowing shareholder standing in a case in which the alleged malefactor owned all of the corporation's voting stock.) Here, if the Court were to reject Plaintiffs' argument that the Board of Managers' refusal to sue on the BHCA claim is vitiated by their breaches of their fiduciary duties, then the Court should allow Boyd and Lassers to sue individually. *Id.*

## II. Guarantor Standing

BPPR cites *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333, 1336 (7th Cir. 1989), for the proposition that guarantors as "contingent creditors" lack standing for derivative harms. Banco Popular has sued Mr. Boyd as a guarantor, forcing him to incur legal fees and costs, just as the majority owners did to the minority owners in *In re Oxbow* incurred. Boyd is not a contingent creditor; Banco Popular is suing him now. *See* SAC ¶ 27.

### III. Various Circuits have Approved Shareholder Standing

BPPR relies on cases like *Mid-State Fertilizer Co. v. Exchange National Bank of Chicago*, 877 F.2d 1333 (7th Cir. 1989), and the *Bray v. Bank of America* series to argue that shareholders and guarantors lack standing under the BHCA for derivative harms. See BPPR Memo at 6-8. However, these cases are distinguishable because they involved contingent or indirect injuries, not the direct, personal harms alleged here. In *Mid-State*, the Seventh Circuit denied standing to guarantors whose injuries were merely derivative of the corporation's, treating them as "contingent creditors" without a direct tie to the bank's anticompetitive conduct. 877 F.2d at 1336. Similarly, in *Bray*, the Eighth Circuit affirmed denial of standing where the guarantor's losses flowed solely from the corporation's harm, without independent personal exposure. 611 F. App'x 888, 890 (8th Cir. 2015). Here, Boyd's injury is not contingent: BPPR is actively suing him as a guarantor for $19 million in liability stemming from the tied credit extensions, forcing him to incur legal fees and costs now. See SAC ¶¶ 4, 27, 150, 154. This direct exposure aligns with cases approving standing for guarantors who are "customers" under the BHCA.

Multiple circuits and district courts have approved standing for shareholders and guarantors where, as here, the plaintiffs suffer direct injuries as customers of the bank, particularly in closely held entities where economic realities blur corporate distinctions. For example, in *Swerdloff v. Miami National Bank*, 584 F.2d 54 (5th Cir. 1978), the Fifth Circuit held that shareholders who personally guaranteed loans had standing under § 1972, recognizing that banks could otherwise impose tying arrangements on individuals with impunity. 584 F.2d at 58-60. The court emphasized the "economic realities of ownership and control," allowing standing even though the primary borrower was the corporation. Similarly, in *Continental Illinois National Bank & Trust Co. of*

*Chicago v. Stanley*, 585 F. Supp. 1385 (N.D. Ill. 1984), the court granted standing to stockholders who were also guarantors, distinguishing from pure shareholder claims and noting their direct customer relationship with the bank. 585 F. Supp. at 1388.

The Board's breaches through self-dealing conduct authorize direct action by majority members. *In re PHC, Inc. Shareholder Litig.*, 894 F.3d 419, 435 (1st Cir. 2018); *In re Oxbow Carbon LLC Unitholder Litig.*, 2018 WL 3655257, at *6-9 (Del. Ch. Aug. 1, 2018); see also *Auriga Capital Corp. v. Gatz Props., LLC*, 59 A.3d 1206, 1213-14 (Del. 2013) (self-dealing voids actions in closely held LLCs).

BPPR attempts to distinguish several cases including *Swerdloff v. Miami National Bank*, 584 F.2d 54 (5th Cir. 1978) (involving direct injury from forced stock sale), *Costner v. Blount National Bank*, 578 F.2d 1192 (6th Cir. 1978) (involving direct debtor loss), and the *Bray* line of cases. See BPPR Memo at 7-8. These cases support Plaintiffs' position: the SAC's allegations of tying directly forced unfavorable terms on Boyd and Lassers' investments, analogous to forced sales or personal losses alleged in the distinguished cases. See SAC ¶¶ 185, 242. Under the BHCA-specific doctrine, standing requires personal injury from anti-tying conduct, not merely corporate harm. Here, Plaintiffs' pro rata damages satisfy this requirement. See 12 U.S.C. § 1975. *Costner v. Blount National Bank*, 578 F.2d 1192 (6th Cir. 1978), cited by BPPR, actually supports Plaintiffs: the Sixth Circuit affirmed liability and damages for a guarantor/dealership owner who suffered direct personal losses from forced unfavorable terms under a BHCA tying violation. 578 F.2d at 1195. Here, the SAC's allegations of tying directly forced unfavorable terms on Boyd and Lassers' investments, satisfying the BHCA's broad "any person injured" language in 12 U.S.C. § 1975. Combined with the equitable considerations under *Pagán v. Calderón*, 448 F.3d 16, 28-29 (1st

Cir. 2006), where individual standing is permitted when the corporation cannot or will not sue, Plaintiffs meet the threshold.

Puerto Rico LLC law provides additional support. Section 3965 of Title 14 of the Laws of Puerto Rico imposes fiduciary duties on LLC members and managers. The Board's breaches through self-dealing conduct authorize direct action by majority members. *In re PHC* at 435, *In re Oxbow* at 6-9.

**IV. Plaintiffs Have Adequately Pled Standing to Sue Derivatively on BGF's Behalf**

Even if direct standing fails, derivative standing applies. BPPR argues that Plaintiffs lack derivative standing under Federal Rule of Civil Procedure 23.1 because they have not pled demand or futility. *See* BPPR Memo at 9 (citing *Union de Empleados de Muelles de P.R. PRSSA Welfare Plan v. UBS Fin. Servs. Inc. of P.R.*, 704 F.3d 155, 163 (1st Cir. 2013); *Gonzalez Turul v. Rogatol Distribs., Inc.*, 951 F.2d 1, 3 (1st Cir. 1991)). Futility is evident from the Board's conflicts of interest. The Board's RICO-tainted conduct and self-dealing liquidation make demand futile. *See* Exhibit 1 at 15-17 (explaining how the Board structure prevents accountability, citing *In re PHC, Inc.* at 435.

Puerto Rico law permits derivative suits without demand when conflicts exist. *See* 14 L.P.R.A. § 4003. The SAC alleges futility through the Board's inaction regarding BPPR's breaches. *See* SAC ¶¶ 255-257. The pendent claim arises from BPPR's fiduciary role under 31 L.P.R.A. § 3374. The Board's breaches of its fiduciary duties permit this Honorable Court to authorize Plaintiffs to act because the Board refuses to do so. *See eg. Lyman-Cutler* at 416-18; *In re PHC* at 435; and *In re Oxbow* at *6-9; *see also Pagán* at 28-29.

The pendent fiduciary claim (SAC ¶¶ 255-257) under 31 L.P.R.A. § 3374 represents direct harm; supplemental jurisdiction (28 U.S.C. § 1367) allows it to go forward.

## CONCLUSION

For the foregoing reasons, Plaintiffs plead direct injuries sufficient for BHCA standing, properly allege derivative standing through demand futility, and have identified compelling grounds to deny dismissal. In the alternative, the Board of Members' self-serving actions vitiate their authority to act on behalf of the Companies, and this Court should grant Plaintiffs' request that they be authorized to act on behalf of the majority of the members. Should the Court reject the equitable relief sought, then *Pagan v. Calderon* requires that the Court allow Plaintiffs to sue on their own behalf.

**WHEREFORE,** Plaintiffs respectfully request that this Court deny Banco Popular's motion to dismiss for lack of standing.

In San Juan, Puerto Rico, this 5th day of September 2025.

Respectfully submitted,

/s/ Jane A. Becker Whitaker
**JANE A. BECKER WHITAKER**
USDC No. 205110
Attorney for Plaintiffs
P.O. Box 9023914
Urb. Baldrich, San Juan, PR 00902-3914
Tel: (787) 585-3824
Email: janebeckerwhitaker@gmail.com

/s/ Jean Paul Vissepó Garriga
**JEAN PAUL VISSEPÓ GARRIGA**
USDC No. 221504
Attorney for Plaintiffs
P.O. Box 367116

Urb. Baldrich, San Juan, PR 00936-7116
Tel: (787) 633-9601
Email: jp@vissepolaw.com

/s/ Luis E. Miñana
**LUIS E. MIÑANA, ESQ.**
USDC-PR No. 225608
Attorney for Plaintiffs
ESPADA, MIÑANA, & PEDROSA LAW OFFICES, PSC
123 Calle Manuel Domenech Altos
Urb. Baldrich, San Juan, PR 00918
Tel: (787) 758-1999
Email: minanalaw@yahoo.com

---

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I have presented the foregoing to the Clerk of the Court

for filing and uploading to the CM/ECF system, which will notify all counsel of record.


/s/ Jane A. Becker Whitaker
**JANE A. BECKER WHITAKER**