# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

GREGORY BOYD, JONATHAN LASSERS,

        Plaintiffs,

        v.

BANCO POPULAR DE PUERTO RICO,

        Defendant.

Civil Action No.:  3:24-cv-01569-PAD

Hon. Pedro A. Delgado-Hernandez

## DEFENDANT'S REPLY MEMORANDUM OF LAW
## FURTHER ADDRESSING PLAINTIFFS' LACK OF STANDING TO
## <u>BRING THE CLAIMS ASSERTED IN THE SECOND AMENDED COMPLAINT</u>

September 15, 2025

**TABLE OF CONTENTS**

*Page*

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.      Plaintiffs Have Alleged No Direct Injury ...........................................................2

II.     Plaintiffs Have Not Pled Derivative Standing ....................................................5

CONCLUSION.....................................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Continental Illinois National Bank & Trust Co. of Chicago* v. *Stanley*,
585 F. Supp. 1385 (N.D. Ill. 1984) ...................................................................................4

*Costner* v. *Blount National Bank*,
578 F.2d 1192 (6th Cir. 1978) ..........................................................................................5

*Exchange Nat'l Bank of Chicago* v. *Daniels*,
768 F.2d 140 (7th Cir. 1985) ............................................................................................3

*González-Turul* v. *Rogatol Distributors, Inc.*,
951 F.2d 1 (1st Cir. 1991) .................................................................................................6

*Guides, Ltd.* v. *Yarmouth Group Prop. Mgmt., Inc.*,
295 F.3d 1065 (10th Cir. 2002) ........................................................................................4

*Las Marías Farm Corp.* v. *Toledo Fernández*,
2009 WL 10718926 (D.P.R. Mar. 11, 2009) ....................................................................2

*Mid-State Fertilizer Co.* v. *Exchange National Bank of Chicago*,
877 F.2d 1333 (7th Cir. 1989) .......................................................................................3, 4

*Oxbow Carbon & Minerals Holdings, Inc.* v. *Crestview-Oxbow Acquisition, LLC*,
202 A.3d 482 (Del. 2019) ..................................................................................................3

*In re Oxbow Carbon LLC Unitholder Litigation*,
2018 WL 3655257 (Del. Ch. Ct. Aug. 1, 2018)............................................................3, 7

*Pagán* v. *Calderón*,
448 F.3d 16 (1st Cir. 2006)............................................................................................2, 7

*In re PHC, Inc. S'holder Litig.*,
894 F.3d 419 (1st Cir. 2018).............................................................................................7

*Rales* v. *Blasband*,
634 A.2d 927 (Del. 1993) ..................................................................................................6

*Swerdloff* v. *Miami National Bank*,
584 F.2d 54 (5th Cir. 1978) ...........................................................................................4, 5

*Union de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan* v. *UBS Fin.
Servs. Inc. of Puerto Rico*,
704 F.3d 155 (1st Cir. 2013).............................................................................................6

**Statutes**

Bank Holding Company Act of 1956, 12 U.S.C. §§ 1841–1852 (2023) (BHCA) ................ *Passim*

P.R. Laws Annot. Tit. 14 § 4005 ...................................................................................6

**Other Authorities**

Federal Rule of Civil Procedure 23.1 .......................................................................2, 5

**INTRODUCTION**

During the hearing on August 14, 2025, this Court asked the parties to file simultaneous briefs addressing the straightforward question of whether Plaintiffs Gregory Boyd and Jonathan Lassers have standing to bring the claims asserted in the SAC against BPPR[1] in their individual capacities. Since then, Plaintiffs have submitted *45 pages* of briefing ostensibly addressing the Court's question but, in reality, mostly rehashing irrelevant allegations that Plaintiffs have asserted in disputes not before this Court. Nowhere in Plaintiffs' voluminous submissions, however, do they dispute the fundamental and dispositive fact that the claims asserted in the SAC seek to recover for injuries purportedly inflicted on BGF and that allegedly affected Plaintiffs only indirectly based on their ownership interests in BGF's parent company, GFC. Plaintiffs' feeble efforts to argue that they have nonetheless suffered a direct injury are plainly without merit.

*First*, Plaintiffs' submissions make abundantly clear that they seek to recover for derivative, not direct, alleged injuries. Indeed, Plaintiffs openly admit that their claims seek as damages the alleged harm to their "investments" in GFC in the form of "pro rata damages" based on their respective ownership interests. (Dkt. No. 117 at 18.) That is the definition of a derivative injury. Although Mr. Boyd now belatedly argues that he also has been injured in his capacity as a guarantor of BPPR's loan to BGF, the SAC pleads *no* injury based on Mr. Boyd's guaranty. And this new claim of injury as a guarantor cannot be squared with Plaintiffs' theory of liability. The SAC alleges that BPPR violated the BHCA when it supposedly conditioned its extension of an additional $1 million in credit to BGF in 2022 on a favorable RLNG agreement. (Dkt. No. 57 ¶¶ 80, 130, 241, 257.) But Mr. Boyd's guaranty played no role in BPPR's loan of an additional

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in Defendants' Memorandum of Law Addressing Plaintiffs' Lack of Standing To Bring the Claims Asserted in the Second Amended Complaint. (Dkt. No. 113.)

$1 million in 2022. Mr. Boyd executed an unconditional and irrevocable guaranty of the initial loan extended back in 2020, which Plaintiffs do not and cannot allege violated the BHCA.

*Second*, Plaintiffs have not pled derivative standing—indeed, despite many opportunities, they have not even attempted to do so. Far from alleging that Plaintiffs made a demand on the GFC board or that such a demand would be futile, Plaintiffs purported to file the SAC on BGF's behalf based on a conjured assertion that they had legal authority to act for BGF directly—an assertion this Court already has rejected. But even crediting Plaintiffs' belated, half-hearted attempt now to argue that the demand requirement was excused, they have come nowhere close to satisfying their burden under Rule 23.1 to allege, in a verified complaint, particularized facts establishing that a pre-filing demand on the GFC board to bring the claims asserted in this action would have been futile.

## ARGUMENT

### I. Plaintiffs Have Alleged No Direct Injury.

Plaintiffs fail to confront blackletter law that "where, as here, the [company] incurs the only direct injury from the alleged misconduct, the [company] . . . is the only proper party to bring suit for that injury." *Pagán* v. *Calderón*, 448 F.3d 16, 29-30 (1st Cir. 2006). It is beyond dispute that an injury to an ownership interest in an LLC is derivative of the direct injury suffered by the LLC itself. *See*, *e.g.*, *Las Marías Farm Corp.* v. *Toledo Fernández*, 2009 WL 10718926, at *7 n.14 (D.P.R. Mar. 11, 2009). As Plaintiffs' brief makes clear, that is exactly what Plaintiffs allege here. (*See*, *e.g.*, Dkt. No. 117 at 16 (alleged injury from "destruction of value in [Plaintiffs'] ownership interests"), 18 (Plaintiffs seek "pro rata damages" based on their "investments" in GFC).)

Plaintiffs now argue, for the first time, that Mr. Boyd suffered a direct injury as a guarantor under the Credit Agreement because he has "incur[red] legal fees and costs" as a result of BPPR's

efforts to collect amounts owed. (*Id.* at 16.) But Mr. Boyd issued his guaranty when the $11.3 million credit facility was created back in 2020. Accordingly, Mr. Boyd was not subject to collection efforts due to the later amendment increasing the credit facility by an additional $1 million, which is the exclusive purported basis of Plaintiffs' BHCA claim here. (*See* Dkt. No. 57 ¶¶ 80, 130, 241, 257.) And an obligation to repay a loan is not an injury for purposes of the BHCA in any event. *See Exchange Nat'l Bank of Chicago* v. *Daniels,* 768 F.2d 140, 144 (7th Cir. 1985). Hence, the legal fees and costs incurred by Mr. Boyd as a result of BPPR's efforts to seek repayment of the loan cannot be considered injury for purposes of the BHCA.[2] In any event, none of the paragraphs of the SAC cited by Plaintiffs in support of this theory of standing plead that Mr. Boyd suffered a direct injury by virtue of his guaranty that relates to his claims in this case. (Dkt. No. 117 at 16 (citing Dkt. No. 57 ¶¶ 4, 27, 150, 154).) In short, Mr. Boyd's 2020 guaranty has no connection to the claims asserted in the SAC.

Accordingly, Mr. Boyd's status as a guarantor cannot serve as the basis for Mr. Boyd's belated assertion of direct injury or confer standing to sue here. In arguing otherwise, Plaintiffs rely on *In re Oxbow Carbon LLC Unitholder Litigation*, 2018 WL 3655257 (Del. Ch. Ct. Aug. 1, 2018), but that decision was vacated and involved no BHCA claim, *see Oxbow Carbon & Minerals Holdings, Inc.* v. *Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482 (Del. 2019). Nor does it remotely address guarantor standing. Moreover, courts routinely hold that guarantors cannot recover for injuries sustained by the borrower. In *Mid-State Fertilizer Co.* v. *Exchange National Bank of Chicago*, 877 F.2d 1333, 1336 (7th Cir. 1989), for example, the plaintiff-shareholders argued that they suffered direct injury as guarantors and dealt "directly with the wrongdoer." The

---

[2] Mr. Boyd's legal expenses and fees in the defense of the collection action are attributable to his decision to import controversies from other cases into the collection action and otherwise adopt a strategy of hindering and delaying resolution of the case.

Seventh Circuit rejected that argument, concluding that "direct dealing" is "not the same as direct injury." *Id*. In that case, as here, "[t]he [individual plaintiffs did] not contend that [the defendant] broke the contracts by which the [plaintiffs] guaranteed [the plaintiff-corporation's] borrowings. They say, rather, that [the defendant] violated statutory and contractual duties owed to [the plaintiff-corporation], which caused them derivative injury as guarantors." *Id*. The court therefore concluded that the individual plaintiffs had not suffered a direct injury and did not have standing to sue. *Id*. at 1336-37;[3] *see also*, *e.g.*, *Guides, Ltd.* v. *Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1073 (10th Cir 2002) (rejecting "the premise that a stockholder's status as a guarantor gives the stockholder status to assert an individual claim against a third party where that harm is derivative of that suffered by the corporation").

Plaintiffs also continue to rely heavily on *Swerdloff* v. *Miami National Bank*, 584 F.2d 54 (5th Cir. 1978). (Dkt. No. 117 at 17.) But Plaintiffs ignore that the reason the *Swerdloff* plaintiffs had standing under the BHCA was that they alleged a direct injury that Plaintiffs do not and cannot allege here. 584 F.2d at 60. The plaintiffs there alleged that the defendant-bank required them to sell the majority of their stock in the company as a condition to maintaining the company's financing arrangement. *Id.* As such, the individual shareholders, not the corporation, suffered the direct injury from the alleged BHCA violation. The Fifth Circuit thus held that "an independent claim existed in favor of the shareholders" based on this alleged direct injury, but that its "decision

---

[3] Plaintiffs cite *Continental Illinois National Bank & Trust Co. of Chicago* v. *Stanley*, 585 F. Supp. 1385 (N.D. Ill. 1984), which held that the counterclaimant had standing as a stockholder and guarantor to pursue a counterclaim under the BHCA. But the Seventh Circuit's later decision in *Mid-State Fertilizer* "disapprove[d] of *Stanley*," reiterating that "[g]uarantors must be treated as creditors" and can only "pursue their own remedies" when "they suffer direct injury." 877 F.2d at 1336.

does *not* permit a shareholder to assert a corporation's cause of action," as Plaintiffs seek to do here. *Id.*

Plaintiffs similarly mischaracterize *Costner* v. *Blount National Bank*, 578 F.2d 1192 (6th Cir. 1978). *Costner* merely held that a plaintiff who "obtained a $420,000 personal loan from the defendant bank to buy the remaining stock in [his] company" had standing to sue under the BHCA. *Id.* at 1194. But the court made clear that "[t]he injury to the [plaintiff] must be direct and not merely consequential or derivative through the corporation." *Id.* at 1195. In *Costner*, unlike here, the plaintiff alleged a direct injury by pleading that the bank "force[d] the plaintiff to sell the business to the vice president's brother for a price considerably below the fair market value of the business." *Id.* In so ruling, the Sixth Circuit distinguished the injury suffered by virtue of this forced sale from the "[d]epreciation in the value of the stock that occurred before the sale of the stock." *Id.* As the court explained, "injuries directly affecting the corporation rather than the shareholder cannot be recovered" by the shareholder. *Id.*

## II.     Plaintiffs Have Not Pled Derivative Standing.

Even though BPPR has raised the issue of standing from the outset of the case, Plaintiffs' most recent brief argues, for the first time, that Plaintiffs have standing to sue derivatively on behalf of BGF. But the SAC alleges nothing of the sort. To the contrary, the SAC attempted to plead that Plaintiffs had legal authority to act for BGF directly and purported to include BGF as a plaintiff on its own behalf. Now that the Court has rejected that claim, Plaintiffs cannot simply wave their hands and pivot to asserting derivative standing without any particularized factual allegations to support it.

Federal Rule of Civil Procedure 23.1(b) requires that a derivative complaint "must be verified" and "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members

. . . and . . . the reasons for not obtaining the action or not making the effort." Article 19.55 of the General Corporations Act, P.R. Laws Annot. Tit. 14 § 4005, similarly requires that "[i]n a derivative action, the complaint shall set forth with particularity the effort, if any, of the plaintiff to secure initiation of the action by a manager or member or the reasons for not making the effort."

Here, the SAC says not a single word about any effort by Plaintiffs to obtain the desired relief (the assertion of claims against BPPR) from GFC's board or why such a demand on the board should be excused as futile, much less plead the requisite "particularized factual allegations . . . creat[ing] a reasonable doubt that, as of the time the complaint [was] filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales* v. *Blasband*, 634 A.2d 927, 934 (Del. 1993).[4] As their sole support for derivative standing, Plaintiffs point to paragraphs 255-257 of the SAC, contending that those three paragraphs adequately "allege[] [demand] futility." (Dkt. No. 117 at 19.) But those paragraphs do not even attempt to plead demand futility. Paragraph 255 merely incorporates all the prior allegations of the SAC; Paragraph 256 then alleges that BPPR "breached the fiduciary duties" it supposedly owed Plaintiffs; and Paragraph 257 alleges that the purported tying transaction "saddled BGF with an additional $1 million in debt." None of that has anything to do with demand futility.

Plaintiffs' brief also makes vague and conclusory accusations of "self-dealing conduct" by the GFC board (*id.* at 18), but even if the Court were to consider those unpled allegations, they

---

[4] Because Puerto Rico law "does not specifically elaborate the requirements of demand or when it is excused," *González-Turul* v. *Rogatol Distributors, Inc.,* 951 F.2d 1, 3 n. 4 (1st Cir. 1991), courts look to "Delaware corporate law, on which Puerto Rico corporate law is modeled," to assess demand futility for purposes of standing in a derivative action, *Union de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan* v. *UBS Fin. Servs. Inc. of Puerto Rico*, 704 F.3d 155, 163 (1st Cir. 2013).

have no relation to the (meritless) BHCA claim.  Plaintiffs do not point to a single fact suggesting that GFC's board could not exercise its independent and disinterested business judgment in deciding whether to assert claims against BPPR.  Plaintiffs are simply trying to relitigate their failed argument that they should be allowed to control the Companies for purposes of this litigation, force Plaintiffs' attorneys upon the Companies, and involuntarily make the Companies plaintiffs in this case.  The Court already addressed that matter at the August 14, 2025 conference, denying the relief requested by Plaintiffs and ordering that Mr. Boyd's and Mr. Lassers' standing be briefed.[5]  Plaintiffs' insistence on their rejected contentions that they are able to force the Companies to become plaintiffs simply underscores their own lack of standing.

## CONCLUSION

For the foregoing reasons and those explained in BPPR's opening brief, Plaintiffs lack standing to assert the claims alleged in the SAC, and the SAC should be dismissed with prejudice.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 15th day of September 2025.

**IT IS HEREBY CERTIFIED** that on this same date, the undersigned counsel electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

---

[5] The cases Plaintiffs cite in support of their irrelevant and repetitive arguments have no relation to their standing or the issues before this Court. *See Oxbow*, 2018 WL 3655257 at *7 (appointing a monitor "to supervise the parties' compliance with the decree of specific performance"); *In re PHC, Inc. S'holder Litig.*, 894 F.3d 419, 427 (1st Cir. 2018) (minority shareholders had direct claims against controlling shareholder that undertook a "self-interested transaction"); *Pagán*, 448 F.3d at 28-29 (acknowledging possible exception when "it is absolutely inconceivable that the corporation itself would pursue a claim for the misconduct").

**SULLIVAN & CROMWELL LLP**

125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

/s/ Richard C. Pepperman II
(*Pro hac vice*)
peppermanr@sullcrom.com

/s/ Benjamin R. Walker
(*Pro hac vice*)
walkerb@sullcrom.com

/s/ Stella S. Meyer
(*Pro hac vice*)
meyerste@sullcrom.com

**PIETRANTONI MÉNDEZ & ALVAREZ LLC**

Popular Center, 19th Floor
208 Ponce de León Avenue
San Juan, Puerto Rico 00918
Telephone: (787) 773-6000
Facsimile: (787) 274-1470

/s/ María Dolores Trelles Hernández
USDC-PR Bar No. 225106
mtrelles@pmalaw.com

/s/ María Elena Martínez
USDC-PR Bar No. 305309
mmartinez@pmalaw.com

*Attorneys for Defendant*