IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **GREGORY S. BOYD;** *Et ALS.* <br> **Plaintiffs** <br><br> vs. <br><br> **BANCO POPULAR DE PUERTO RICO** <br> **Defendant** | CIVIL NÚM.: 24-cv-1569 (PAD) <br><br> ANTI TYING-12 U.S.C. § 1972 <br><br> JURY TRIAL DEMANDED |

## MOTION FOR RECONSIDERATION AND FOR LEAVE TO AMEND THE COMPLAINT

**TO THE HONORABLE COURT:**

COME NOW, the Plaintiffs, Gregory Boyd and Jonathan Lassers, individually and derivatively on behalf of Biomass Green Fuels, LLC ("BGF") and GFC Holdings, LLC ("GFC"), by and through their undersigned counsel, to respectfully ask for Reconsideration and Leave to Amend the Complaint:

**Introduction**

The Bank Holding Company Act (BHCA) anti-tying provision, codified at 12 U.S.C. § 1972, prohibits banks from engaging in certain anticompetitive tying arrangements, such as conditioning the extension of credit on the customer's purchase of additional products or services from the bank or its affiliates. Enacted in 1970 as part of the Bank Holding Company Act Amendments, this statute, designed to curb banks' use of economic leverage in credit transactions to coerce customers into unfair practices, establishes *per se* illegality for such arrangements and provides a private right of action under 12 U.S.C. § 1975 for "any person who is injured in his business or property by reason of anything forbidden in section 1972," allowing for treble damages, costs, and attorneys' fees. This broad remedial framework reflects Congress's intent to enable those directly harmed—beyond just the nominal borrower—to seek redress, ensuring robust enforcement against bank misconduct thereby protecting consumers of financial services from predatory behavior.

The unit holders in GFC Holdings, LLC—Jonathan Lassers (2.8%), John Lee Dumas (2.8%),

Gregory Boyd (17.66%), and Olmar Lopez Vidal (32.23%)—who allege financial harm from Banco Popular de Puerto Rico's purported tying violations, possess standing to sue under established legal precedent and regulatory guidance that broadly interprets "customer" status under the BHCA. Nevertheless, this Court found that the current Complaint lacks the required allegations to find that Plaintiffs Gregory Boyd and Jonathan Lassers, individually, have standing; that they have alleged that they can act derivatively on behalf of Biomass Green Fuels, LLC and GFC Holdings, LLC; or that they have the authority as the owners of more than 50% of the ownership interests pursuant to Puerto Rico corporate law.

Federal Rule of Civil Procedure 15(d) provides that "on motion and reasonable notice, the Court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. Alexander Borschow purported to hire Roberto Abesada, Esq. to "represent" the Companies by withdrawing their appearance in this case *after* Plaintiffs, including the Companies, filed their Amended Complaint. Because the hiring of Atty. Abesada occurred after the filing of the Amended Complaint, there is no reference to that *ultra vires* hiring in the Amended Complaint.   Because this Court permitted the withdrawal of the Companies' claims because Atty. Abesada's void hiring is not addressed in the Amended Complaint, this Court states in its  Opinion and Order of December 22, 2025 that "at the end of the day, the SAC does not allege any direct injury to Boyd or Lassers; and fails to adequately plead a derivative action. In that regard, Boyd and Lassers lack standing to assert anti-tying claims under the BHCA. Correspondingly, their claims must be dismissed." Id at 22, Dkt 131.  This Court made no determination as to the Companies' standing.

The proposed Third Amended Complaint addresses the illegality of Borschow, a board member of the Companies, who used his fellow board member's securities fraud to gain leverage over that board member but did not report the fraud; allowed that board member and his father  to make numerous fraudulent payments to their brother/son for construction at the biorefinery that was

not performed; to embezzle the Companies' money for personal expenses and for a competing project in the Dominican Republic; charged the Companies for consulting services that he did not perform; and voted in favor of the Companies' liquidation in exchange for money paid to his own Company, Semillero. Such is the summary of the breaches of fiduciary duty committed by Borschow.

Here, Borschow's breach of fiduciary duty nullifies his authority to hire counsel to undermine the Companies' ability to compensate for Banco Popular's violation of the Anti Tying Act. *See In re PHC Shareholder Litigation,* 894 F.3d 419 (1st Cir. 2014). In *PHC,* Bruce A. Shear maneuvered a sale of the corporation that benefited him *vis a vis* the plaintiff class, who Shear excluded from the company's management, just as Semillero and the Puerto Rico Fund for Growth did herein. *PHC* at 424-25. Exhibit 1, Third Amendment to the Operating Agreement Shear made certain that his former partner received a seat on the board of the acquiring corporation; Semillero made certain that the acquiring corporation, Semillero, had a seat on the board of GFC Holdings, LLC. The First Circuit's conclusion in *PHC* was that Shear could not reap the benefits of his unfairness. The conclusion here should be the same: this Court should refuse Borschow's attempt to nullify the Companies' rights for his own benefit.

As to unfairness, *PHC* finds that "fairness is an essential element in judicial examination in intra-corporate claims involving self-dealing." *Id.* at 431-432 (Citations omitted.) But in *PHC,* the majority of the shareholders ratified the self-interested transaction, as did the owners here. [here, all the sellers were self-dealing]. Despite the ratification, the First Circuit rejected the business judgment rule and decided to "retain the fairness standard for self-interested transactions in spite of shareholder ratification." *Id.* at 433. The *PHC* Court also gave its blessing to equitable relief in cases involving self-dealing, noting that a court faced with such a breach "has the authority to choose an appropriate remedy from the wide armamentarium of equitable remedies." *Id.* at 436. The *PHC* Court did so even though a jury held that Plaintiffs had suffered no harm. [The stock had gone up significantly subsequent to the merger.] Here, the Companies have suffered enormous harm.

4. The derivative claim

The SAC at Bar also needs to comply with FRCP 23.1 that states that "[t]he Complaint must be verified." Rule 23.1 also requires that the complaint "state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). But the SAC does not plead –let alone plead with particularity– any such elements because the conduct that takes hostage both GFC and BGF through the decisions of a conflicted Board of Directors only became evident recently when an asset liquidation and a settlement with the Bank were illegally and surreptitiously carried out. Those allegations have been added to the Proposed Third Amended Complaint. Individual Plaintiffs have verified the claim.

Although the RICO Civil action involves extensive allegations of an ongoing scheme to defraud and an enterprise that is bound to be repeated and an ongoing enterprise at that. In compliance with FRCP 15(a)(2) had added the allegations that this Court found lacking. By filing this Motion for Reconsideration, Plaintiffs are not acting in bad faith but in response to the Defendant's continuing conduct by obtained the conflicted members' assistance in dismissing this case to hide forever their violation of the Anti-Tying statute in the case at Bar, which is something that should be expected, but not allowed.

Plaintiffs adapted and amended the allegations in their Complaint to cure the deficiencies the Court identified. There is no undue delay because the proposed amendments are based on the continuing conduct of the defendant that fit their racketeering enterprise in the Civil RICO action against them and that extend the evidence of Anti-Tying violations in the case at Bar and that must be included in the Complaint in light of recent developments that have resulted in the Corporation being held hostage by a Board that is conflicted and being accused of fraud in detail and because of their ongoing conspiracy.

**Legal Argument**

**Based on the Proposed Third Amended Complant, This Court Should Reconsider Its December 22, 2026 Dismissal**

This Court has "inherent authority to reconsider, amend, and change its decisions." *In re Moncier*, No. 1:08-MC-9, 2008 WL 3981491, at *1 (E.D. Tenn. Aug. 22, 2008) (Collier, J.); see also *Johnson v. Dollar Gen. Corp.*, No. 2:06-CV-173, 2007 WL 2746952, at *2 (E.D. Tenn. Sept. 20, 2007) (Collier, J.) (granting motion for reconsideration). In this framework, a motion for reconsideration may be granted in any of three (3) situations: (1) availability of new evidence not previously available; (2) an intervening change in controlling law; and (3) the need to correct a clear error of law or to prevent manifest injustice. *Colon v. Blades* 734 F.Supp. 2d. 243, 247 (D.P.R. 2010) The Courts have ample discretion in deciding whether to grant a motion for reconsideration. *Venegas Hernandez v. Sonolux Records,* 370 F.3d 183, 190 (1st Cir. 2004)

A motion for reconsideration should "address [] only factual and legal matters that the court may have overlooked" and should not "ask the [c]ourt to rethink what it had already thought through—rightly or wrongly." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (citations and internal alterations omitted). In this Motion for Reconsideration, Plaintiffs respectfully note that it was not the Court that "overlooked" anything but rather, quite candidly, it was Plaintiffs who failed to amend their Complaint via Rule 15(d) to supplement with additional facts surrounding the invalid contracting of Atty. Abesada. All of the facts and all of the case law is on the docket, but, as this Court noted, correctly, the formality of an amendment to the complaint to supplement as to new misconduct is required.

Following that implicit instruction from this Court, Plaintiffs seek to file the attached Proposed Third Amendment. As is plain from the proposed Third Amended Complaint, the new allegations are not limited to the circumstances surrounding Atty. Abesada's hiring but are also directed towards addressing this Court's determinations regarding the derivative standing of the corporations and the standing of the individual unitholders as well.

Plaintiffs have previously argued that the term "customer" in § 1972 is deliberately undefined in the statute, requiring courts to interpret its scope based on the provision's underlying purpose and legislative history. The Senate Banking Committee Report emphasized that the anti-tying provision was intended to prevent banks from using their "economic power" to impose "anticompetitive practices which require bank customers to accept or provide some other service or product or refrain from dealing with other parties." This broad language signals Congressional intent to protect all parties economically affected by tying arrangements, not merely the nominal borrower.

Because this Court finds that: "On July 18, 2022, BPPR and BGF executed an offtake agreement under which BGF would provide BPPR with RLNG at $14/MMBtu which was less than 50% the average market RLNG price for 2022. See, *Id*., pp. 35-37; ¶¶ 132-142; and that "Another abnormally beneficial term for BPPR was that the carbon credits that BGF would obtain from producing the RLNG that would be sold to BPPR, which would normally be sold by BGF for profit, would be transferred to BPPR for seemingly no other overt consideration. See, *Id*., pp. 35 & 41-42; ¶¶ 133 & 170-175; The Third Amended Complaint is necessary as a matter of Law.

Because this Court finds that in exchange, BPPR would extend the loan, grant forbearance on defaults, and extend an additional $1MM in credit. See, *Id*., p. 7; and that "[a] week later, on July 25, 2022, BPPR and BGF executed a Third Amendment to the Credit Agreement, See, *Id*., p. 23; ¶ 80;" that […] "falsely denied or omitted that BGF was in default with BPPR as well as with the Landfill from which it would source the gas it would convert to RLNG. See, *Id*., p. 7"; and that "[m]ore important, if BGF obtained an additional $1.5 million in equity investment, BPPR would give to BGF benefits amounting to over $3MM. See, *Id*., p. 36; ¶ 136. And the Amendment extended the completion date of the biorefinery and allowed BPPR to pay itself interest with loan proceeds. See, *Id*., pp. 38-40; ¶¶ 148-160." At pages 5-6 *Id*. The Third Amended Complaint has to be allowed.

Plaintiffs respectfully disagree with the Court's ruling on Plaintiffs lack of standing and whether Plaintiffs have plead futility to authorize their derivative actions on behalf of GFC and BGF.

However, mere disagreement with a court's conclusions on an issue of law cannot support a motion for reconsideration. See *United States v. Jarnigan*, No. 3:08-CR-7, 2008 WL 5248172, at *5 (E.D. Tenn. Dec. 17, 2008). For this reason, Plaintiffs have limited their reconsideration request to the issue identified above, which is based on "a clear error of law" and is necessary "to prevent manifest injustice." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir.2005)).

Plaintiffs respectfully submit that if Congress were presented with the situation where a bank sought to purchase immunity from liability under the Bank Holdings Act by purchasing a release from conflicted board managers via an unqualified assignee, which also a conflicted insider, Congress would reject such perfidy. This Court should reject it as well. With the procedural step of presenting the adequate allegations as to the conflict of interest and the disqualification of Atty. Abesada squarely before this Court, Plaintiffs ask this Court to reject this conduct.

Plaintiff have argued that Regulatory guidance from the Federal Reserve Board confirms this expansive interpretation as to the original Plaintiffs' standing, aligning with the statute's purpose to prevent coercive tying without requiring proof of market power or explicit coercion. The Board's 2003 interpretation of § 106 highlights that anti-tying restrictions apply to arrangements where banks condition credit on additional requirements, and that "customers" include those affected by such conditions in lending contexts. Plaintiffs have cited Naegele's seminal article which echoes this regulatory intent, arguing that the provision was crafted to extend protections to individuals like guarantors and shareholders who bear the financial brunt of tying, preventing banks from exploiting entity structures to evade liability. For LLC unit holders, whose economic interests mirror shareholders' stakes, this reasoning applies directly: LLC members have immediate economic ties to the entity's dealings, especially when harmed by tying violations that diminish unit value and/or imposes personal obligations.

Federal courts have consistently recognized standing for individuals in positions analogous

to the GFC unit holders. Importantly, no post-1996 cases through 2025 contradict this precedent, leaving these foundational decisions as authoritative guidance. Plaintiffs cited *Swerdloff v. Miami National Bank*, 584 F.2d 54 (5th Cir. 1978) as the foundational case establishing that individual shareholders and guarantors possess customer status under § 1975. Critically, the Fifth Circuit held that "any injury to the Swerdloffs, the bank's customers, could be redressed under Sec. 1975, whether or not there had been damage to the corporation." This language directly supports standing for unit holders who suffer economic harm independent of any injury to the LLC itself. And here there was harm to the LLC.

Jonathan Lassers (2.8%) and John Lee Dumas (2.8%) possess standing based on their unit ownership's economic equivalence to shareholding, as recognized in *Johnstone*'s trust analogy and reinforced by regulatory emphasis on transactional economic realities. Their alleged financial harm—including diminished unit value resulting from the tying arrangement—constitutes concrete injury under § 1975. Gregory Boyd (17.66%) and Olmar Lopez Vidal (32.23%) possess even stronger standing as personal guarantors. Federal Reserve guidance specifically treats guarantors as integral participants in credit extensions, often requiring their direct involvement in credit arrangements. As guarantors, Boyd and Vidal assume personal liability and suffer direct harm from coercive tying arrangements that may impair the LLC's ability to service debt or that force them to provide additional guarantees or services. Their substantial ownership stakes (17.66% and 32.23% respectively) further amplify their economic exposure and strengthen their customer status, as they bear disproportionate risk from any tying-related harm to the LLC's financial position.

Plaintiffs have warned that denying standing to unit holders would substantially undermine the BHCA's enforcement mechanism. As Naegele's analysis demonstrates, the provision was designed to provide robust private enforcement against bank tying practices. Limiting standing to nominal borrowers would allow banks to evade liability by structuring transactions through entities while imposing tying requirements on the beneficial owners who bear the economic risk. Restricting

standing to the formal borrower would also create perverse incentives for banks to exploit entity structures to impose tying requirements on beneficial owners while insulating themselves from private enforcement actions. If this Court's decision were to stand as is, other banks would be incentivized to conduct business as Banco Popular has here, flouting the BHCA's mission by immunizing itself through payoffs to conflicted insiders

Under the proposed Third  Amended Complaint GFC Holdings, LLC unit holders possess standing to sue Banco Popular de Puerto Rico under § 1972 based on: (1) their status as "customers" under the expansive interpretation established by *Swerdloff* and its progeny; (2) Federal Reserve guidance recognizing broad customer definitions; (3) Timothy D. Naegele's authoritative analysis of the provision's scope; and (4) the economic realities test that focuses on substance over form and because the Third Amended Complaint provides proof that they adequately pleaded demand futility and allegations of direct injury to Boyd and Lassers; and adequately pleads a derivative action..

For non-guarantor unit holders Lassers and Dumas, standing derives from their direct economic stake in the LLC analogous to the trust beneficiaries in *Johnstone*. For guarantor unit holders Boyd and Vidal, standing is firmly established under multiple precedents recognizing guarantors as customers with direct economic exposure to tying arrangements.

Denying standing would contravene the BHCA's remedial purpose and Congressional intent to provide broad private enforcement against bank tying practices. The unit holders' economic injuries from Banco Popular's alleged tying violations satisfy both the statutory requirements of § 1975 and the standing principles established in federal case law.

The liberal standard established in *Foman v. Davis*, 371 U.S. 178 (1962), favors amendments unless there is evidence of bad fait, undue delay, or futility. If the amendment is based on "good cause," such as newly discovered facts or developments that were unavailable when the original complaint was filed it would be prejudicial and against the legislative intent of Civil RICO to have another level of interdiction other than the strained Department of Justice resources.

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a Complaint should be "freely given," where "justice so provides." In *Nikitine v. Wilmington Trust Co.,* 715 F.3d 388, 390 (1st Cir. 2013), those broad terms are limited by the requisites that the request for leave not be done in bad faith or after undue delay. The amendment will not cause undue delay or prejudice to the opposing party.

In view of the discovery of new facts, Plaintiff first became aware of Defendants' attempts to derail the prosecution of the RICO complaint and to thwart the interdiction of Defendant BPPR Anti-Tying violations when GFC's and BGF's purported new legal representation made an appearance in both cases. Recent events, subsequent to the filing of the original Complaint and the Second Amended Complaint, which directly impact the claims in this litigation, make it necessary for this Honorable Court to accept this proposed Third Amended Complaint. These new developments are indispensable to the case because they establish the necessary element of intent, and expand the scope of damages. Plaintiffs have acted with due diligence by seeking leave to amend promptly. The proposed amendments do not introduce entirely unrelated causes of action, nor do they require a complete restart of discovery because discovery has not begun yet. Allowing this amendment now will promote judicial economy by resolving all related claims in a single proceeding.

For these reasons, plaintiffs ask this Honorable Court to authorize the Third Amended Complaint, not having initiated discovery in this case, we do not foresee any prejudice to befall on any of the parties nor to the Court.

**WHEREFORE**, the appearing Plaintiffs respectfully request the Honorable Court to take notice of the above reasons to grant them leave to file the proposed Third Amended Complaint and to hold in abeyance the Court's decision on permitting plaintiffs to be the actual and proper legal representatives of GFC and BGF derivatively.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 20th day of January 2026.

/s/ Jane A. Becker Whitaker

JANE A. BECKER WHITAKER
USDC No. 205110
P.O. Box 9023914
Urb. Baldrich, San Juan, PR 00902-3914
Tel: (787) 585-3824
Email: janebeckerwhitaker@gmail.com

/s/ Jean Paul Vissepó Garriga
JEAN PAUL VISSEPÓ GARRIGA
USDC No. 221504
P.O. Box 367116
Urb. Baldrich, San Juan, PR 00936-7116
Tel: (787) 633-9601
Email: jp@vissepolaw.com

/s/ Luis E. Miñana
LUIS E. MIÑANA, ESQ.
USDC-PR No. 225608
ESPADA, MIÑANA, & PEDROSA LAW OFFICES, PSC
123 Calle Manuel Domenech Altos
Urb. Baldrich, San Juan, PR 00918
Email: minanalaw@yahoo.com
Tel: (787) 758-1999

**CERTIFICATE OF SERVICE**

I  hereby certify that on this date, we have presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, which will notify all counsel of record.

/s/ Jane A. Becker Whitaker
JANE A. BECKER WHITAKER