# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

GREGORY S. BOYD; *Et Als.*

Plaintiffs,

v.

BANCO POPULAR DE PUERTO RICO

Defendant

Civil No. 3:24-cv-01569 (PAD)

ANTI-TYING – 12 U.S.C. § 1972

JURY TRIAL DEMANDED

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO
MOTION FOR RECONSIDERATION AND FOR LEAVE TO AMEND**

**TABLE OF CONTENTS**

I. THE MOTION IS TIMELY ............................................................................................4

II. PLAINTIFFS PRESENT NEW EVIDENCE NOT PREVIOUSLY AVAILABLE .................4

    A. The Ultra Vires Hiring of Attorney Abesada........................................................5

    B. The July 18–20, 2022 Three-Day Tying Sequence Documents ...........................5

    C. The Asset Acquisition Agreement and Board Self-Dealing ...............................6

III. THE PROPOSED TAC ESTABLISHES DIRECT INJURY TO BOYD AND LASSERS .....6

    A. BPPR Never Addresses *Swerdloff*—A Fatal Omission......................................7

    B. Boyd's Direct Injuries Are Independent of Corporate Harm...............................7

    C. Lassers' Direct Injuries ......................................................................................9

    D. BPPR's *Mid-State* Reliance Is Misplaced .........................................................10

IV. PLAINTIFFS HAVE AUTHORITY TO DIRECT BGF'S AND GFC'S CLAIMS ..............11

V. THE PROPOSED TAC ESTABLISHES DEMAND FUTILITY WITH PARTICULARITY ....................................................................................................................................12

    A. The *Zuckerberg* Framework ..............................................................................12

    B. Every Board Member Satisfies All Three Prongs...............................................12

    C. BPPR Ignores the First Circuit's *PHC* Standard .............................................14

VI. THE PROPOSED TAC STATES A VALID BHCA CLAIM .............................................15

VII. THE PROPOSED TAC DOES NOT DISTURB SUPPLEMENTAL JURISDICTION RULINGS .........................................................................................................................16

VIII. THE PROPOSED AMENDMENT IS NOT FUTILE AND SHOULD BE PERMITTED .17

IX. BPPR'S POSITION IS INTERNALLY CONTRADICTORY.............................................18

X. BPPR FAILS TO ADDRESS PLAINTIFFS' STRONGEST AUTHORITIES .......................19

CONCLUSION.......................................................................................................................20

**TABLE OF AUTHORITIES**

Cases

Amerifirst Props., Inc. v. FDIC, 880 F.2d 821 (5th Cir. 1989) ...................................... 16

Banister v. Davis, 590 U.S. 504 (2020) ................................................................... 4

Colón v. Blades, 734 F. Supp. 2d 243 (D.P.R. 2010) ................................................. 4

Cont'l Ill. Nat'l Bank & Trust Co. v. Stanley, 585 F. Supp. 1385 (N.D. Ill. 1984) ..................... 10

Costner v. Blount Nat'l Bank, 578 F.2d 1192 (6th Cir. 1978) ......................................... 10

Dibidale of La., Inc. v. Am. Bank & Trust Co., 916 F.2d 300 (5th Cir. 1990) ......................... 6

Foman v. Davis, 371 U.S. 178 (1962) ................................................................... 17

Glassman v. Computervision Corp., 90 F.3d 617 (1st Cir. 1996) ...................................... 18

In re Fox Corp. Derivative Litig., C.A. No. 2023-0418-JTL (Del. Ch. 2023) ............................ 13

In re PHC S'holder Litig., 894 F.3d 419 (1st Cir. 2018) ............................................... 5

Johnstone v. First Bank Sys., Inc., 947 F. Supp. 1220 (N.D. Ill. 1996) ............................... 9

Mid-State Fertilizer Co. v. Exch. Nat'l Bank, 877 F.2d 1333 (7th Cir. 1989) .......................... 6

Nikitine v. Wilmington Trust Co., 715 F.3d 388 (1st Cir. 2013) ...................................... 17

Pagán v. Calderón, 448 F.3d 16 (1st Cir. 2006) ....................................................... 9

S & N Equip. Co. v. Casa Grande Cotton Fin. Co., 97 F.3d 337 (9th Cir. 1996) ........................ 16

Swerdloff v. Miami Nat'l Bank, 584 F.2d 54 (5th Cir. 1978) .......................................... 7

Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004) ............................. 9

United Food & Com. Workers Union v. Zuckerberg, 262 A.3d 1034 (Del. 2021) ...................... 12


Statutes

12 U.S.C. § 1972 ....................................................................................... 1

12 U.S.C. § 1975 ....................................................................................... 7

14 L.P.R.A. § 3965 .................................................................................... 11

14 L.P.R.A. § 3994 .................................................................................... 11

14 L.P.R.A. § 4003 .................................................................................... 11

28 U.S.C. § 1331 ...................................................................................... 16

**Rules**

Other Authorities

Fed. R. Civ. P. 15(d) .................................................................................. 5

Fed. R. Civ. P. 23.1 ................................................................................... 17

Fed. R. Civ. P. 59(e) .................................................................................. 4

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs Gregory Boyd and Jonathan Lassers, individually and derivatively on behalf of Biomass Green Fuels, LLC ("BGF") and GFC Holdings, LLC ("GFC"), and respectfully state and pray:

## I. THE MOTION IS TIMELY

BPPR argues that Plaintiffs' Motion is untimely because it was filed on "the last possible day" before the Rule 59(e) deadline lapsed. (Dkt. 141, p. 5.) This argument refutes itself. Filing within the 28-day window established by Rule 59(e) is, by definition, timely. The Rule provides a deadline, not a preference for early filing. *Banister v. Davis*, 590 U.S. 504, 508 (2020) ("A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment."). Plaintiffs filed their Motion on January 20, 2026—within 28 days of the December 22, 2025, judgment. The motion is timely as a matter of law.

Moreover, the First Circuit has never imposed a "filed earlier is better" standard for Rule 59(e) motions. The deadline exists precisely so that litigants may use the full period to evaluate a ruling and prepare a considered response. BPPR cites no authority for the proposition that a timely filing should be treated with suspicion merely because it used the available time. This argument should be disregarded.

## II. PLAINTIFFS PRESENT NEW EVIDENCE NOT PREVIOUSLY AVAILABLE

BPPR asserts that Plaintiffs have not presented new evidence. (Dkt. 141, pp. 7–8.) This is factually wrong. Under *Colón v. Blades*, 734 F. Supp. 2d 243, 247 (D.P.R. 2010), reconsideration

is warranted upon "(1) availability of new evidence not previously available." Plaintiffs have presented precisely that.

**A. The Ultra Vires Hiring of Attorney Abesada**

Alexander Borschow purported to hire Roberto Abesada, Esq. to "represent" the Companies by withdrawing their appearance in this case *after* Plaintiffs filed the Second Amended Complaint. This event could not have been included in the Second Amended Complaint because it had not yet occurred. It is the paradigmatic case for supplementation under Rule 15(d), which permits pleading of "any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).(Emphasis added.)

BPPR's Opposition never addresses whether the Abesada hiring constitutes "new evidence." It does not explain how Plaintiffs could have pleaded a post-filing event in a pre-filing complaint. This silence is telling. Under *In re PHC Shareholder Litigation*, 894 F.3d 419 (1st Cir. 2018), a board member who breaches fiduciary duties cannot bind the corporation through the hiring of counsel to undermine its claims. Borschow's self-dealing—including his receipt of $1,403,071 from the Asset Acquisition Agreement through Semillero, his embezzlement, his fraudulent consulting charges, and his vote to liquidate in exchange for personal payment—nullifies his authority to hire Abesada. The hiring is new evidence of ongoing misconduct that occurred only after the SAC was filed.

**B. The July 18–20, 2022 Three-Day Tying Sequence Documents**

BPPR claims the draft Third Amendment of July 19, 2022, and Drawdown Certificate #17 of July 20, 2022, were "previously available." (Dkt. 141, p. 8.) This mischaracterizes their significance. Previously, Plaintiffs had only the *signed* Offtake Agreement dated July 18, 2022,

and the signed Third Amendment from July 26, 2022. The *drafts* showing that PMA provided the Third Amendment to BGF one day after the tied Offtake was signed by BPPR CEO Ignacio Alvarez, and that Drawdown 17 for $843,257.10 was provided the very next day, establish the temporal proximity that demonstrates conditioning under *"le of Louisiana, Inc. v. American Bank & Trust Co.*, 916 F.2d 300 (5th Cir. 1990). The three-day sequence—Offtake (July 18) → Draft Amendment (July 19) → Drawdown (July 20)—is the smoking gun of *per se* tying, and this evidence was not previously in the record in this form because Plaintiffs only received it after filing the Second Amended Complaint from the settlement with Olmar Lopez Vidal.

**C. The Asset Acquisition Agreement and Board Self-Dealing**

The January 31, 2025, executed Asset Acquisition Agreement ("AAA"), obtained after the SAC was filed, transferred $300M+ in corporate assets to Humacao RNG, LLC (80% owned by VRM Penzini) for $4.4M. This transaction included payments to every Board member: Semillero ($1,403,071), CDVCA ($208,576), PRFG ($528,526), López Gómez ($230,804). Section 3.6(c) of the AAA notably purported to release BPPR from all anti-tying liability. This is new evidence of the Board's self-dealing and BPPR's complicity in purchasing immunity from conflicted insiders—was evidence that did not exist when the SAC was filed. This evidence was also received from Lopez Vidal's settlement.

**III. THE PROPOSED TAC ESTABLISHES DIRECT INJURY TO BOYD AND LASSERS**

BPPR's standing argument rests almost entirely on *Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333 (7th Cir. 1989), for the proposition that shareholder injuries from bank tying are always derivative. (Dkt. 141 at [ 11–12.) But BPPR commits a critical error: it treats

Mid-State as if it established a categorical rule that shareholders can *never* assert direct anti-tying claims. Mid-State held only that where injuries flow *entirely through* the corporate entity, the claim is derivative. Boyd's injuries do not.

**A. BPPR Never Addresses *Swerdloff***

BPPR's Opposition is entirely silent on *Swerdloff v. Miami National Bank*, 584 F.2d 54 (5th Cir. 1978), the foundational case establishing that individual shareholders and guarantors possess customer status under § 1975. The Fifth Circuit held that "any injury to the Swerdloffs, the bank's customers, could be redressed under Sec. 1975, *whether or not there had been damage to the corporation*." *Id.* at 60 (emphasis added). This directly refutes BPPR's position that all of Boyd's and Lassers' injuries are derivative. BPPR's failure to even cite, let alone distinguish, *Swerdloff* is a concession that this authority is unanswerable. Moreover, if the damages are derivative, Plaintiffs seek to sue derivatively in the Third Amended Complaint.

**B. Boyd's Direct Injuries Are Independent of Corporate Harm**

The proposed TAC establishes eight categories of direct injury to Boyd that are personal and independent of any injury to the corporate entities:

1. **Collection Lawsuit (Case SJ2024CV04616):** BPPR sued Boyd personally for $12.1 million. This is not an injury that "flows through" the corporate entity. It is a direct personal liability imposed on Boyd individually. BPPR's own collection action against Boyd personally establishes direct injury beyond any reasonable dispute.

2. **Guaranty Expanded Without Consent:** Boyd guaranteed $11.8M under the original Credit Agreement and signed only Amendment 1. BPPR then executed Amendments 2–7, expanding the credit facility to $12,869,250 and materially altering Boyd's guaranty obligations—without Boyd's signature on any of those six amendments. Boyd delivered written objections on November 16 and December 30, 2022. BPPR ignored these objections and the bank's attorney emailed him not to contact bank personnel due to the litigation. The exact point Boyd made in his letters. The Credit Amendments written by that very attorney that denied the existence of the litigation.

3. **Credit Damage:** Boyd's credit has been damaged by BPPR's collection lawsuit, preventing him from obtaining financing for subsequent business ventures.

4. **Lost Management Fees and Distributions:** Boyd was entitled to a management salary and benefits for five years and distributions as a 17.66% owner, which are impossible due to BPPR's tying arrangement that destroyed BGF's revenue stream and eventually BGF itself.

5. **Pro Rata Share of Below-Market Offtake:** Boyd's 17.66% pro rata share of the difference between the $14/MMBtu tied price and the $28.21/MMBtu market price over the 31-year offtake term amounts to tens of millions of dollars in direct injury.

6. **Loss from Failure to pursue Claim:** Under the terms of their own loan, the Bond should have been for not less than 100% of the direct costs of the project,

or $18,679,651. BPPR represented it as sufficient at $5,000,000 and falsely a closing cost for BGF. Because of the fraud, risk of exposure from independent investigation, and the potential for loss of the tied contract, BPPR and GFC Holdings' Board are unwilling and unable to claim on this Bond, leading to BGF's collapse and the perpetuation of their frauds.

7. **Ownership Rendered Worthless:** Boyd's ownership interest has been rendered valueless by the illegal AAA liquidation which sought to conceal and indemnify BPPR's tying arrangement, while selling for $4.4M of assets worth $300M+.

These injuries satisfy the *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004), direct injury test: (1) Boyd suffered injuries not dependent on injury to the corporation (the collection lawsuit and guaranty expansion exist regardless of any corporate harm), and (2) any recovery would go directly to Boyd. They also satisfy the "peculiar injury" test of *Pagán v. Calderón*, 448 F.3d 16, 28 (1st Cir. 2006), because Boyd is the *only* GFC member who executed a personal guaranty, was sued for collection, delivered written objections, and received no payments from the AAA—while conflicted Board members received over $2.4 million combined in return for not agreeing not to expose the tying arrangement with BPPR.

## C. Lassers' Direct Injuries

Lassers lost his investment and suffered reputational harm due to the concealment of the tying agreement, and his ownership interest has been rendered valueless along with the Companies' collapse. Under *Swerdloff* and *Johnstone v. First Bank System, Inc.*, 947 F. Supp. 1220 (N.D. Ill.

1996), unit holders' economic interests are analogous to shareholders' stakes, and ownership alone creates the requisite direct relationship with the bank's credit decisions when the owner is directly affected by the tying violation. *Johnstone* states, "the Seventh Circuit, interpreting *Swerdloff,* says that <u>no unyielding rule confines recovery under the bank tying laws to the bank's customer</u>." *Id.* at 1224, *citing Mid-state* at 1336. (Emphasis added.)

### D. BPPR's *Mid-State* Reliance Is Misplaced

Unlike *Mid-State*, where the plaintiff's injuries flowed entirely through the corporate entity, Boyd's injuries are personal and independent. In *Mid-State*, the defendant bank conditioned a financing arrangement with a company on the plaintiffs personally selling 15% of their shares to another bank customer. *Id.* at 1335. The court held that the shareholders' injury—diminished stock value—was derivative. But the court never held that a collection lawsuit against the shareholder personally, or the alteration of a personal guaranty without consent, would be derivative. Those are precisely the injuries Boyd alleges. In *Costner v. Blount National Bank*, 578 F.2d 1192 (6th Cir. 1978), the Sixth Circuit affirmed a shareholder's recovery for direct injury from a tying arrangement. "The plaintiff's theory of causation and damage was that the tying arrangement increased the costs of doing business and that this fact, among others, led to the decline of the business. The decline of the business in turn put the bank in a position to call the personal loan and to force the plaintiff to sell the business to the vice president's brother for a price considerably below the price at fair market value of the business." *Id* at 1194-95. The Court of Appeals affirmed the jury verdict. In *Continental Illinois National Bank & Trust Co. of Chicago v. Stanley*, 585 F. Supp. 1385, 1388 (N.D. Ill. 1984), the court held that "Stanley as a stockholder and guarantor has standing to pursue his counterclaim under the

BHCA," explicitly agreeing with the holding in *Swerdloff.*[1] These cases confirm what *Swerdloff* established: guarantors and shareholders who suffer direct personal harm from tying arrangements, as did Boyd, have standing under § 1975.

### IV. PLAINTIFFS HAVE AUTHORITY TO DIRECT BGF'S AND GFC'S CLAIMS

BPPR argues that Plaintiffs lack authority to direct the Companies' litigation. (Dkt. 141, pp. 13–14.) This ignores the proposed TAC's comprehensive allegations establishing majority control.

Plaintiffs hold 55.493% of the voting units of GFC through the Irrevocable Proxy executed by López Vidal on June 2, 2025, coupled with the Settlement Agreement dated May 27, 2025. Under Section 3.2 of the Operating Agreement, Plaintiffs have authority to act by written consent via "Majority Approval of the Members." The Second Amendment eliminated the separate Series A voting requirement. Under 14 L.P.R.A. § 3994, member consent can override management action. Under 14 L.P.R.A. § 4003, members may act when managers refuse due to conflicts.

The Board's approval of the Asset Acquisition Agreement was void *ab initio* under Sections 6.4 and 9.1 of the Operating Agreement. Section 9.1 requires unanimous member consent for dissolution, liquidation, or winding up—none was obtained. Section 6.4 prohibits the Board from liquidating without member consent. The AAA was also *ultra vires* under 14 L.P.R.A. § 3965 because the Board's breach of non-waivable fiduciary duties stripped its delegated authority. Accordingly, the purported releases of BPPR in AAA § 3.6(c) are void, and Plaintiffs' anti-tying claims are fully preserved.

---

[1] *Mid-State supra* limited *Continental Illinois* to stakeholder that suffered injuries independent from those of the customer.

BPPR's Opposition offers no analysis of Puerto Rico LLC law, no discussion of whether 55% majority unitholders have override authority, and no authority contradicting majority-owner control. Its silence confirms that no contrary authority exists.

## V. THE PROPOSED TAC ESTABLISHES DEMAND FUTILITY WITH PARTICULARITY

BPPR claims that the proposed TAC's demand futility allegations are insufficient. (Dkt. 141, pp. 15–17.) This ignores the detailed director-by-director analysis included in the TAC under the *Zuckerberg* three-prong test.

### A. The *Zuckerberg* Framework

Under *United Food & Commercial Workers Union v. Zuckerberg*, 262 A.3d 1034, 1048–49 (Del. 2021), demand futility is evaluated director-by-director, asking whether each director: (1) received a material personal benefit from the challenged transaction; (2) faces a substantial likelihood of liability; or (3) lacks independence from someone who received a material personal benefit or faces substantial liability. Puerto Rico courts should apply *Zuckerberg* because Puerto Rico's General Corporations Act of 2015 explicitly modeled itself after the Delaware General Corporation Law, and its Statement of Motives stating, "which state is known as being in the forefront in the corporations field."

### B. Every Board Member Satisfies All Three Prongs

**Borschow (Semillero):** (1) Semillero received $1,403,071 from the Asset Acquisition Agreement (material benefit); (2) he faces substantial liability for approving a self-dealing liquidation without independent valuation, voting to pay $4.4M directly to insiders while leaving

common unitholders with nothing (liability); (3) he signed alongside insider VRM-Penzini who paid him directly, establishing financial entanglement (lack of independence). Borschow had also sued Olmar Lopez Gomez and Olmar Lopez Vidal with VRM, and, with VRM, dismissed Lopez Gomez.

**Villarini (CDVCA/PRFG):** (1) CDVCA received $208,576 and PRFG received $528,526, combined $737,102 (material benefit); (2) he faces liability for breaching his duty to common unitholders by approving a transaction directly paying insiders with no accounting or formal process, while leaving common unitholders with nothing, and he resigned immediately after the AAA demonstrating consciousness of wrongdoing (liability); (3) as signatory to the AAA he committed to insider VRM-Penzini's acquisition plan (lack of independence).

**López Gómez:** (1) Received $230,804 directly from the AAA (material benefit); (2) he faces liability for breaching his duty to common unitholders by approving a transaction directly paying insiders with no accounting or formal process, while leaving common unitholders with nothing, and he resigned immediately after the AAA demonstrating consciousness of wrongdoing (liability); (3) as signatory to the AAA he committed to insider VRM-Penzini's acquisition plan (lack of independence)

BPPR's Opposition characterizes these illegal payments as mere consideration under the AAA rather than disabling conflicts. This argument collapses under its own weight. Under *Zuckerberg*, the question is not whether the payment was "part of a transaction" but whether the director received a "material personal benefit from the challenged transaction." 262 A.3d at 1059. Here, every Board member voted to approve a transaction from which they personally profited—that is the textbook definition of a material personal benefit. See *In re Fox Corp. Derivative Litigation*,

C.A. No. 2023-0418-JTL (Del. Ch. 2023), which provides the following analysis: "When conducting a demand-futility analysis, the court asks whether the board in place when the complaint was filed had a majority of directors who could make an independent and disinterested decision about whether to assert the claims articulated in the complaint." The Court continues: "The analysis proceeds on a claim-by-claim and director-by-director basis. As to each claim, the court imagines that the plaintiff made a demand on the board to assert that claim. The court then asks for each director:

> (i) Did the director receive a material personal benefit from the alleged misconduct that is the subject of the claim?
> (ii) Does the director face a substantial likelihood of liability on the claim?
> (iii) Does the director lack independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the claim or who would face a substantial likelihood of liability on the claim?

The Chancery Court concluded, "If the answer to any of the questions is "yes," then that director is disqualified for purposes of the Rule 23.1 analysis of that claim. If the answer to any of the questions is "yes" for at least half of the members of the demand board, then the plaintiff has standing to assert that claim." Plaintiffs here have standing because Borschow benefits materially from dismissing this case, and he faces substantial liability on the RICO claim. Borschow hired Abesada, purportedly to represent the Companies, but in fact for his own benefit. Borschow appointed the other board member who voted to hire Abesada. As for the Asset Acquisition Agreement, each and every board member who voted for it meets the criteria for demand futility.

### C. BPPR Ignores the First Circuit's *PHC* Standard

BPPR's Opposition is entirely silent on *In re PHC Shareholder Litigation*, 894 F.3d 419 (1st Cir. 2018)—binding First Circuit precedent directly on point. In *PHC*, the First Circuit held that

"fairness is an essential element in judicial examination in intra-corporate claims involving self-dealing" and applied the entire fairness standard *despite shareholder ratification*. *Id.* at 431–33. The Court held that a self-dealing fiduciary "could not reap the benefits of his unfairness" and endorsed the full "armamentarium of equitable remedies." *Id.* at 436. *PHC* controls here: Borschow's self-dealing mirrors the conduct in *PHC*, and BPPR's failure to even cite this binding precedent is dispositive.

### VI. THE PROPOSED TAC STATES A VALID BHCA CLAIM

BPPR argues the TAC still fails to state a BHCA claim. (Dkt. 141, pp. 17–18.) This ignores the *per se* nature of the anti-tying prohibition and the factual record this Court has already acknowledged.

The Court's own December 22, 2025 Opinion states that the Second Amended Complaint alleges: (1) "On July 18, 2022, BPPR and BGF executed an offtake agreement under which BGF would provide BPPR with RLNG at $14/MMBtu which was less than 50% the average market RLNG price for 2022"; (2) BPPR obtained carbon credits "that would normally be sold by BGF for profit" for "seemingly no other overt consideration"; (3) "a week later" BPPR executed the Third Amendment extending the loan, granting forbearance, and providing an additional $1MM in credit; and (4) the Amendment "falsely denied or omitted that BGF was in default." This summary of the allegations, combined with the newly produced three-day sequence (July 18–20, 2022), establish conditioning as a matter of law under *Dibidale of Louisiana, Inc. v. American Bank & Trust Co.*, 916 F.2d 300, 305–06 (5th Cir. 1990).

Under *Dibidale*, anti-tying violations are *per se* illegal. No market power, no anti-competitive effect, and no coercion need be alleged. Based on that determination, the Court of Appeals reversed

the District Court's grant of summary judgment. *Id.* at 302. The statute's plain language prohibits conditioning credit on acceptance of tied products. *Id. s, ee also S & N Equipment Co. v. Casa Grande Cotton Finance Co.*, 97 F.3d 337, 346 (9th Cir. 1996); *Costner v. Blount National Bank*, 578 F.2d 1192, 1197 (6th Cir. 1978). BPPR's defense that the Offtake Agreement was "voluntary" is foreclosed as a matter of law.

The five elements of a § 1972 violation are satisfied: (1) BPPR is a bank (undisputed); (2) BPPR extended credit to BGF ($19M Credit Agreement); (3) BPPR conditioned forbearance and additional credit on BGF's execution of the below-market Offtake Agreement; (4) the Offtake Agreement at $14/MMBtu—less than 50% of the $28.21 DOE market price—plus the gratuitous transfer of all carbon and environmental credits constitutes the tied product; (5) BPPR benefited by receiving RLNG at half-price and carbon credits worth tens of millions. Under *Amerifirst Properties, Inc. v. FDIC*, 880 F.2d 821, 825 (5th Cir. 1989), a bank's *promise* alone creates liability under § 1972—fulfillment is not required. *Amerifirst* also supports Plaintiffs' contention that owners of a borrower who have privity of contract with the bank – as Boyd does via his guarantee – have standing to sue. *Id.* at 825-26.

## VII. THE PROPOSED TAC DOES NOT DISTURB SUPPLEMENTAL JURISDICTION RULINGS

BPPR argues the proposed TAC does not disturb the Court's decision to decline supplemental jurisdiction over state-law claims. (Dkt. 141, p. 9.) Plaintiffs do not challenge that ruling. The proposed TAC is brought exclusively under federal law—12 U.S.C. § 1972—and this Court has original jurisdiction under 28 U.S.C. § 1331. The state-law claims remain in the companion RICO action (Civil No. 3:22-cv-01190).

## VIII. THE PROPOSED AMENDMENT IS NOT FUTILE AND SHOULD BE PERMITTED

BPPR argues the proposed TAC is futile. Under *Foman v. Davis*, 371 U.S. 178, 182 (1962), leave to amend should be "freely given" unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.* The First Circuit confirmed this in *Nikitine v. Wilmington Trust Co.*, 715 F.3d 388, 390 (1st Cir. 2013), holding, furthermore that "[e]verything depends on context." *Id.* None of these conditions applies here:

**No Undue Delay:** The Motion was filed within 28 days of dismissal in direct response to the Court's December 22, 2025, Order. The proposed amendments address the precise deficiencies the Court identified. There is no scheduling order.

**No Bad Faith:** Plaintiffs are not rehashing rejected arguments. They are supplementing with post-filing events (Abesada hiring by conflicted Board of Managers and information received pursuant to a settlement agreement) and curing pleading deficiencies the Court identified (direct injury allegations, demand futility particularity, Rule 23.1 verification).

**No Prejudice to BPPR:** Discovery has not begun. BPPR has offered no showing of prejudice from the amendment. The Claims arise from the same core conduct. Amendment promotes judicial economy by resolving all claims in a single proceeding.

**Not Futile:** As demonstrated above, the proposed TAC cures each deficiency the Court identified: it alleges direct injury to Boyd and Lassers with specificity; it pleads demand futility director-by-director under *Zuckerberg*; it verifies the derivative claim

under Rule 23.1; it establishes majority control and authority; and it states a valid BHCA claim under the *per se* standard of *Dibidale*. An amendment is futile only if the complaint, as amended, would fail to state a claim upon which relief could be granted. *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). The proposed TAC plainly states such a claim.

## IX. BPPR'S POSITION IS INTERNALLY CONTRADICTORY

BPPR's arguments contain irreconcilable contradictions that this Court should note:

**First**, BPPR argues that Plaintiffs' injuries are corporate, not individual—but simultaneously refuses to allow the Companies to proceed as plaintiffs through the Abesada withdrawal. If the injuries are corporate, the corporations should be allowed to sue. If BPPR's position is that the corporations cannot sue (because BPPR's ally Borschow withdrew them in return for an improper direct payment), then the individual Plaintiffs who suffer direct harm must have standing. BPPR cannot have it both ways.

**Second**, BPPR argues that claims are derivative requiring Board demand—but the Board's hiring of Abesada was itself *ultra vires*, as Borschow used his own breach of fiduciary duty to block the Companies' claims. Under *PHC*, 894 F.3d at 431–36, a self-dealing fiduciary cannot reap the benefits of his unfairness. Borschow cannot use his own breach to block claims against the bank that paid him.

**Third**, BPPR never explains how it can effectively purchase immunity from anti-tying liability through § 3.6(c) of the AAA—an agreement that was void *ab initio* under the Operating Agreement's unanimous consent requirement (§ 9.1), that was executed by conflicted Board

members who personally profited, and that sold $300M+ in assets for $4.4M. If Congress were presented with a bank purchasing a release from its own anti-tying violations by paying conflicted insiders through an unqualified assignee, Congress would reject such perfidy. This Court should reject it as well.

**X. BPPR FAILS TO ADDRESS PLAINTIFFS' STRONGEST AUTHORITIES**

BPPR's Opposition fails to distinguish—or even cite—Plaintiffs' strongest authorities:

*Swerdloff v. Miami National Bank*, 584 F.2d 54 (5th Cir. 1978)—foundational case for guarantor/shareholder standing under BHCA. **BPPR: Complete silence.**

*In re PHC Shareholder Litigation*, 894 F.3d 419 (1st Cir. 2018)—binding First Circuit precedent on self-dealing, demand futility, and entire fairness review. **BPPR: Complete silence.**

Timothy D. Naegele's seminal article on BHCA legislative history—the statute's principal draftsman explaining Congressional intent for broad standing. **BPPR: Complete silence.**

Federal Reserve Board's 2003 interpretation of § 106 recognizing broad "customer" definitions. **BPPR: Complete silence.**

*Dibidale of Louisiana, Inc. v. American Bank & Trust Co.*, 916 F.2d 300, 302 (5th Cir. 1990)—*per se* tying doctrine holding that coercion is not an element of an anti tying claim. **BPPR: No substantive engagement.**

The failure to address these authorities speaks for itself. The First Circuit has long held that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Here, Banco Popular failed to address these cases at all.

**CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that this Court:

(1) Grant the Motion for Reconsideration based on newly available evidence (the Abesada *ultra vires* hiring, the three-day tying sequence documents, and the Board self-dealing through the AAA);

(2) Grant leave to file the proposed Third Amended Complaint, which cures every deficiency identified in the Court's December 22, 2025, Order;

(3) Hold that Boyd and Lassers have standing to assert direct anti-tying claims under 12 U.S.C. § 1975 based on their personal injuries independent of any corporate harm; and

(4) Hold that Plaintiffs have adequately pleaded demand futility and established authority to assert derivative claims on behalf of GFC and BGF.

**RESPECTFULLY SUBMITTED,** in San Juan, Puerto Rico, this 11th day of February 2026.

/s/ Jane A. Becker Whitaker
**JANE A. BECKER WHITAKER**
USDC No. 205110

P.O. Box 9023914
Urb. Baldrich, San Juan, PR 00902-3914
Tel: (787) 585-3824
Email: janebeckerwhitaker@gmail.com

/s/ Luis E. Miñana
**LUIS E. MIÑANA, ESQ.**
USDC-PR No. 225608
ESPADA, MIÑANA, & PEDROSA LAW OFFICES, PSC
123 Calle Manuel Domenech Altos
Urb. Baldrich, San Juan, PR 00918
Email: minanalaw@yahoo.com
Tel: (787) 758-1999

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I have presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, which will notify all counsel of record.

/s/ Jane A. Becker Whitaker
**JANE A. BECKER WHITAKER**